1
2
3
4

SHOOK, HARDY & BACON L.L.P.
TAMMY B. WEBB (SBN 227593)
Email: tbwebb@shb.com
One Montgomery, Suite 2700
San Francisco, California  94104
Telephone:  (415) 544-1900
Facsimile:  (415) 391-0281

5
6
7
8
9

PATTERSON BELKNAP WEBB & TYLER LLP
STEVEN A. ZALESIN (*pro hac vice* admission pending)
Email:  sazalesin@pbwt.com
TRAVIS J. TU (*pro hac vice* admission pending)
Email:  tjtu@pbwt.com
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone:   (212) 336-2000
Facsimile:    (212) 336-2222

10
11

Attorneys for Defendants
HONEST TEA, INC.

12

UNITED STATES DISTRICT COURT

13

EASTERN DISTRICT OF CALIFORNIA

14
15
16
17
18
19
20
21

| | |
|---|---|
| SARAH A. SALAZAR, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>HONEST TEA, INC.,<br><br>                    Defendant. | Case No. 2:13-CV-02318-KJM-EFB<br><br>**NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Judge:  Hon. Kimberly J. Mueller<br><br>Complaint Filed:  November 6, 2013<br>Hearing Date:  March 28, 2014<br>Hearing Time:  10 A.M.<br>Courtroom: 3 |

22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFF AND PLAINTIFF'S ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 28, 2014, at 10:00 a.m., or as soon thereafter as this may be heard, in Courtroom 3 of this Court, located at 501 I Street, Sacramento, CA 95814, before the Honorable Kimberly J. Mueller, defendant Honest Tea, Inc. will and hereby does move the Court for an order dismissing plaintiff's Complaint in its entirety.

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and is based on the following grounds:

1.      Plaintiff's claims are expressly preempted by the federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq*;

2.      Plaintiff fails to adequately plead reliance and resulting injury;

3.      Plaintiff may not assert claims based on non-actionable puffery; and

4.      Plaintiff's implied warranty claims are not legally viable.

This motion is based on this notice of motion, the accompanying memorandum of points and authorities, all pleadings and documents on file in this case, and on such other written and oral argument as may be presented to the Court.

On December 20, 2013, pursuant to Section 4(A) of the Court's November 7, 2013 Standing Order, the parties' counsel engaged in a pre-filing meet and confer to discuss thoroughly the substance of the present motion.

DATE:  January 27, 2014                    SHOOK, HARDY & BACON L.L.P.

                                                              /s/ Tammy B. Webb
                                                        Tammy B. Webb (SBN 227593)

                                                        Steven A. Zalesin (*pro hac vice* admission pending)
                                                        Travis J. Tu (*pro hac vice* admission pending)
                                                        PATTERSON BELKNAP WEBB & TYLER LLP

                                                        *Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ............................................................................1

BACKGROUND ...........................................................................................3

    A.    Honest Tea and the Honey Green Tea Product.....................................3
    B.    Plaintiff's Allegations ......................................................................4
    C.    Statutory and Regulatory Framework ...............................................6

        1.    The FDCA Expressly Preempts Non-Identical State-Law
                Requirements ....................................................................6
        2.    FDA's Extensive Regulation of Nutrient Content Claims.........8

ARGUMENT ...............................................................................................11

I.    PLAINTIFF'S CLAIMS ARE EXPRESSLY PREEMPTED .......................11

II.    THE COMPLAINT FAILS TO PLEAD RELIANCE AND INJURY ...........14

III.    PLAINTIFF'S CLAIMS CONCERNING NON-ACTIONABLE PUFFERY
        SHOULD BE DISMISSED ..............................................................17

IV.    PLAINTIFF'S IMPLIED WARRANTY CLAIMS ARE NOT VIABLE........19

CONCLUSION.............................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Annunziato v. eMachines, Inc.*,
   402 F. Supp. 2d 1133 (C.D. Cal. 2005) ........................................................17, 18

*Barnes v. Campbell Soup Co.*,
   No. 12-cv-5185, 2013 U.S. Dist. LEXIS 118225 (N.D. Cal. July 25, 2013) .........................17

*Briseno v. Conagra Foods, Inc.*,
   No. 11-cv-5379, 2011 U.S. Dist. LEXIS 154750 (C.D. Cal. Nov. 23, 2011) ....................7, 15

*Bronson v. Johnson & Johnson, Inc.*,
   No. 12-cv-4184, 2013 U.S. Dist. LEXIS 54029 (N.D. Cal. Apr. 16, 2013) ................... passim

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   475 Fed. App'x 113 (9th Cir. Cal. 2012) ........................................................8, 12

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) ...............................................................8

*Coleman v. Boston Sci. Corp.*,
   No. 10-cv-01968, 2011 U.S. Dist. LEXIS 96315 (E.D. Cal. Aug. 29, 2011).........................15

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
   911 F.2d 242 (9th Cir. 1990) .......................................................................17

*Delacruz v. Cytosport, Inc.*,
   No. 11-cv-3532, 2012 U.S. Dist. LEXIS 51094 (N.D. Cal. Apr. 11, 2012)...............14, 17, 18

*Free v. Bland*,
   369 U.S. 663 (1962).................................................................................11

ii

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

CASES

*Garcia v. M-F Ath. Co.*,
    No. 11-cv-2430, 2012 U.S. Dist. LEXIS 20411 (E.D. Cal. Feb. 16, 2012)......................15, 17

*Haskell v. Time, Inc.*,
    857 F. Supp. 1392 (E.D. Cal. 1994).........................................................................17

*Henderson v. Gruma Corp.*,
    2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) ........................................18

*In re Ferraro Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011)...........................................................14, 17

*In re Tobacco II Cases*,
    46 Cal. 4th 298, 93 Cal. Rptr. 3d 559, 207 P.3d 20 (2009) ...................................14

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310, 120 Cal. Rptr. 3d 741, 246 P.3d 877 (2011) ...............................14

*Lanovaz v. Twinings N. Am., Inc.*,
    No. 12-cv-2646, 2013 U.S. Dist. LEXIS 25612 (N.D. Cal. Feb. 25, 2013) ....................16, 17

*McKinniss v. Kellogg USA*,
    No. 07-CV-2611, 2007 U.S. Dist. LEXIS 96106 (C.D. Cal. Sept. 19, 2007) ........................19

*Meaunrit v. Pinnacle Foods Group, LLC*,
    No. 09-cv-04555, 2010 U.S. Dist. LEXIS 43858 (N.D. Cal. May 5, 2010)...........................11

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ...................................................................................12

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008) .....................................................................18

iii

### TABLE OF AUTHORITIES
### (CONTINUED)

**Page(s)**

**CASES**

*Pardini v. Unilever United States, Inc.*,

    No. 13-cv-1675, 2013 U.S. Dist. LEXIS 95756 (N.D. Cal. July 9, 2013) .............................13

*Peviani v. Hostess Brands, Inc.*,

    750 F. Supp. 2d 1111 (C.D. Cal. 2010) ...................................................................6, 7, 11, 13

*Shaker v. Nature's Path Foods, Inc.*,

    No. 13-cv-1138, 2013 U.S. Dist. LEXIS 180476 (C.D. Cal. Dec. 16, 2013).........................18

*Summit Tech. v. High-Line Med. Instruments*,

    933 F. Supp. 918 (C.D. Cal. 1996 ) ......................................................................................18

*Thomas v. Costco Wholesale Corp.*,

    No. 12-cv-2908, 2013 U.S. Dist. LEXIS 51189 (N.D. Cal. Apr. 9, 2013)......................15, 17

*Turek v. Gen. Mills, Inc.*,

    662 F.3d 423 (7th Cir. 2011) .........................................................................................11, 13

*Turek v. Gen. Mills, Inc.*,

    754 F. Supp. 2d 956 (N.D. Ill. 2010), *aff'd*, 662 F.3d 423 (7th Cir. 2011) .............................7

*Viggiano v. Hansen Natural Corp.*,

    944 F. Supp. 2d 877 (C.D. Cal. 2013) ......................................................................13, 19, 20

*Vital v. One World Co.*,

    No. 12-cv-314, 2012 U.S. Dist. LEXIS 186203 (C.D. Cal. 2012) ................................. passim

*Wilson v. Frito-Lay N. Am.*,

    No. 12-cv-1586, 2013 U.S. Dist. LEXIS 153136 (N.D. Cal. Oct. 24, 2013) .........................16

**CONSTITUTIONAL PROVISIONS, STATUTES, RULES & REGULATIONS**

21 C.F.R. § 101.9 ...................................................................................................... passim

21 C.F.R. § 101.13 .................................................................................................... passim

iv

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

21 C.F.R. § 100.1(c)(4) .................................................................................8, 11

21 U.S.C. § 343 .....................................................................................8, 11, 13

21 U.S.C. § 343-1 .........................................................................................7, 11

21 U.S.C. § 371 ....................................................................................................6

Cal. Bus. & Prof. Code § 17200 et seq. ........................................................6, 14

Cal. Bus. & Prof. Code § 17500 et seq. ........................................................6, 14

Cal. Civ. Code § 1750 et seq. ........................................................................6, 14

Federal Rule of Civil Procedure 9(b) ..............................................................15

Federal Rule of Civil Procedure 12(b)(1) ........................................................17

Federal Rule of Civil Procedure 12(b)(6) ........................................................17

*Conventional Foods Being Marketed as "Functional Foods,"* 71 Fed. Reg. 62400 (Oct. 25, 2006) ...................................................................................................8

*Food Labeling: Mandatory Status of Nutrition Labeling and Nutrient Content Revision, Format for Nutrition Label*, 58 Fed. Reg. 2079 (Jan. 6, 1993) ...............................10

*Food Labeling; Requirements for Nutrient Content Claims, Health Claims, and Statements of Nutritional Support for Dietary Supplements*, 62 Fed. Reg. 49859 (Sept. 23, 1997) ...................................................................................................9

Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535, 104 Stat. 2353 (1990) ................................................................................................7, 8, 11

U.S. CONST. art. VI cl. 2 .....................................................................................11

U.S. CONST. art. III .............................................................................................17

LEGISLATIVE HISTORY

136 Cong. Rec. H5836 (daily ed. July 30, 1990) ...............................................7

H.R. Rep. No. 101-538 (1990) ...........................................................................7

v

# TABLE OF AUTHORITIES
## (CONTINUED)

Page(s)

**OTHER AUTHORITIES**

Peter Barton Hutt, *A Brief History of FDA Regulation Relating to the Nutrient Content of Food* (Ralph Shapiro, ed., NUTRITIONAL LABELING HANDBOOK (1995)) .................................8

FDA, *Claims That Can Be Made for Conventional Foods and Dietary Supplements*, Sept. 2003, http://www.fda.gov/Food/IngredientsPackagingLabeling/LabelingNutrition/ucm111447.htm .........................................................................8

Institute of Medicine, *Food Labeling:  Toward National Uniformity*, National Academies Press (Washington, D.C. 1992) .................................................................6

Defendant Honest Tea, Inc. ("Honest Tea") respectfully submits this memorandum of points and authorities in support of its motion to dismiss the Complaint.

## SUMMARY OF ARGUMENT

Plaintiff Sarah A. Salazar alleges that Honest Tea has violated California law by overstating on product labels the amounts of certain nutrients found in Honest Tea Honey Green Tea ("Honey Green Tea").  Plaintiff does not dispute that Honey Green Tea contains beneficial nutrients that naturally occur in green tea.  Rather, she alleges that certain nutrient content claims on Honey Green Tea labels are "false" because, according to a third-party website and her own investigation, *some bottles* of Honey Green Tea contain fewer nutrients than the amounts stated on the labels.  Plaintiff's claims are legally defective and must be dismissed.

Green tea is, by definition, an agricultural product.  Nutrient levels in such products are subject to inherent variation based upon, *inter alia*, plant characteristics, time of year, and growing conditions.  The U.S. Food and Drug Administration ("FDA") nevertheless permits manufacturers to label agricultural products with claims regarding their nutrient contents—even though some product samples will inevitably contain more nutrients than the labels state, while others will contain less.  Consistent with this express authorization, labels for Honey Green Tea have at various times stated that the product contains "247 mg Antioxidant Green Tea Flavonoids," "190 mg Tea Catechins," and "EGCG Super-Antioxidant 250 mg" per bottle.

Because the precise amount of naturally-occurring nutrients will vary from batch-to-batch, FDA has declared that product labels are not "false or misleading" simply because some batches of the product contain fewer nutrients than the label states.  Such variability is, instead, to be expected.  FDA has therefore promulgated a regulation that establishes a mandatory protocol that must be followed before a nutrient content claim on a product label can be disputed.  This protocol does not rely on anecdotal tests of individual product samples.  Rather, FDA requires that the testing be done on a "composite" sample comprised of 12 individual product samples selected from 12 different randomly selected shipping cases.

The Complaint alleges that, in tests performed by "ConsumerLab.com" and her counsel, certain samples of Honey Green Tea were found to have fewer flavonoids, catechins and EGCG than the Honey Green Tea labels state.  The Complaint does not allege, however, that these tests were conducted in accordance with FDA's rigorous protocol.  This omission is fatal to Plaintiff's Complaint.  The federal Food, Drug, and Cosmetic Act ("FDCA") expressly preempts states from imposing any requirement concerning the labeling of foods and beverages that is "not identical to" federal law.  This express preemption clause bars not only non-identical direct state regulation, but also claims by private plaintiffs who seek to use state law to impose food-labeling requirements that differ from federal requirements.

Plaintiff's state-law claims are based on tests that do not employ the mandatory protocol that FDA has established to dispute nutrient content claims for agricultural products like Honey Green Tea.  As such, Plaintiff necessarily seeks to impose requirements that are "not identical to" federal law, and is expressly preempted from doing so.  Indeed, on virtually identical facts, a sister court recently dismissed on preemption grounds a plaintiff's challenge to nutrient content claims on another beverage label.  *See Vital v. One World Co.*, No. 12-cv-314, 2012 U.S. Dist. LEXIS 186203 (C.D. Cal. Nov. 30, 2012).  The outcome can be no different here.

In addition to being expressly preempted, Plaintiff's claims suffer from a number of other defects that require dismissal.  *First,* the Complaint purports to challenge a litany of promotional statements without any allegation that Plaintiff relied upon or was injured by them.  For example, one of the nutrient content claims disputed in the Complaint—"EGCG Super-Antioxidant 250 mg"—has not appeared on Honey Green Tea labels for years and, according to Plaintiff's own allegations, was discontinued long before Plaintiff began purchasing the product.  The Complaint also includes allegations regarding the "Honest Tea" name; the taglines "Refreshingly Honest" and "Brutally Honest"; and a description of Honey Green Tea as "just a tad sweet" with "a kiss of honey, but not enough to gross you out."  But Plaintiff does not allege that she read or relied

on any of these statements.  As a matter of law, Plaintiff cannot pursue claims against statements on which she did not rely, and that caused her no injury.

*Second*, even if Plaintiff had adequately pled reliance, many of the statements disputed in the Complaint are classic puffery.  The puffery doctrine recognizes that certain statements are too vague, generalized or hyperbolic to be actionable.  The "Honest Tea" name and the "Refreshingly Honest" and "Brutally Honest" taglines clearly fall into this category—as does the description of Honey Green Tea as "just a tad sweet" and containing "a kiss of honey, but not enough to gross you out."  Since none of these statements can readily be proven true or false by reference to any objective standard, Plaintiff's attack on them necessarily fails.

*Third*, Plaintiff's implied warranty claims are not legally viable and should be dismissed because Plaintiff has not alleged that Honey Green Tea is unfit for use as a bottled tea beverage.

For these and other reasons set forth below, Plaintiff's Complaint must be dismissed.

## BACKGROUND

### A.      Honest Tea and the Honey Green Tea Product

Honest Tea was founded in 1998 on an idea that was simple but novel at the time:  to produce bottled tea beverages that actually taste like tea.  Since its inception, Honest Tea's mission has been "to create and promote great-tasting, truly healthy, organic beverages" and "to grow [its] business with the same honesty and integrity [it] use[s] to craft [its] products . . . ."[1] Honest Tea has done just that, and has experienced substantial success.  The company now sells roughly 40 different organic beverages, ranging from Honest Splash Berry Good Lemonade to the product at issue in this case, Honest Tea Honey Green Tea.

Honest Tea uses real tea leaves to make its bottled tea beverages, so its products contain nutrients typically found in brewed teas.[2]  Like other brewed green teas, Honey Green Tea contains flavonoids—plant-based compounds that have antioxidant properties.  Flavonoids

[1] http://www.honesttea.com/mission/about/overview/ (last visited Jan. 24, 2014).
[2] http://www.honesttea.com/mission/philosophy/antioxidants/ (last visited Jan. 24, 2014).

include "catechins"—"tannin[s] peculiar to green tea" that are "powerful, water soluable polyphenols . . . that are easily oxidized."  (Compl. ¶ 17.)  One such catechin, epigallocatechin gallate ("EGCG"), offers antioxidant properties 25 to 100 times more potent than vitamins C and E.  (*Id.* ¶ 17.)  Plaintiff does not dispute, and indeed affirmatively alleges, that flavonoids—including catechins such as EGCG—are beneficial nutrients that have been associated with a wide range of health benefits.  (*See, e.g.*, *id.* ¶¶ 14, 16-17.)

For several years, Honest Tea has voluntarily disclosed on the Honey Green Tea label information about the product's antioxidant content.  Since February 2013, the label on a 16.9 fl. oz. bottle of Honey Green Tea has contained the following nutrient content claim: "247 mg Antioxidants Green Tea Flavonoids per bottle."  (*Id.* ¶ 23.)  Prior to that time, from August 2011 through January 2013, the nutrient content claim on the label was: "190mg tea catechins per bottle."  (*Id.*)  The first iteration of the antioxidant nutrient content claim, which appeared on the label from January 2008 until August 2011, stated "EGCG Super-Antioxidant 250 mg per bottle."  (*Id.*)  Each of these claims was confirmed through independent laboratory testing.

### B.    Plaintiff's Allegations

Plaintiff is a California resident who alleges that she regularly purchased Honey Green Tea at Safeway and Raley's in Benicia, California.  (*Id.* ¶ 4.)  The Complaint makes the general allegation that Plaintiff purchased the product "[r]elying on the representations on the label about Honey Green Tea's antioxidant content," but does not specify which of the three disputed antioxidant content claims Plaintiff actually relied on.   (*Id.*)  Moreover, the Complaint acknowledges that one of the disputed claims—"EGCG Super-Antioxidant 250 mg"— was discontinued in 2011 (*id.* at ¶ 23), before Plaintiff first purchased the product in 2012 (*id.* at ¶ 4).

The Complaint nonetheless alleges that, since 2008, Honest Tea has contained fewer flavonoids, catechins and EGCG than has been represented on the label.  According to Plaintiff, she would not have purchased the product had she known the truth about the antioxidant content (*id.* ¶¶ 4, 23, 26-27, 34), and lost money as a result of Honest Tea's alleged misrepresentations

(*id*. ¶¶ 4, 22).  Plaintiff alleges that Honest Tea has sold "hundreds of thousands, if not millions, of bottles of Honest Tea Honey Green Tea" (*id*. ¶6), and purports to represent the interests of every Honey Green Tea purchaser throughout the United States (*id*. ¶¶ 3, 5-6).

Plaintiff's allegation that Honey Green Tea contains fewer antioxidants than claimed on the label is based on testing performed by (1) ConsumerLab.com and (2) an unidentified, "independent lab" commissioned by Plaintiff's counsel.  (*Id*. ¶¶ 26-27, 29.)  According to the Complaint, ConsumerLab.com concluded that Honey Green Tea contained fewer than the 190 mg of catechins and 250 mg of EGCG claimed on the product label.  (*Id*. ¶¶ 26-27.)  However, the Complaint contains no information whatsoever about ConsumerLab.com's test methods, let alone an allegation that it followed the rigorous testing protocol mandated by FDA.

With respect to her own testing, Plaintiff alleges that her counsel shipped "multiple unopened samples" of Honey Green Tea to an "independent lab" to undergo a "Total Bioflavonoid Analysis" using the ORAC (Oxygen, Radical, Absorbance Capacity) method and to have the EGCG content analyzed using the HPLC (High-performance liquid chromatography) method.  (*Id*. ¶¶ 29-30, 34.)  According to Plaintiff, her lab concluded that Honey Green Tea samples it tested contained "on average" fewer catechins, flavonoids and EGCG than the amounts that have been claimed on the label since 2008.  (*Id*. ¶¶ 26, 31-32, 34.)  As with the ConsumerLab.com testing, however, the Complaint does not indicate the number of samples tested, or that FDA's mandatory protocol was followed.

In addition to her allegations regarding Honey Green Tea's antioxidant label claims, Plaintiff devotes substantial effort in her Complaint to disparaging Honest Tea, referring to the name of the company, its "brand identity" and its "Refreshingly Honest" and "Brutally Honest" marketing campaigns as false and misleading.  (*Id*. ¶¶ 8-13.)  Plaintiff also questions the veracity of Honest Tea's claims that Honey Green Tea is "just a tad sweet" and that it "add[s] a kiss of honey, but not enough to gross you out," alleging that Honey Green Tea is actually "mainly

sugar water." (*Id.* ¶ 21.)  Plaintiff does not allege, however, that she saw or relied upon any of these statements when she purchased Honey Green Tea.

Based upon the foregoing allegations, Plaintiff asserts common law claims for breach of express warranty (Count I), breach of implied warranty of merchantability (Count II), breach of implied warranty of fitness for a particular purpose (Count III), negligent misrepresentation (Count VII) and fraud (Count VIII), and statutory claims under California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750 et seq.) (Count IV), California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 et seq.) (Count V), and California's False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500 et seq.) (Count VI).  Plaintiff asserts the common law claims on behalf of a putative class of Honey Green Tea purchasers nationwide, and the statutory claims on behalf of a putative class of California purchasers.

## C. Statutory and Regulatory Framework

### 1. The FDCA Expressly Preempts Non-Identical State-Law Requirements

Conspicuously absent from the Complaint is any acknowledgement that FDA extensively regulates the statements that manufacturers, such as Honest Tea, can make regarding the nutrients in food products.  Congress enacted the FDCA in 1938, creating "a comprehensive federal scheme for the regulation of food."  *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1117 (C.D. Cal. 2010).  The FDCA gave FDA broad authority to protect consumers from false and misleading labeling practices.  *See* 21 U.S.C. § 371 (authorizing FDA to "promulgate regulations for the efficient enforcement" of the statute).

Between 1938 and 1990, the U.S. market for food and beverages underwent radical transformation.  Mass-produced packaged foods became the norm, and Congress recognized that national labeling standards were overdue.  *See generally* Institute of Medicine, *Food Labeling: Toward National Uniformity*, National Academies Press (Washington, D.C. 1992), at 35-54.

Congress responded with the Nutrition Labeling and Education Act of 1990 ("NLEA"), which expressly expanded FDA's authority over food and beverage labeling.  *Id.*

The NLEA was intended to "make sense of the confusing array of nutrition labels that confront all consumers every time they enter the supermarket," 136 Cong. Rec. H5836, H5840 (daily ed. July 30, 1990) (statement of Rep. Waxman), "while providing the industry with uniformity of law . . . that will permit them to conduct their business of food distribution in an efficient and cost-effective manner." *Id.* at H5843 (statement of Rep. Madigan).  Congress sought to achieve these goals in two related ways.  First, the NLEA amended the FDCA to "establish the circumstances under which claims may be made [on product labels] about nutrients in food."  H.R. Rep. No. 101-158, at 7 (1990) (quoted in *Peviani*, 750 F. Supp. 2d at 1117).  It "expanded the coverage of nutrition labeling requirements; it changed the form and substance of ingredient labeling on packages; it imposed limitations on health claims; it standardized the definitions of all nutrient content claims; and it required more uniform serving sizes." *Briseno v. Conagra Foods, Inc.*, No. 11-cv-5379, 2011 U.S. Dist. LEXIS 154750, at *12-13 (C.D. Cal. Nov. 23, 2011).  Second, the NLEA provided that federal law would expressly "preempt non-identical [state-law] requirements in the field of food labeling." *Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d 956, 958 (N.D. Ill. 2010), *aff'd*, 662 F.3d 423 (7th Cir. 2011).

Section 6 of the NLEA, codified at 21 U.S.C. § 343-1(a) and entitled "National Uniform Nutrition Labeling," in pertinent part provides that

> no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . (5) any requirement respecting any claim of the type described in [21 U.S.C. § 343(r)] made in the label or labeling of food that is ***not identical to*** the requirement of [21 U.S.C. § 343(r).]

21 U.S.C. § 343-1(a)(5) (emphasis added).  A state requirement is "not identical to" federal requirements—and thus preempted—if it "directly or indirectly" imposes labeling obligations that are "not imposed by or contained in the applicable [federal] provision (including any

implementing regulation)" or that "[d]iffer from those specifically imposed or contained in the applicable provision." 21 C.F.R. § 100.1(c)(4). The term "requirement" "reaches beyond positive enactments like statutes and regulations, to embrace common-law duties and judge-made rules." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010) (citing *Bates v. Dow Agrosciences, LLC*, 554 U.S. 431 (2005)).

The NLEA's "effective[] remov[al] [of] state and local government from" the regulation of "the nutrient content of food" represented "a major change in national food policy," Peter Barton Hutt, *A Brief History of FDA Regulation Relating to the Nutrient Content of Food* at 12 (in Ralph Shapiro, ed., Nutritional Labeling Handbook (1995)), and it required FDA to establish uniform nationwide rules to govern nutritional disclosures and claims on food labeling. FDA spent years doing just that. *See id.* at 11-22. Through notice-and-comment rulemaking, FDA promulgated regulations that tell manufacturers what types of nutrient-related claims may be made on foods, and how those claims should be worded. *See* FDA, *Claims That Can Be Made for Conventional Foods and Dietary Supplements*, Sept. 2003 (http://www.fda.gov/Food/IngredientsPackagingLabeling/LabelingNutrition/ucm111447.htm); *Conventional Foods Being Marketed as "Functional Foods*," 71 Fed. Reg. 62400, 62402-03 (Oct. 25, 2006).

## 2.    FDA's Extensive Regulation of Nutrient Content Claims

21 U.S.C. § 343(r) governs, *inter alia*, claims made on food labeling that characterize the level of a nutrient in a food. *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 Fed. App'x 113, 115 (9th Cir. Cal. 2012); *Bronson v. Johnson & Johnson, Inc.*, No. 12-cv-4184, 2013 U.S. Dist. LEXIS 54029, at *11 (N.D. Cal. Apr. 16, 2013). These claims, referred to as "nutrient content claims," are extensively regulated by FDA in 21 C.F.R. § 101.13, and divided into two broad categories: (1) implied nutrient content claims, which are "any claim[s] that (i) [d]escribe[] the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount; or (ii) [s]uggest[] that a food, because of its nutrient content, may be

useful in maintaining healthy dietary practices . . ."; and (2) expressed nutrient content claims, which are "any direct statement[s] about the level (or range) of a nutrient in a food." 21 C.F.R. § 101.13(b)(1)-(2).  FDA explicitly permits a plain statement of the amount of a nutrient present in a food to appear on the food's label so long as the "statement does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat')." 21 C.F.R. § 101.13(i)(3).

In addition to dictating the circumstances under which nutrient content claims are permitted on food labels, FDA was careful to specify how it would determine whether a food label complied with Section 101.13:  "compliance with requirements for nutrient content claims in this section . . . will be determined using the analytical methodology prescribed for determining compliance with nutrition labeling in § 101.9." 21 C.F.R. 101.13(o).

This analytical methodology, which is set forth in 21 C.F.R. § 101.9(g), is mandatory. Section 101.9(g) provides that "[c]ompliance . . . ***shall*** be determined as follows":

> (1) A collection of primary containers or units of the same size, type, and style produced under conditions as nearly uniform as possible, designated by a common container code or marking, or in the absence of any common container code or marking, a day's production, constitutes a "lot."

> (2) The sample for nutrient analysis shall consist of a composite of 12 subsamples (consumer units), taken 1 from each of 12 different randomly chosen shipping cases, to be representative of a lot. Unless a particular method of analysis is specified in paragraph (c) of this section, composites shall be analyzed by appropriate methods as given in the "Official Methods of Analysis of the AOAC International," 15th Ed. (1990), which is incorporated by reference in accordance with 5 U.S.C. 552(a) or 1 CFR part 51 or, if no AOAC method is available or appropriate, by other reliable and appropriate analytical procedures.  (emphasis added)

This FDA-mandated methodology reflects the Agency's recognition that the amount of any naturally-occurring nutrient or substance in an agricultural product, such as tea, can be expected to vary from product-to-product and lot-to-lot.  *Food Labeling: Requirements for Nutrient Content Claims, Health Claims, and Statements of Nutritional Support for Dietary*

*Supplements*, 62 Fed. Reg. 49859, 49863 (Sept. 23, 1997) ("Implicit in the compliance sampling provisions in 21 C.F.R. § 101.9(g) is the concept that there will be variation in naturally-occurring nutrients present in subsamples of a product."). In fact, FDA has recognized that "[w]hile it is highly desirable to have a precise nutrient value on the label, it is impractical" because "[t]he natural variability of a food is dependent upon a number of factors," including "the season of the year, soil type, variety (cultivar), . . . weather conditions" and the "processing that a food undergoes[.]" *Food Labeling: Mandatory Status of Nutrition Labeling and Nutrient Content Revision, Format for Nutrition Label*, 58 Fed. Reg. 2079, 2161 (Jan. 6, 1993); *Vital*, 2012 U.S. Dist. LEXIS 186203, at *14 ("by mandating that a composite be used to determine compliance, the regulation rejects the requirement that every individual product be labeled in compliance with" the FDA rules).

It is not appropriate, therefore, to determine whether a label claim is "false or misleading" under Section 101.13 by grabbing a few samples off the shelf and subjecting them to some type of testing. *See Vital*, 2012 U.S. Dist. LEXIS 186203, at *14 ("[I]t is impossible to determine whether a company is in compliance . . . by testing less than twelve products from twelve different shipping cases. If only eleven products are tested, a hypothetical twelfth product could raise the average nutrient content to a sufficient level."). Doing so would impermissibly impose food labeling requirements not identical to those in the FDCA.

Honest Tea followed federal law when it made the nutrient content claims at issue. Plaintiff cannot use state law to challenge Honest Tea's claims based on testing that does not comport with FDA's mandatory methodology. To do so would be to impose upon Honest Tea labeling requirements not identical to those under federal law. That is precisely what Plaintiff attempts to do here, and her claims must therefore be dismissed. Moreover, in addition to being expressly preempted, Plaintiff's claims are deficient in several other respects that likewise require dismissal of the Complaint.

**ARGUMENT**

**I.     PLAINTIFF'S CLAIMS ARE EXPRESSLY PREEMPTED**

The Supremacy Clause of the United States Constitution, U.S. CONST. art. VI cl. 2, establishes that "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Free v. Bland*, 369 U.S. 663, 666 (1962) (citing *Gibbons v. Ogden*, 22 U.S. 1, 9 Wheat. 1, 210-11 (1824)).  Accordingly, "[c]onsumer protection laws, such as the UCL, FAL, and CLRA, are . . . preempted if they seek to impose requirements that contravene the requirements set forth by" federal law.  *Peviani*, 750 F. Supp. 2d at 1118.  The same is true of common-law claims.  *See Meaunrit v. Pinnacle Foods Group*, No. 09-cv-04555, 2010 U.S. Dist. LEXIS 43858, at *15, 27-31 (N.D. Cal. May 5, 2010).

The NLEA's express preemption clause bars States from imposing requirements that are "not identical to" specified categories of federal food labeling laws.  21 U.S.C. § 343-1(a). Those preempted categories include requirements "of the type" specified in 21 U.S.C. § 343(r), which governs nutrition content and health-related claims.  State law is "not identical to" federal law if it "differs" from federal law requirements in any respect, or imposes obligations that federal law does not impose.  *See* 21 C.F.R. § 100.1(c)(4); *see also Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011).

The three label claims at issue here—"247 mg Antioxidants Green Tea Flavonoids Per Bottle"; "Antioxidants 190 mg Tea Catechins/Bottle"; "EGCG Super-Antioxidant 250 mg per bottle"—are express nutrient content claims permitted by FDA under 101.13(i)(3) as long as they are not "false or misleading in any respect."  FDA regulations are clear that the ***only way*** to establish that these label claims are "false or misleading" is to employ the analytical methodology in 21 C.F.R. § 101.9(g)—*i.e.*, to analyze the average nutrient content of a composite sample of 12 Honey Green Tea bottles from 12 different randomly selected shipping cases using "appropriate methods as given in the 'Official Methods of Analysis of the AOAC International'" or an acceptable substitute.  21 C.F.R. § 101.9(g)(2); *see also* 21 C.F.R. §

101.13(o) ("[C]ompliance with requirements for nutrient content claims . . . will be determined using the analytical methodology . . . in § 101.9").

This methodology, which "allows for some variation in the nutrient content of each individual product and shipping case," *Vital*, 2012 U.S. Dist. LEXIS 186203, at \*14, is the methodology that FDA itself would be required to use if it wanted to challenge Honest Tea's label claims in an enforcement action. Likewise, it is the methodology that Plaintiff ***must*** follow in order to avoid imposing non-identical labeling requirements on Honest Tea. Plaintiff, however, has not alleged that the testing on which she relies comports with Section 101.9(g), so her claim is expressly preempted.

For a complaint to survive a motion to dismiss, "the non-conclusory 'factual content,' and reasonable inferences from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The Complaint here does not allege that either ConsumerLab.com or Plaintiff's lab tested a composite of 12 bottles of Honey Green Tea from 12 different randomly selected shipping cases to determine their average nutrient contents.

By asserting that Honest Tea's label is false and misleading based on testing that is not even alleged to comport with FDA's mandated methodology, Plaintiff is seeking to do precisely what Congress has forbidden: impose labeling requirements that are "not identical to" those in the FDCA.[3] As one court has observed, "it is ***impossible*** to determine whether a company is in compliance with the [FDA's labeling rules] by testing less than twelve products from twelve different shipping cases." *Vital*, 2012 U.S. Dist. LEXIS 186203, at \*14 (emphasis added). Plaintiff's claims are therefore expressly preempted. *See generally id.*; *see also Carrea*, 475 Fed.

---

[3] With respect to the earliest iteration of Honey Green Tea's antioxidant label claim—"EGCG Super-Antioxidant 250 mg per bottle"—Plaintiff relies in part on tests published by Men's Health magazine that found antioxidant levels that differed from the claimed amount. This attempt by Plaintiff to short circuit Section 101.9(g)'s stringent testing requirements fares no better than the others. There is no allegation that the Men's Health testing comported with Section 101.9(g). Therefore, any claim based on this testing is expressly preempted.

App'x at 115 (plaintiffs are expressly preempted from seeking to impose any requirement on nutrient content claims "not identical to the requirements under section 343(r)"); *Turek*, 662 F.3d at 427 (same); *see also Pardini v. Unilever U.S., Inc.*, No. 13-cv-1675, 2013 U.S. Dist. LEXIS 95756, at *15-16 (N.D. Cal. July 9, 2013) (dismissing on preemption grounds plaintiff's claims that sought to impose non-identical requirements on defendant's nutrient content claims); *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 890 (C.D. Cal. 2013) (same); *Bronson*, 2013 U.S. Dist. LEXIS 54029, at *2-3 (same); *Peviani*, 750 F. Supp. 2d at 1120 (same).

This case is indistinguishable from *Vital v. One World Co.*, 2012 U.S. Dist. LEXIS 186203 (C.D. Cal. 2012). At issue in *Vital* were label claims concerning the amount of sodium and magnesium present in defendant's bottled coconut water. The *Vital* plaintiff relied on testing performed by ConsumerLab.com—the same laboratory that Plaintiff relies on here—to show that the defendant's product contained more sodium and less magnesium than represented on its label. The plaintiff failed to establish, however, that ConsumerLab.com's testing comported with FDA's analytical methodology in Section 101.9(g): "[t]here is no evidence that the sample forming the basis of the [ConsumerLab.com] Report consisted of a composite of twelve subsamples taken from each of twelve different randomly chosen shipping cases, or that the same was analyzed under the AOAC method or another appropriate substitute." *Id*. at *12-13.

The *Vital* court concluded that, if the ConsumerLab.com testing were deemed "sufficient evidence to show" that a product "is misbranded," then the defendant "would face labeling requirements different than those provided under the FDCA"—and that "[s]uch requirements are preempted[.]" *Id*. at *13. Pointing to the plain language of 101.9(g), which states that "[c]ompliance . . . ***shall*** be determined" according to the FDA-mandated methodology, the court held that "there is only one way to determine compliance with the [FDA] labeling requirements .

1  . . : the method provided in § 101.9(g)." *Id.* at \*13-14 (emphasis in original).  It therefore

2  dismissed plaintiff's claims as preempted.[4]  *Id.* at \*18.  This Court should do the same here.

3  ## II.  THE COMPLAINT FAILS TO PLEAD RELIANCE AND INJURY

4        Plaintiff's claims must be dismissed for the additional reason that her Complaint does not

5  allege that she relied upon and was injured by the various representations she disputes.  To have

6  standing under California's consumer protection laws, a plaintiff must plead that she suffered an

7  economic injury "*caused by*[] the unfair business practice or false advertising that is the

8  gravamen of the claim."  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322-23, 120 Cal.

9  Rptr. 3d 741, 750, 246 P.3d 877, 885 (2011) (emphasis in original); Cal. Bus. & Prof. Code §§

10 17204, 17535 (UCL and FAL standing limited to persons who "suffered injury in fact and has

11 lost money or property as a result of" a violation); Cal. Civ. Code § 1780(a) (action for damages

12 may be brought under the CLRA by "[a]ny consumer who suffers any damage as a result of" a

13 violation).  Plaintiff thus must allege—and ultimately prove—that she suffered an economic

14 injury that resulted from her "actual reliance" on the alleged misrepresentations.  *See In re*

15 *Ferraro Litig.*, 794 F. Supp. 2d 1107, 1111 (S.D. Cal. 2011) (citing *Kwikset Corp.*, 51 Cal. 4th at

16 326-27, 120 Cal. Rptr. 3d at 754, 246 P.3d at 887; *In re Tobacco II Cases*, 46 Cal. 4th 298, 306,

17 93 Cal. Rptr. 3d 559, 564 207 P.3d 20, 25 (2009).

18        Reliance is also an element of Plaintiff's claims for fraud, negligent misrepresentation

19 and breach of express warranty.  *See, e.g.*, *Delacruz v. Cytosport, Inc.*, No. 11-cv-3532, 2012

20 U.S. Dist. LEXIS 51094, at \*13, 21 (N.D. Cal. Apr. 11, 2012) (reliance on defendant's allegedly

21

22 [4] The court in *Vital* converted defendant's motion to dismiss into a motion for summary judgment, "reasoning that the issues at stake would be better determined after an examination of evidence." *Id.* at
23 \*5.  The court then permitted very limited discovery concerning, *inter alia*, "(1) whether ConsumerLab.com's test results are admissible evidence" and "(2) whether ConsumerLab.com's testing
24 complies with the FDA's approved methodology for testing consumer products, specifically those guidelines set forth for challenging a nutrient estimate at 21 C.F.R. § 101.9(g)." *Id.* at \*5-6.  Here, it is
25 plain from the face of Plaintiff's Complaint that her claims are expressly preempted.  Nevertheless, Honest Tea would not oppose an approach similar to the one taken in *Vital*—*i.e.*, to allow limited
26 discovery on whether Plaintiff's testing comported with the methodology required by Section 101.9(g).

27

28                                                                                          14

deceptive statements is required to prosecute claims for fraud and negligent misrepresentation); *Garcia v. M-F Ath. Co.*, No. 11-cv-2430, 2012 U.S. Dist. LEXIS 20411, at *8-9 (E.D. Cal. Feb. 16, 2012) (to "state a breach of warranty claim on the basis of written labels or advertisements, [plaintiff] must allege what writing he saw, when he saw it, and how he relied upon it"); *Coleman v. Boston Sci. Corp.*, No. 10-cv-01968, 2011 U.S. Dist. LEXIS 96315, at *13-18 (E.D. Cal. Aug. 29, 2011) ("reliance (or some other substitute for privity) is required for an express warranty claim against a non-selling manufacturer of a product").

Moreover, because each of Plaintiff's claims is "grounded in fraud" or "involve allegations of fraudulent conduct, deception, or misrepresentation," they must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Thomas v. Costco Wholesale Corp.*, No. 12-cv-2908, 2013 U.S. Dist. LEXIS 51189, at *15-16 (N.D. Cal. Apr. 9, 2013); *Briseno*, 2011 U.S. Dist. LEXIS 154750, at *34. To satisfy Rule 9(b), the Complaint must "allege[] with particularity when, where, and how the alleged misrepresentations were communicated" and "which [statements] [the plaintiff] relied upon in making h[er] decision to buy." *Id.* at *35, 37-38 (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)). Plaintiff is therefore required to specify not only which labels she purportedly relied upon, but also the particular statements on those labels that motivated her purchasing decision.

Here, the Complaint contains only one bare-bones allegation of reliance. Plaintiff asserts, in the vaguest of terms, that when she purchased Honey Green Tea in 2012 and 2013, she relied on "representations on the label about Honey Green Tea's antioxidant content." (Compl. ¶ 4.) The Complaint, however, disputes three different nutrient content claims on three different Honey Green Tea labels that were used in different years. Since Plaintiff fails to specify *which* of these statements "[s]he relied upon in making h[er] decision to buy," all of her claims are deficient under Rule 9(b). *See Briseno*, 2011 U.S. Dist. LEXIS 154750, at *35 (quoting *Kearns*, 567 F.3d at 1126)); *accord Thomas*, 2013 U.S. Dist. LEXIS 51189, at *22-25 (plaintiff's claims insufficient to meet Rule 9(b) requirements where plaintiff failed to allege with particularity,

1   *inter alia*, "which parts of the labeling they have read . . . , which statements were on the labeling

2   of which products, etc.").

3            Moreover, it is clear from Plaintiff's own allegations that she in fact did not rely on at

4   least one of the nutrient content claims disputed in the Complaint.  Plaintiff alleges that her

5   purchases of Honey Green Tea were confined to two years, 2012 and 2013.  Nevertheless, the

6   Complaint purports to challenge a label representation ("EGCG Super-Antioxidant 250 mg per

7   bottle") that appeared on Honey Green Tea products only from 2008 until 2011.  Taking

8   Plaintiff's allegations as true, she plainly did not rely on the "EGCG Super-Antioxidant 250 mg

9   per bottle" representation, and her claims with respect to this long-discontinued label claim must

10   be dismissed.  *See Bronson*, 2013 U.S. Dist. LEXIS 54029, at *8 ("A plaintiff is not permitted to

11   support a claim alleging misleading product packaging with statements that he 'never read or

12   relied upon' when making his purchase"); *Lanovaz v. Twinings N. Am., Inc.*, No. 12-cv-2646,

13   2013 U.S. Dist. LEXIS 25612, at *4, 6 (N.D. Cal. Feb. 25, 2013) (dismissing claims "based upon

14   different labels or products other than" those plaintiff allegedly saw and purchased).

15            Beyond its claims concerning Honey Green Tea's nutrient content, the Complaint is

16   riddled with allegations of other supposed misrepresentations, including the "Honest Tea" name;

17   the "Refreshingly Honest" and "Brutally Honest" taglines; and statements related to Honey

18   Green Tea's sweetness level (e.g., "just a tad sweet" and "a kiss of honey, but not enough to

19   gross you out.").  (*See, e.g.*, Compl. ¶¶ 8-13, 21, 23.)  It is not clear whether these allegations

20   were included in the Complaint for rhetorical purposes only, or whether Plaintiff plans to

21   challenge these statements.  To the extent Plaintiff intends the latter, her claims are deficient

22   because she has not alleged that she even saw—much less relied upon—these alleged

23   misrepresentations.  *See, e.g.*, *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-cv-1586,  2013 U.S. Dist.

24   LEXIS 153136, at *18-19 (N.D. Cal. Oct. 24, 2013) (dismissing UCL, FAL and CLRA claims

25   where plaintiffs "fail[ed] to plead that they ever saw, read, or were even aware of" the alleged

26   misrepresentations "before this suit"; "[ig]noring . . . basic [standing] rules would invite lawsuits

27

28

by all manner of plaintiffs who could simply troll grocery stores and the Internet looking for any food product that might form the basis of a class-action lawsuit"); *Bronson*, 2013 U.S. Dist. LEXIS 54029, at *2-3 (plaintiffs lacked standing to pursue claims based on advertising they did not rely upon); *Lanovaz*, 2013 U.S. Dist. LEXIS 25612, at *4, 6 (same); *Ferraro Litig.*, 794 F. Supp. 2d at 1112 (same); *see Delacruz*, 2012 U.S. Dist. LEXIS 51094, at *13, 21-23; *Garcia*, 2012 U.S. Dist. LEXIS 20411, at *8-9 (dismissing breach of warranty claims based on, *inter alia*, plaintiff's failure to allege reliance).[5]

### III.   PLAINTIFF'S CLAIMS CONCERNING NON-ACTIONABLE PUFFERY SHOULD BE DISMISSED

To the extent that Plaintiff asserts claims based on the "Honest Tea" name; its "Refreshingly Honest" and "Brutally Honest" taglines; or its "just a tad sweet" and "a kiss of honey, but not enough to gross you out" statements, the claims should also be dismissed because these statements are non-actionable puffery.  *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("[d]istrict courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to [Rule] 12(b)(6)").

"Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005).  Unlike claims that challenge "a specific factual assertion which could be established or disproved through discovery," claims of this sort are incapable of objective verification "and hence. . . [are] mere puffery." *Id.* at 1140-41; *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) ("The distinguishing

---

[5] Plaintiff also lacks standing to challenge these alleged misrepresentations under Article III of the U.S. Constitution, which requires that she allege, *inter alia*, that she suffered an "injury-in-fact" "fairly traceable to the challenged action of the defendant." *Barnes v. Campbell Soup Co.*, No. 12-cv-5185, 2013 U.S. Dist. LEXIS 118225, at *9 (N.D. Cal. July 25, 2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Where a plaintiff lacks Article III standing, the suit must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *Thomas*, 2013 U.S. Dist. LEXIS 51189, at *5-6 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101, 109-10 (1998)).

characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions.").

Apart from the antioxidant statements on the Honey Green Tea labels, the statements at issue here are all general, vague and incapable of objective verification. Plaintiff does not explain—nor could she—how one would go about verifying whether Honest Tea's marketing is "refreshingly" or "brutally" honest, whether Honey Green Tea actually is a "tad" sweet, or whether the level of honey in Honey Green Tea qualifies as a "kiss" and is "not enough to gross you out." Such non-specific, non-measurable assertions are classic non-actionable puffery. *See, e.g.*, *Delacruz*, 2012 U.S. Dist. LEXIS 51094, at \*19 ("The word 'ideal' is vague, highly subjective, and non-actionable[.]"); *Henderson v. Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) ("The Authentic Tradition" is a non-specific and non-measurable claim qualifying as non-actionable puffery); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) ("'higher performance,' 'longer battery life,' 'richer multimedia experience,' 'faster access to data' are all non-actionable puffery"); *Annunziato*, 402 F. Supp. 2d at 1139 (same for "reliability," "high-quality," and "high performance"); *Summit Tech. v. High-Line Med. Instruments*, 933 F. Supp. 918, 931 (C.D. Cal. 1996) (same for "perfectly reliable").

The same is true with respect to Honest Tea's trademarked brand name, which is a play on the word "honesty" and makes no objectively verifiable and actionable statement of fact.[6] *See Shaker v. Nature's Path Foods, Inc.*, No. 13-cv-1138, 2013 U.S. Dist. LEXIS 180476, at \*17-18 (C.D. Cal. Dec. 16, 2013) ("Aside from the fact that the 'OPTIMUM(R)' used here is a registered brand name . . . , any reasonable consumer would understand that the word is not a specific and objective representation."); *Bronson*, 2013 U.S. Dist. LEXIS 54029, at \*31-32 ("no reasonable consumer would conclude, based on the presence of the word 'essential' in the name

---

[6] A simple search for the word "honest" in the United States Patent and Trademark Office's trademark registry reveals hundreds of trademarked names that contain that word (e.g., "Honest Concerts," "Honest Buildings," "Honest Mom," "Honest to Goodness"). Such a commonly-used, subjective term is incapable of misleading a reasonable consumer.

'Splenda Essentials,' that the Splenda products were essential to their diet"); *McKinniss v.*

*Kellogg USA*, No. 07-cv-2611, 2007 U.S. Dist. LEXIS 96106, at *11 (C.D. Cal. Sept. 19, 2007)

(dismissing claims that "Froot Loops" name misled plaintiffs into believing cereal contained real

fruit because "while this might be a fanciful take on the word F-R-U-I-T, it appears in the

trademarked name of the cereal, not on its own or as a description of the actual ingredients of the

cereal itself" such that no "reasonable consumer would view" it "as describing the ingredients of

the cereal").  Plaintiff's claim concerning the Honest Tea trademark (to the extent she purports to

raise any such challenge) should similarly be dismissed.

## IV.    PLAINTIFF'S IMPLIED WARRANTY CLAIMS ARE NOT VIABLE

　　　　Finally, Plaintiff's implied warranty claims are legally defective and must be dismissed.

A "plaintiff who claims a breach of the implied warranty of merchantability must show that the

product 'did not possess even the most basic degree of fitness for ordinary use.'"  *Viggiano v.*

*Hansen Natural Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (quoting *Mocek v. Alfa*

*Leisure, Inc.*, 114 Cal. App. 4th 402, 406, 7 Cal. Rptr. 3d 546 (2003)).  An implied warranty of

fitness for a particular purpose arises "[w]here the seller at the time of contracting has reason to

know any particular purpose for which the goods are required" and is breached if "'the seller's

product is not in fact suitable for the use intended by the purchaser.'"  *Id.* (quoting *Odell v.*

*Frueh*, 146 Cal. App. 2d 504, 508, 304 P.2d 45 (1956)).

　　　　Here, Plaintiff's implied warranty claims should be dismissed because she has not alleged

"any facts suggesting that [Honey Green Tea] is not merchantable or fit for use as a [bottled tea

beverage]; [s]he has not, for example, alleged that the beverage was not drinkable, that it was

contaminated or contained foreign objects."  *Id.* at 896 (dismissing implied warranty claims

based on representations that defendant's diet soda was "premium" and contained "all natural

flavors"; plaintiff "misapprehended the nature of implied warranty claims" and did not allege

that the product "lacks 'even the most basic degree of fitness for ordinary use'; nor does he

allege that the drink is not suitable for use as a diet soda").  The quantity of antioxidants in

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
(Case No. 2:13-cv-02318-KJM-EFB)

Honey Green Tea relative to the amount touted on the label does not impact its merchantability or fitness for a particular purpose. *Id.* ("specific representations" on label were not "characteristics that affect the product's merchantability or fitness for a particular purpose").

## CONCLUSION

By seeking to invalidate Honest Tea's nutrient content claims based on tests that do not comport with FDA's mandatory protocol, Plaintiff seeks to impose state-law requirements that are not identical to federal law. Her claims are therefore expressly preempted, and should be dismissed. Further, to the extent that Plaintiff's claims are based on alleged misrepresentations on which she did not rely and/or that qualify as non-actionable puffery, they should be dismissed for those additional reasons. Finally, Plaintiff's implied warranty claims are not legally viable and should be dismissed.

DATE:  January 27, 2014                    Respectfully submitted,

                                                          /s/ Tammy B. Webb
                             Tammy B. Webb (SBN 227593)
                             SHOOK, HARDY & BACON L.L.P.
                             One Montgomery, Suite 2700
                             San Francisco, California  94104
                             Telephone:  (415) 544-1900
                             Facsimile:  (415) 391-0281

                             Steven A. Zalesin (*pro hac vice* admission pending)
                             Travis J. Tu (*pro hac vice* admission pending)
                             PATTERSON BELKNAP WEBB & TYLER LLP
                             1133 Avenue of the Americas
                             New York, New York 10036
                             Phone: (212) 336-2000
                             Fax: (212) 336-2222

                             *Attorneys for Defendant*