1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:  ltfisher@bursor.com
            apersinger@bursor.com
            ykrivoshey@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH A. SALAZAR, on behalf of herself and all others similarly situated,<br><br>                                         Plaintiff,<br><br>     v.<br><br>HONEST TEA, INC.,<br><br>                                         Defendant. | Case No.  2:13-CV-02318-KJM-EFB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date: March 28, 2014<br>Time:  10 a.m.<br>Courtroom:  3<br><br>Hon. Kimberly J. Mueller |

**TABLE OF CONTENTS**

PAGE(S)

I.      INTRODUCTION ................................................................................................1

II.     THE RULE 12(b)(6) STANDARD ...................................................................2

III.    THE COURT MUST PRESUME THAT THE FEDERAL FOOD, DRUG,
        AND COSMETIC ACT DOES NOT PREEMPT PLAINTIFF'S CLAIMS ........2

IV.     PLAINTIFF'S CLAIMS SOUNDING IN WARRANTY ARE NOT
        PREEMPTED...................................................................................................3

V.      PLAINTIFF'S CLAIMS SOUNDING IN FRAUD ARE NOT
        PREEMPTED...................................................................................................6

        A.      Plaintiff Need Not Allege That She Complied with 21 C.F.R. §
                101.9(g) to State a Plausible Claim under California Consumer
                Protection Statutes ...............................................................................6

        B.      Honest Tea's Citation to *Vital v. One World* Is Inapposite .....................12

        C.      If the Representations at Issue Are Nutrient Content Claims, Honey
                Green Tea's Labels Would Violate the FDCA.........................................13

VI.     PLAINTIFF HAS PLED RELIANCE, AND INJURY ....................................16

        A.      Plaintiff May Pursue Claims as to Products Sold Before 2012...............17

VII.    PLAINTIFF HAS STATED A CLAIM FOR BREACH OF IMPLIED
        WARRANTY ................................................................................................19

CONCLUSION ...........................................................................................................20

1

**TABLE OF AUTHORITIES**

**PAGE(S)**

2

**CASES**

*Anderson v. Jamba Juice Co.*,
   888 F.Supp.2d 1000 (N.D. Cal. Aug. 25, 2012).................................................................. 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 2

*Astiania v. Dreyer's Grand Ice Cream, Inc.*,
   2012 WL 2990766 (N.D. Cal. July 20, 2012) .............................................................. 18, 19

*Bates v. Dow Agrosciences LLC*,
   544 U.S. 431 (2005) ..................................................................................................... passim

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 2, 12

*Brazil v. Dole Food Co., Inc.*,
   935 F.Supp.2d 947 (N.D. Cal. 2013) ............................................................................. 3, 16

*Bronson v. Johnson & Johnson, Inc.*,
   2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) .......................................................... 14, 15, 19

*Bruton v. Gerber Prods. Co.*,
   2013 WL 4833413 (N.D. Cal. Sept. 6, 2013) ................................................................. 2, 13

*Chacanaca v. Quaker Oats Co.*,
   752 F.Supp.2d 1111 (N.D. Cal. 2010)................................................................................. 3

*Cipollone v. Liggett Group, Inc.*,
   505 U.S. 504 (1992) ....................................................................................................... 5, 6

*Degelmann v. Advanced Med. Optics Inc.*,
   659 F.3d 835 (9th Cir. 2011) ............................................................................................. 16

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ........................................................................................................... 12

*Hauter v. Zogarts*,
   14 Cal. 3d 104 (1975) ....................................................................................................... 19

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011) ............................................................................. 19

*Khasin v. Hershey Co.*,
   2012 WL 5471153 (N.D. Cal. Sept. 26, 2013) ............................................................ 15, 17

*Koh v. S.C. Johnson & Son, Inc.*,
   2010 WL 94265 (N.D. Cal. Jan. 6, 2010) ......................................................................... 19

*Lanovaz v. Twinings North America, Inc.*,
   2013 WL 675929 (N.D. Cal. Feb. 25, 2013) ......................................................... 4, 15, 16, 17

*Nagel v. Twin Laboratories, Inc.*,
    109 Cal. App. 4th 39 (2003) ................................................................................ 9, 10
*Ogden v. Bumble Bee Foods, LLC*,
    292 F.R.D. 620 (N.D. Cal. Apr. 16, 2013) .................................................................. 18
*Pardini v. Unilever*,
    2013 WL 3456872 (N.D. Cal. Jul. 9, 2013) ................................................................ 13
*Peviani v. Hostess Brands, Inc.*,
    750 F.Supp.2d 1111 (C.D. Cal. Nov. 3, 2010) ........................................................... 13
*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. Nov. 27, 2012) ................................................................. 17
*United States v. Locke*,
    529 U.S. 89 (2000) ..................................................................................................... 2
*Usher v. City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987) ....................................................................................... 2
*Walling v. Beverly Enters.*,
    476 F.2d 393 (9th Cir. 1973) ....................................................................................... 2
*Williams v. Gerber Products Co.*,
    552 F.3d 934 (9th Cir. 2008) ....................................................................................... 2

**STATUTES**

21 U.S.C. § 343(r) .......................................................................................................... 4, 13
21 U.S.C. § 343–1(a) ........................................................................................................ 3, 4
7 U.S.C. § 136 ...................................................................................................................... 4
7 U.S.C. § 136v(b) ............................................................................................................... 4
Cal. Health & Safety Code § 110100 ................................................................................ 13
Cal. Health & Safety Code § 110670 ................................................................................ 13
California Commercial Code § 2314(1) ............................................................................. 19
Tex. Bus. & Com. Code Ann. § 17.01 ................................................................................. 4

**REGULATIONS**

21 C.F.R. § 101.54(g) .................................................................................................... 14, 16
21 C.F.R. § 101.9 ......................................................................................................... passim

# I.  INTRODUCTION

Defendant Honest Tea's Honey Green Tea does not contain the amount of antioxidants touted on the label.  Contrary to Honest Tea's brand identity and advertising campaign, Honest Tea has made false claims on Honey Green Tea's label since at least 2008.  Compl. at ¶¶ 23-28.  Honest Tea represents that its 16.9 fl. oz. bottles contain "247 mg Antioxidants Green Tea Flavonoids pre bottle."  *Id.* at ¶ 19.[1]  Independent testing has shown that that representation is false.  *Id.* ¶¶ 19, 29-34.  Before 2011, Honest Tea promised that Honey Green Tea contained "250mg EGCG Super Antioxidant Per Bottle."  *Id. ¶¶* 19, 29-34.  But Honest Tea's own marketing materials and the independent testing it flaunts on its website demonstrate that Honest Tea's claim was false.  *Id.* at ¶ 25.  Testing has also shown that Honest Tea's 2011 label claim that bottles of Honey Green Tea contained "Antioxidants 190 mg of naturally occurring green tea catechins" was likewise false.  *Id.* at ¶ 27.

Despite its false statements touting the antioxidant content of Honey Green Tea, Honest Tea claims that it should not be held responsible for its false statements because the FDA regulates "nutrient content claims."  Honest Tea's attempt to fit a square peg into a round hole fails because its false representations are not "nutrient content claims" regulated by the FDA.   Defendant's Motion showcases a stunning display of "cherry-picking" the federal Food, Drug, and Cosmetic Act ("FDCA") regulations to support its argument that Plaintiff must allege that she performed FDA compliance testing using the method set forth in 21 C.F.R. § 101.9(g).  But Section 101.9 does not apply and no such test is required.   In fact, if its claims were FDCA "nutrient content claims," as Honest Tea insists, then Honest Tea's labels would be misbranded under federal and state law and would give rise to California consumer protection claims.  As for Plaintiff's warranty claims, the analysis is simple – Honest Tea voluntarily made promises to consumers that it didn't keep.  At this stage, Plaintiff need only establish a "plausible" basis that Defendant violated consumer protection statutes and breached its warranties.  Alleging that numerous independent

---

[1] "Flavonoids are a comprehensive classification of antioxidants that includes all types of 'catechins.' … Green tea contains four main catechin substances" including epigallocatechin gallate (EGCG).  Compl. at ¶ 17.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

tests, uniformly demonstrate that Defendant's representations are grossly inaccurate satisfies this plausibility standard.  For these reasons, and the reasons set forth below, Defendant's motion lacks merit and should be denied

## II.  THE RULE 12(b)(6) STANDARD

For purposes of evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved in favor of the pleading.  *Walling v. Beverly Enters.*, 476 F.2d 393, 395-96 (9th Cir. 1973).  The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, in the context of deceptive marketing and false advertising claims, the Ninth Circuit has recognized that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Therefore, it is a "rare situation in which granting a motion to dismiss is appropriate." *Id.* at 939.

## III.  THE COURT MUST PRESUME THAT THE FEDERAL FOOD, DRUG, AND COSMETIC ACT DOES NOT PREEMPT PLAINTIFF'S CLAIMS

Honest Tea fails to mention that the Court must *presume* that Plaintiff's claims are *not* preempted.  The FDCA, as amended by the Nutrition Labeling and Education Act ("NLEA"), concerns a matter within "traditional categories of state law." *See Bruton v. Gerber Prods. Co.*, 2013 WL 4833413 at *11 (N.D. Cal. Sept. 6, 2013) ("…state law that involve[s] consumer protection, false advertising, and food labeling fall within the traditional scope of the state's police powers and predate the FDCA").  Where a state's police power is challenged under the Supremacy Clause, the Supreme Court instructs that a court must "start with the assumption that the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *United States v. Locke*, 529 U.S. 89, 107 (2000) (internal

citations omitted).  This presumption against preemption is heightened where, as here, "federal law is said to bar state action in fields of traditional state regulation." *Chacanaca v. Quaker Oats Co*., 752 F.Supp.2d 1111, 1118 (N.D. Cal. 2010) (internal quotations omitted).  Whenever a federal statute concerns matters of health and safety, "courts can assume … that such matters … can normally coexist with federal regulations." *Chacanaca*, 752 F. Supp.2d at 1118 (internal quotations omitted).   In fact, NLEA expressly states that it "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343–1(a)] of the [FDCA]."[2]   Even "[w]here Congress does provide for express preemption, the presumption against preemption requires courts to read the clause narrowly." *Chacanaca*, 752 F. Supp. at 1118. Indeed, if there are equally plausible alternatives to a reading of an exemption provision, courts "have a duty to accept the reading that disfavors pre-emption." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 432 (2005).  Thus, since the FDCA concerns a matter within traditional state regulation, the Court must presume that the NLEA does not preempt Plaintiff's claims.  *See Brazil v. Dole Food Co., Inc*., 935 F.Supp.2d 947, 955 (N.D. Cal. 2013).

### IV.  PLAINTIFF'S CLAIMS SOUNDING IN WARRANTY ARE NOT PREEMPTED

Honest Tea claims that the FDCA, as amended by NLEA, preempts Plaintiffs' warranty claims.  *See, e.g.*, Def.  Br. at 10.  But Honest Tea voluntarily made express warranties separate and apart from the food and beverage labeling requirements set forth by the FDCA.   Honest Tea elected to expressly warrant the following about Honey Green Tea: (a) "247 mg Antioxidants Green Tea Flavonoids Per Bottle," (b) "Antioxidants 190 mg Tea Catechins/Bottle," (c) "EGCG Super-Antioxidant 150mg per bottle." *See, e.g.*, Compl. at ¶ 45.  Since Honest Tea did not make the foregoing affirmative representations to comply with a federal requirement, Plaintiff's claim that Honest Tea breached its warranties is not preempted.

---

[2] 21 U.S.C. § 343–1(a) provides: [No] State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce…(5) any *requirement* respecting any claim of the type described in [21 U.S.C. § 343(r)] made in the label or labeling of food that is not identical to the requirement of section [21 U.S.C.  § 343(r).] (emphasis added).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The NLEA establishes a two part test for preemption of food labeling claims: "there ***must be (1) a federal requirement***, and (2) the challenged state or local rule must impose a requirement that is different from, or adds additional obligations to, ***the federal requirement***."  *Lanovaz v. Twinings North America, Inc.*, 2013 WL 675929 at *4 (N.D. Cal. Feb. 25, 2013) (emphasis added); *see also* 21 U.S.C. § 343–1(a) ("[No] State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce … (5) *any requirement* respecting any claim of the type described in [21 U.S.C. § 343(r)] made in the label or labeling of food that is not identical to the *requirement* of section [21 U.S.C.  § 343(r)]" (emphasis added)).  Because Honest Tea's express warranties were not *required* by federal law, Plaintiff's warranty claims are not preempted by or dependent upon federal law.  *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443-45 (2005).  As such, Plaintiff's claims impose no additional requirement on Honest Tea.

In *Bates*, the Supreme Court had occasion to examine the breadth of the term "requirement" as it relates to exemption of state common law and consumer protection claims.  *Bates*, 544 U.S. at 431.  In *Bates*, the defendants argued that the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136, *et seq*. (2000 ed. and Supp. II)  ("FIFRA") expressly preempted plaintiffs' Texas common law claims and causes of action brought pursuant to the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code Ann. § 17.01, *et seq*. (West 2002).  *Bates*, 544 U.S. at 431.[3]

The court concluded that the plaintiffs' express warranty claims and consumer protection claims based on the warranties were not "requirements," and thus not preempted by nor dependent upon federal law.  The Court stated the following:

> **An occurrence that merely motivates an optional decision does not qualify as a requirement**. The Court of Appeals was therefore quite wrong when it assumed that any event, such as a jury verdict, that might "induce" a

---

[3] FIFRA and NLEA share almost identical preemption provisions.  *Compare* 7 U.S.C. § 136v(b) (stating that a "State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter"), *with* 21 U.S.C. § 343–1(a)(5) (quoted *supra*, fn. 1).

> pesticide manufacturer to change its label should be viewed as a requirement….
>
> … Rules that require manufacturers to design reasonably safe products … and to honor their express warranties or other contractual commitments plainly do not qualify as requirements for labeling or packaging. None of these common-law rules requires that manufacturers label or package their products in any particular way. Thus, petitioners' claims for defective design, defective manufacture, negligent testing, and breach of express warranty are not pre-empted. …
>
> **[A] cause of action on an express warranty asks only that a manufacturer make good on the contractual commitment that it voluntarily undertook by placing that warranty on its product. Because this common-law rule does not require the manufacturer to make an express warranty, or in the event that the manufacturer elects to do so, to say anything in particular in that warranty, the rule does not impose a requirement for labeling and packaging.**

*Bates*, 544 U.S. at 443-45 (internal citations and quotations omitted).  The Court in *Bates* further held that where a plaintiff's warranty claims are not preempted, state consumer protection claims are likewise not preempted to the extent they sound in warranty.  *See Bates*, 544 U.S at 445 n.18 ("Because petitioners' warranty claim is not pre-empted, their claim under the Act is not pre-empted to that extent.").  In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525-26 (1992), the Supreme Court similarly held that express warranties based on advertising claims are not "requirements" imposed by state law.  The *Cipollone* holding is particularly powerful because, unlike NLEA, the federal preemption provision at issue there explicitly prevented state law prohibitions related to the advertising of cigarettes.  *See Bates*, 544 U.S. at 447 n. 22.  Thus, the holding in *Cipollone* rested exclusively on the basis that common law express warranties do not pose additional state "requirements."

The Supreme Court instructs that "[t]he proper inquiry calls for an examination of the elements of the common-law duty at issue, not for speculation as to whether a jury verdict will prompt the manufacturer to change its label."  *Id*. at 432.  In *Cipollone*, 505 U.S. at 526, the Court observed that "[w]hile the general duty not to breach warranties arises under state law, the particular 'requirement … with respect to … advertising or promotion … in an express warranty claim arises from the manufacturer's statements in its advertisements.  In short, a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a

'requirement ... *imposed under State law*.'"  (internal citations omitted).  Similarly, the express warranty claims at issue here rest on voluntary promises made through Defendant's advertising and are contractual in nature.  *See* Compl. at ¶¶ 18-25, 44-45, 73, 83.

Here, as in *Bates*, holding Defendant to the express promises it made on its labels and advertising material would not impose a state labeling "requirement" that is "not identical" to an NLEA provision.  Simply, it would not impose a state labeling "requirement" at all.  *See Cipollone*, 505 U.S. at 525 ("the 'requirement[s]' imposed by an express warranty claim are not 'imposed under State law,' but rather imposed *by the warrantor*" (emphasis in original)).  As explained in detail below, Plaintiff's claims do not concern labeling statements mandated or pre-approved by the FDA or any other federal authority.  Plaintiff asserts express warranty claims based on voluntary advertising statements concerning the amount of antioxidants in Defendant's products; such statements appear wholly outside the FDA mandated "Nutrition Facts" section on the label. *See* Compl. at ¶¶ 18-25, 44-45, 73, 83.  Fulfilling these affirmative marketing promises does not impose a "requirement" under state law.  *See Cipollone*, 505 U.S. at 527 (statements amounting to warranties made through Defendant's advertising did not constitute state "requirements").  Thus, contrary to Defendant's assertions, *see* Def. Br. at 11-12, Plaintiff need not meet either the NLEA's standard nor employ the analytical methodology in 21 C.F.R. § 101.9(g) to proceed with her claims sounding in warranty.  *See Bates*, 544 U.S. at 446-47 (requiring an analysis of whether state common law standards are equivalent to federal standards only for fraud and negligent-failure-to-warn claims  to survive preemption, without any such analysis for claims sounding in warranty).

## V.  PLAINTIFF'S CLAIMS SOUNDING IN FRAUD ARE NOT PREEMPTED

### A.  Plaintiff Need Not Allege That She Complied with 21 C.F.R. § 101.9(g) to State a Plausible Claim under California Consumer Protection Statutes

Honest Tea misleadingly claims that Plaintiff must follow the testing methodology in 21 C.F.R. § 101.9(g) to establish that its antioxidant representations are false and misleading under California consumer protection laws.  *See* Def. Br. at 9.  Contrary to Honest Tea's contention, Plaintiff need not allege that the testing that supports her claims complied with Section 101.9(g) to

---

state a claim under California consumer protection statutes.  Section 101.9 is wholly inapplicable to the antioxidant advertising claims at issue.  The FDA's Section 101.9 methodology is used solely for purposes of establishing compliance with the FDA's regulations for nutrition labeling.  *See* 21 C.F.R. § 101.9(g) ("Compliance *with this section* shall be determined as follows…" (emphasis added)).  Section 101.9 relates to food labeling *requirements for regulated* "*nutrients*," such as where the Nutrition Facts label should be placed, rather than labeling intended to advertise to consumers and induce consumers to purchase a product.  *See e.g.* 21 C.F.R. § 101.9(a) ("Nutrition information relating to food shall be provided for all products intended for human consumption and offered for sale … (1) When food is in package form, the required nutrition labeling information shall appear on the label in the format specified in this section"); 21 C.F.R. § 101.9(b) ("… all nutrient and food component quantities shall be declared in relation to a serving as defined in this section");  21 C.F.R. § 101.9(c) ("The declaration of nutrition information on the label and in labeling of food shall contain information about the level of the following nutrients … (1) 'Calories, total'… (2) 'Fat, total' … (3) 'Cholesterol' … (4) 'Sodium' … (5) 'Potassium' (VOLUNTARY) …. (6) 'Carbohydrate, total' … (7) 'Protein' … (8) Vitamins and minerals:  A statement of the amount per serving of the vitamins and minerals as described in this paragraph, calculated as a percent of the RDI and expressed as percent of Daily Value…"); 21 C.F.R. § 101.9(f) ("The declaration of nutrition information may be presented in the simplified format set forth herein when a food product contains insignificant amounts of eight or more of the following: Calories, total fat, saturated fat, *trans* fat, cholesterol, sodium, total carbohydrate, dietary fiber, sugars, protein, vitamin A, vitamin C, calcium, and iron…".

While the requirements for the "Nutrition Facts" box on the label are exhaustively discussed, Section 101.9 does not mention antioxidants *at all*.  Indeed, Section 101.9 and the FDA Food Labeling Guide are littered with examples of compliant "Nutrition Facts" boxes.  *See* 21 C.F.R. § 101.9(d)(1) (Nutrient information specified in paragraph (c) shall be presented on foods in the following format, as shown in paragraph (d)(12) …"); 21 C.F.R. § 101.9(e)(5) ("The following sample label illustrates the provisions of paragraph (e) of this section: … "); 21 C.F.R. § 101.9

(j)(13)(ii)(A)*(1)* ("The following sample label illustrates the tabular display."); 21 C.F.R. § 101.9 (j)(13)(ii)(A)*(2)* ("The following sample label illustrates the linear display.  When nutrient information is given in a linear fashion, bolding is required only on the title 'Nutrition Facts' and is allowed voluntarily for the nutrient names for 'Calories,' 'Total fat,' 'Cholesterol,' 'Sodium,' 'Total carbohydrate,' and 'Protein.'"); *see also* FDA Food Labeling Guide, Exh. A to Plaintiff's RJN.  In fact, Honest Tea's own label demonstrates that antioxidant claims are not regulated by Section 101.9 because there is no information *at all* about antioxidants in the Nutrition Facts panel of the label.  *See* Compl. ¶ 18.

Honest Tea also relies on Section 101.13(o) for the proposition that Plaintiff is required to perform testing as set forth in Section 101.9(g) to state a claim for relief.  But, like Section 101.9, Section 101.13 does not apply to Honest Tea's false labeling claims about green tea antioxidants. Section 101.13(o) refers to "compliance with requirements for *nutrient content claims in this section*…"  (emphasis added). Honest Tea's false labeling claims are not "nutrient content claims" under Section 101.13.  With regard to "nutrient content claims," Section 101.13 provides: "(b) A claim that expressly or implicitly characterizes the level of a nutrient *of the type required to be in nutrition labeling under 101.9* or under 101.36 (*that is, a nutrient content claim*) may not be made on the label…unless the claim is made in accordance with this regulation … (c) Information that is required or permitted by 101.9 or 101.36, as applicable, to be declared in nutrition labeling…"  Again, the type of labeling required by Section 101.9 includes a declaration of nutrition information for nutrients such as fat, cholesterol, sodium, potassium, carbohydrate, protein, and vitamins and minerals.  *See* 21 C.F.R. § 101.9(c) (listing regulated nutrient information: calories, fat, cholesterol, sodium, potassium, carbohydrate, protein, vitamins and minerals); *see also* 21 C.F.R. 101.36(b) ("The declaration of nutrition information on the label and in labeling shall contain the following information … (1) Serving size … (2) Information on dietary ingredients that have a Reference Daily Intake (RDI) or a Daily Reference Value (DRV) as established in 101.9(c) and their subcomponents…").  In short, Plaintiff's state law claims would

not impose a "non-identical" requirement on Honest Tea because the false representations at issue are not subject to FDA requirements at all.

*Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39 (2003), illustrates that Section 101.9 does not apply to Plaintiff's California false advertising claims.   In *Nagel*, Twin Labs manufactured and marketed dietary supplements containing ingredients obtained from the ma huang plant.  *Id.* at 43.  Results of tests conducted on the product appeared to show the amount of the ingredient differed dramatically.  *Id.* at 44.  Nagel sued Twin Labs for unfair competition, false advertising, and violation of the CLRA.  *Id.* at 42-43.  To support his claims, Nagel contended that the statements on the bottle labels and on Twin Lab's website regarding the amount of the ingredient were false and misleading.  *Id.* at 42-43.  The court concluded that:

> **The evidence offered by Nagel was sufficient to establish a probability he would prevail on the merits of his claims. Accepting all admissible evidence as true and indulging in every reasonable inference to be drawn from that evidence, the trial court properly found Twin Labs' statements were either false or likely to be misleading to a reasonable consumer.  If the Ripped Fuel labels and the Twin Labs' Web site stated the product was "standardized for 6% ephedrine" but the actual amount of ephedrine varied dramatically, *it could be inferred a reasonable consumer concerned about the amount of ephedrine in the product would likely be misled by Twin Labs' advertisin*g.** The probability of proving all the elements of Nagel's claims was therefore established.

*Id.* at 52.  Nowhere did the court find that the plaintiff was required to establish that his testing complied with Section 101.9(g).  In fact, the court rejected Twin Labs' argument that Nagel had failed to prove that the list of ingredients on the labels and the Web Site was actually false based on Section 101.9(g).  *Id.* at 53.  As stated by the court:

> there would be two unavoidable problems with Twin Labs' argument.  **First, the federal government's determination that a 20 percent inaccuracy on the label of a dietary supplement is acceptable does not mean a reasonable consumer would not be misled by it, nor does it mean that under California law the *advertising* cannot be deemed false.**  "[T]he policies which are furthered by the California statutes would be undermined by the filed rate doctrine's presumption of a consumer's omniscience of filed rates, and the resulting immunity to common carriers, regardless of any advertising deception used to lure the consumer." *Dav v. AT&T Corp.* 63 Cal. App. 4th 325, 331 (1998) [phone carrier's compliance with federal filed rate doctrine did not immunize it from claims of unfair competition and false advertising under California Law].

The Federal Food, Drug, and Cosmetic Act deems any food to be misbranded '[i]f (1) its labeling is false or misleading in any particular' 21 U.S.C. § 343(a)(1)), and deems dietary supplements to be misbranded if 'the label or labeling of the supplement fails to list—(i) the name of each ingredient of the supplement that is [an herb or other botanical]; and (ii)(I) the quantity of each such ingredient" (21 U.S.C. § 343(s)(2)(A)(i) & (ii)(I)). The language of the federal statute appears to support Nagel rather than Twin Labs in this regard.  Moreover, as Nagel points out, **at least one of the test results admitted as evidence in opposition to the section 425.16 motion was not equal to 80 percent of the amount stated on the label, and one test result alone would be sufficient to establish a probability of prevailing on the merits.**

*Id.* at 53-54 (emphasis added).

Similarly, here, Honey Green Tea's label states that it contains a specific milligram amount of antioxidants that it does not in fact contain.  *See, e.g.,*  Compl. at ¶¶ 18-22.  Thus, a reasonable consumer concerned about the amount of antioxidants in the product would likely be misled by Honest Tea's advertising.  *See id.* at ¶ 53.  Plaintiff does much more than point to "one test result" to establish that her California consumer protection claims are plausible.  *See Nagel*, 109 Cal. App. 4th at 54.  Specifically, Plaintiff alleges that *several* tests demonstrate that Honest Tea's antioxidant claims are false and misleading:

- "Honest Tea's own marketing materials demonstrate that the 250 mg EGCG claim was false.  On its website, Honest Tea cites two editions of Men's Health Magazine, which Honest Tea claims 'independently tested' Honey Green Tea in January 2009 and June 2008.  Both articles state that bottles of Honey Green Tea contained 71 mg of EGCG per bottle.  Seventy-one milligrams of EGCG is not even a third of the EGCG per bottle that Honest Tea claimed on the label.  Thus, even the testing done by Men's Health that Honest Tea flaunts on their website demonstrates that Honest Tea's 250mg EGCG labeling claim was false."  Complaint ¶ 25;

- "independent testing showed that Honey Green Tea contained on average only 70 mg of EGCG per bottle.  Similarly, a report published by ConsumerLab.com on December 21, 2012, and updated and republished on May 30, 2013, found 57.5 mg of EGCG per bottle.  That is only 23% to 28% of the 250 mg represented on the label."  *id.* at ¶ 26;

- "the new labels represented that Honey Green Tea contained '190 mg of naturally occurring green tea catechins' per 16.9 fl. oz. bottle….The report published by ConsumerLab.com found only 119 mg of catechins, and 57.5 mg of the catechin EGCG, per 16.9 fl. oz. bottle of Honest Tea Green Tea with Honey.  Consumerlab.com stated that 'only 62.7%' of the 190 mg of green tea catechins listed on the label were found in testing.  Based on its test results, ConsumerLab.com listed Honest Tea Green Tea with Honey as 'Not Approved…for failing to meet a label claim.'  Furthermore, the testing done by the independent lab retained by Plaintiff supports ConsumerLab.com's finding."  *id.* at ¶ 27;

- "The 'Total Biolfavonoids Analysis' performed by the independent lab showed that the flavonoids in Honey Green tea averaged 0.373 mg per milliliter, or 186.67 mg per 16.9 fl. oz. (500 ml) bottle.  The testing demonstrates that there are 60 mg fewer,

or 24% less, flavonoids in Honey Green Tea than the 247 mg amount prominently claimed on the label." *id.* at ¶ 31.

In fact, not even Honest Tea is required to use the testing methodology set forth in Section 101.9(g) to ensure compliance with FDA food labeling requirements. In "Guidance for Industry: A Food Labeling Guide," the FDA provides answers to food labeling questions including the following:

> Question: How many samples of each product should we analyze for nutrition labeling?

> Answer: FDA has not defined the number of samples that must be analyzed. It is the responsibility of the manufacturer/packer/distributor to determine the variability of their product(s) and the number of samples needed to provide accurate nutrient data …. FDA, may be of assistance in this area. FDA will use a composite of 12 units when performing enforcement analyses. 21 C.F.R. 101.9(g).

FDA Food Labeling Guide, N30 at pp. 31 (emphasis added), Exh. A to Plaintiff's RJN.

Honest Tea also asserts that it is not appropriate to determine whether a label claim is false and misleading "by grabbing a few samples off the shelf and subjecting them to some type of testing." *See* Def. Br. at 10. But it would be unfeasible for a consumer to perform the FDA compliance test set forth in Section 101.9(g). To ensure compliance with the food labeling requirements *in that section*, 101.9(g) requires a "sample for nutrient analysis [] consit[ing] of 12 sub-samples (consumer units), taken 1 from each of 12 different randomly chosen shipping cases, to be representative of a lot. Unless a particular method of analysis is specified….composites shall be analyzed by appropriate methods as given in the 'Official Methods of Analysis of the AOAC International…" As an initial matter, Plaintiff did use an AOAC International approved method:

> The independent lab performed a "Total Bioflavonoid Analysis" using the ORAC (Oxygen, Radical, Absorbance Capacity) method. AOAC International, a global leader in the development and standardization of validated analytical methods, has approved the ORAC method, developed by the USDA, as a First Action Official Method (SM) for measuring antioxidants in foods ....

Compl. ¶ 30. Plaintiff did not, however, have access to "12 different randomly chosen shipping cases." Manufacturers rather than consumers have access to shipping cases. To hold that a consumer is required to follow the testing described in Section 101.9(g) to state a plausible claim for relief under California's consumer protection laws would allow manufacturers to include deceptive labeling claims with impunity.

**B.      Honest Tea's Citation to _Vital v. One World_ Is Inapposite**

In support of its argument that Plaintiff must perform FDA compliance testing under Section 101.9(g), Defendant cites only one case - a non-binding, unpublished district court decision on a motion for summary judgment that is entirely distinguishable for several reasons.  _See, e.g_, Def. Br. at 2 (citing _Vital v. One World Co_., No. 12-cv-314, 2012 U.S. Dist. LEXIS 186203 (C.D. Cal. 2012)).  First, even Honest Tea readily admits that the reasoning in _Vital_ is inapplicable to a motion to dismiss.  _See_ Def. Br. at 14 n. 4 ("The court in _Vital_ converted defendant's motion to dismiss into a motion for summary judgment '_reasoning that the issues at stake would be better determined after an examination of evidence_'" (emphasis added)).  Plaintiff need not prove her case at this stage of the litigation, but need only give Honest Tea "fair notice" of the claim and "the grounds upon which it rests."  _Erickson v. Pardus_, 551 U.S. 89, 93 (2007) (citing _Twombly_).  Plaintiff has done so.  She alleges that, contrary to Honest Tea's labeling claims, Honey Green Tea does not contain the amount of antioxidants touted on the label.  _See, e.g._, Compl. at ¶ 1.

Second, an examination of the labeling claims related to regulated nutrient at issue in _Vital_, magnesium, compels the opposite conclusion with respect to the unregulated antioxidants at issue here.  The FDCA specifically requires that the amount of magnesium appear in the "Nutrition Facts" on the product's labels and meet the established criteria set out for such vitamins and minerals under 21 C.F.R. § 101.9(c)(8)(ii)-(iv).  For instance, Section 101.9(c)(8) provides: "Vitamins and minerals:  A statement of the amount per serving of the vitamins and minerals as described in this paragraph, calculated as a percent of the RDI and expressed as percent of daily value … (iv)  The following RDI's and nomenclature are established for the following vitamins and minerals which are essential in human nutrition: … Magnesium, 400 milligrams."  The antioxidant marketing representations at issue here, however, are not regulated nutritional information related to the "Nutrition Facts" section of the label and are not regulated under Section 101.9.  Instead, Honest Tea's representations concerning the milligram amounts of antioxidants in

Honey Green Tea are false representations designed to induce consumers to purchase Honey Green Tea.[4]

Third, even after he had the opportunity to take discovery, the plaintiff in *Vital* pointed to only one study in support of his claim that the product contained only 11 milligrams of magnesium rather than the 25 milligrams of magnesium represented on the label.  In stark contrast, Plaintiff alleges that three separate independent studies demonstrate that Honest Tea's antioxidant representations are false.  *See* Compl. ¶¶ 25-34.

Finally, the plaintiff in *Vital* did not direct the court to the Supreme Court's instructions in *Bates* in regards to the preemption of express warranty claims.  As a result, the court in *Vital* did not analyze whether a warranty claim is a labeling "requirement" under § 343–1(a)(5).  Likewise, the *Vital* court did not analyze plaintiffs' warranty claims through "an examination of the common-law duty at issue."  *Bates*, 544 U.S. at 445.

> ### C.   If the Representations at Issue Are Nutrient Content Claims, Honey Green Tea's Labels Would Violate the FDCA

If the FDCA *did* regulate the false labeling claims at issue, which it does not, then Honest Tea's Honey Green Tea would be misbranded under federal law, as well as state law adopting the federal law.[5]  Defendant's brief focuses almost exclusively on the supposed FDCA regulation of

---

[4] Like *Vital*, *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 113, 115 (9th Cir. Cal. 2012), *Pardini v. Unilever*, 2013 WL 3456872, *6 (N.D. Cal. Jul. 9, 2013), and *Peviani v. Hostess Brands, Inc.*, 750 F.Supp.2d 1111, 1120 (C.D. Cal. Nov. 3, 2010) are inapplicable because in those cases the claim at issue was "0g Trans Fat" which *is* a nutrient content claim.  *See* 21 C.F.R. 101.9(c) ("The declaration of nutrition information on the label and in labeling of food shall contain information about the level of the following nutrients … (2) 'Fat, total'"; s*ee also*  21 C.F.R. 101.9(f) "The declaration of nutrition information may be presented in the simplified format set forth herein when a food product contains insignificant amounts of … *trans* fat …. "

[5] California's Sherman Food, Drug, and Cosmetic Law (the "Sherman Law") has "expressly adopted the federal labeling requirements as its own."  *Bruton*, WL 4833413 at *8 (citing Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.")).  Further, the Sherman Law has also directly incorporated specific FDCA regulations, including the FDCA provisions dealing with antioxidant claims related to a regulated nutrient.  *See id.* (citing Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in…(21 U.S.C. § 343(r)) of the federal act and the regulations adopted pursuant thereto"))

the false antioxidant representations at issue.  Considering that Defendant repeatedly characterizes

the claims at issue as "nutrient content claims" regulated by the FDA, it is simply stunning that

Defendant does not mention even *once* the federal provision regulating "[n]utrient content claims

using the term 'antioxidants.'" 21 C.F.R. § 101.54(g).[6]  The specific section of the FDCA, 21

C.F.R. § 101.54(g), that Honest Tea purposely overlooks, provides the following:

> ***Nutrient content claims using the term "antioxidant." A nutrient content claim that
> characterizes the level of antioxidant nutrients present*** in a good may be used on the label
> or in the labeling of that food when:
> (1) An [Reference Daily Intake] has been established for each of the nutrients;
> (2) The nutrients that are the subject of the claim have recognized antioxidant activity…;
> (3) The level of each nutrient that is the subject of the claim is sufficient to qualify for the §
>      101.54(b), (c), or (e) claim…; *and*
> (4) The names of the nutrients that are the subject of the claim are included as part of the
>      claim (e.g., "high in antioxidant vitamins C and E").  Alternatively, when used as part
>      of a nutrient content claim, the term "antioxidant" or "antioxidants" (as in "high in
>      antioxidants") may be linked by a symbol (e.g. an asterisk) that refers to the same
>      symbol that appears elsewhere on the same panel of a product label followed by the
>      name or names of the nutrients with recognized antioxidant activity.  The list of
>      nutrients shall appear in letters of a type size height no smaller than the larger of one-
>      half of the type size of the largest nutrient content claim or 1/16 inch.

(emphasis added).

This provision, however, also shows that Honest Tea's false labeling claims are *not*

"nutrient content claims" regulated by the FDA.  In Section 101.54(g), the phrase "Nutrient content

claims using the term 'antioxidant'" refers to antioxidant claims made about *regulated* nutrients,

*i.e.* nutrient content claims, where the phrase "antioxidant" is used to describe the regulated

nutrient, such as vitamins C and E.  *See* 21 C.F.R. § 101.54(g)(4) ("The names of the nutrients that

are the subject of the claim are included as part of the claim (*e.g.*, '***high in antioxidant vitamins C

and E***')"). (emphasis added).

By way of example, in *Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191 *4 (N.D.

Cal. Apr. 16, 2013), "Plaintiffs challenge[d] the labeling on Splenda Essentials with Antioxidants,

---

[6] Even if FDCA regulations apply to Plaintiff's claims, which they do not, Defendant's contentions
as to the testing requirements set out by Section 101.9(g) would remain unavailing because Section
101.9 does not apply under the specific federal provision that would apply to the claims at issue
here.  *See* 21 C.F.R. § 101.54(g).

which state[d] that the product contain[ed] '20% of the daily value of antioxidant **vitamins C and E**…'" (emphasis added).  The *Bronson* court held that defendant's statement that Splenda with Antioxidants contained "20% of the daily value of antioxidant vitamins C and E" were express nutrient content claims permitted by Section 101.13(i) and evaluated whether the defendant met each element of Section 101.54(g) such as whether "the level of each nutrient is at least 10% of the RDI for vitamins." *Id.* at *4-5.  Unlike regulated nutrients such as vitamins C and E, the FDA considers "tea" a "Food[] of No Nutritional Significance."  *See* FDA Food Labeling Guide, L120 at p. 64, Exh. A to Plaintiff's RJN.  Indeed, Section 101.9(j) specifically exempts tea leaves from the "declaration of nutrition information under paragraph [101.9] (c)."  *See* 21 C.F.R. § 101.9(j) ("The following foods are exempt from this section … (4) Foods that contain insignificant amounts of all of the nutrients and food components required to be included in the declaration of nutrition information under paragraph (c) of this section…Examples of foods that are exempt under this paragraph include coffee beans (whole or ground), **tea leaves**, plain unsweetened instant coffee and tea, condiment-type dehydrated vegetables, flavor extracts, and food colors.") (emphasis added).

Courts have held that making "nutrient content claims" for regulated nutrients without established Reference Daily Intake ("RDI") values violates Section 101.54(g) requirements.  *See Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 897-98, 900 (N.D. Cal. Dec. 17, 2012); s*ee also Khasin v. Hershey Co*., 2012 WL 5471153 at *7 (N.D. Cal. Sept. 26, 2013) (rejecting Hershey's argument that for its claims to be misleading and in violation of FDA regulations the plaintiff would have had to have been familiar with the FDA regulations regarding phrases like "excellent source" and "good source" and refusing to dismiss claim that Hershey's products were a "good source" of antioxidants because it was  a "question[] of fact as to whether Plaintiff was or was not deceived by the labeling"); *Bronson*, 2013 WL 1629191, at *4-5.  Thus, where antioxidant claims involve regulated nutrients without established RDI's, a court need only determine that the statements at issue indeed constitute "nutrient content claims" to find a violation of the FDCA.  *See Lanovaz*, 2013 WL 675929 at *5 ("[Defendant's] 'natural source of antioxidants' label does not

meet [the requirements of § 101.54(g)]. Therefore, if the label makes a nutrient content claim, [Plaintiff's] state UCL and FAL claims are viable").

Here, if the Court finds that Honest Tea makes "nutrient content claims," as Honest Tea argues, then under Section 101.54(g) Honest Tea's failure to include an RDI on Honey Green Tea's label violates 21 C.F.R. § 101.54(g). As such, Honey Green Tea would be misbranded under Section 101.54(g), and California's Sherman Law by incorporation and Plaintiff would be able to proceed with her state consumer protection claims. *See Lanovaz*, 2013 WL 675929 at *5 (holding that since antioxidant representations did not meet Section 101.54(g), the court need find only that "the label makes a nutrient content claim" for a plaintiff's UCL and FAL claims to be "viable").

## VI.  PLAINTIFF HAS PLED RELIANCE, AND INJURY

Honest Tea contends that "Plaintiff's claims must be dismissed for the additional reason that her Complaint does not allege that she relied upon and was injured by the various representations she disputes." Def. Br. at 14. That is patently false. Plaintiff has clearly alleged that she relied on Honest Tea's representations and was injured as a result:

> From 2012 until August 2013, Ms. Salazar regularly purchased Honest Tea honey Green Tea. Prior to purchasing Honey Green Tea, Ms. Salazar reviewed the product's label. Relying on the representations on the label about Honey Green Tea's antioxidant content, Ms. Salazar purchased Honey Green Tea …. Ms. Salazar would not have purchased Honey Green Tea had she known the truth about the product's antioxidant content. Instead, she would have paid much less for tea leaves or a tea bag of green tea. Ms. Salazar suffered injury in fact and lost money as a result of Honest Tea's deceptive, misleading, unfair and fraudulent practices described herein.

Compl. at ¶ 4; *see also* CLRA Venue Declaration. In cases of mislabeled products, the Ninth Circuit has "held that evidence that plaintiffs would not have purchased a product if the product had been labeled accurately is sufficient to establish injury under California's consumer laws." *Jones*, 912 F. Supp. 2d at 901 (citing *Degelmann v. Advanced Med. Optics Inc*., 659 F.3d 835, 840 (9th Cir. 2011)). *See also Brazil*, 935 F. Supp. 2d at 961 (allegations that class members "spent money that, absent defendants' actions, they would not have spent"…"constitutes 'a quintessential injury-in-fact'"). Further, a plaintiff can establish standing by pleading that she "did not receive the full value of those products as advertised and labeled due to the alleged misrepresentation."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Khasin*, 2012 WL 5471153 at *6; *see also Jones*, 912 F. Supp. 2d at 901 (standing established where plaintiffs alleged that they paid an "unwarranted premium" for the mislabeled products).  As such, Plaintiff has sufficiently pled that she relied and was injured by the representations at issue.  *See* Compl. ¶ 21 (describing Honest Tea's label that could be found on the shelves from 2011-2013); *id.* at ¶ 18 (describing Honest Tea's current label).

While the factual determination of actual reliance by the plaintiff is inappropriate at a motion to dismiss, *Lanovaz*, 2013 WL 675929 at *6, it is worth noting that "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material."  *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 530 (N.D. Cal. Nov. 27, 2012).  A misrepresentation is material wherever "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction."  *Id.*  Plaintiff alleges that Honest Tea's antioxidant claims are material to consumers.  Compl. at ¶ 15 ("Consumers make purchasing decisions based on claims about antioxidants.  According to a consumer survey by Bossa Nova, half of adults rank antioxidants as the top nutrient they are most concerned about adding to their diets …").  Honest Tea complains that Plaintiff's allegations related to its "Honest" brand identity are non-actionable puffery, Def. Br. at 18, but because the word "Honest" appeared prominently on the labels Plaintiff reviewed before purchasing Honey Green Tea, it is no surprise that Plaintiff believed Honest Tea's labeling claim.  Indeed, any reasonable consumer *would* believe *Honest* Tea.  *See, e.g*., Compl. at ¶ 20 ("By touting the '247 mg antioxidant' content in its tea, and by employing the word 'Honest' in its name, on the label and on its website, Honest Tea hooks in consumers who would otherwise purchase green tea leaves or bags of green tea to brew that provide more flavonoid antioxidants for much less.").

### A.    Plaintiff May Pursue Claims as to Products Sold Before 2012

Defendant also asserts that Plaintiff has failed to plead standing and/or reliance as to bottles of Honest Tea sold before she began purchasing Honest Tea in 2012.  *See* Def. Br. at 16 (contending that Plaintiff's claims with respect to bottles containing the "EGCG Super-Antioxidant 250 mg per bottle" representation, sold before 2012, should be dismissed because she only

purchased the bottles beginning in 2012).  Defendant's claim ignores the fact that each Honest Tea label was affixed to *the same product*, made *predominantly similar claims* involving antioxidant content, and involve *identical issues of law and fact*.

> To determine if a plaintiff has standing to pursue claims involving a product she *did not use*, the "critical inquiry" is "whether there is sufficient similarity between the products purchased and not purchased."  *Astiana v. Dreyer's Grand Ice Cream, Inc*., 2012 WL 2990766, *11 (N.D. Cal. July 20, 2012); *see also Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 626 (N.D. Cal. Apr. 16, 2013) (plaintiff could assert claims for unpurchased products after making "a prima facie showing" of similarity between products where they had "similar or identical claims about Omega–3 content, as those labels may have misled class members in the same way that they allegedly misled [Plaintiff]" and, alternately, because they contained "essentially the same ingredients").  Here, the product Plaintiff purchased in 2012 is more than just similar to the product sold prior to 2012; **the products are *identical***.  Compl. at ¶ 23 (Honest Tea "did not change the formulation of Honey Green Tea").

> If an identical product is not "similar" enough, the similarities between the three Honest Tea bottles at issue do not end there:  every variation of the label made a representation about Honey Green Tea's antioxidant content.  The current label represents that "EGCG is our favorite flavonoid one of many tea antioxidants" and that the bottle contains "247mg Antioxidants Green Tea Flavonoids."  Compl. at ¶ 18.  Indeed, EGCG is a "catechin" that is a subset of "Green Tea Flavonoids."  *Id.* at ¶ 17; *see also Anderson v. Jamba Juice Co.*, 888 F.Supp.2d 1000, 1005-06 (N.D. Cal. Aug. 25, 2012) (plaintiff had standing to assert claims on behalf of purchasers of smoothies he did not buy because they involved similar misrepresentations about identical ingredients). Thus, the current label is substantially similar to Honest Tea's 2008-2011 label that represented that it contained "250mg EGCG per bottle."  In short, Plaintiff has standing to assert claims based on the 2008 label on behalf of the class.

> Importantly, when multiple products are "sufficiently similar," the issue of the plaintiff's capacity to pursue claims on behalf of purchasers of these similar products is best left for class

certification.  *See Astiania*, 2012 WL 2990766 at *13 (holding that because the plaintiffs "have alleged sufficient similarity between products they did purchase and those that they did not … any concerns of [the defendant] and/or the Court about material differences are better addressed at the class certification stage rather than at the 12(b)(6) stage."); *see also Koh v. S.C. Johnson & Son, Inc.*, 2010 WL 94265 at *3 (N.D. Cal. Jan. 6, 2010) (denying motion to dismiss claims asserted against two different products on standing grounds *even though the products were sold by two different companies* and deferring the issue until class certification).  The Court should defer ruling on this issue until class certification.

## VII.  PLAINTIFF HAS STATED A CLAIM FOR BREACH OF IMPLIED WARRANTY

Finally, Honest Tea claims that Plaintiff's implied warranty claims are defective.  *See Def. Br.* at 19.  California Commercial Code § 2314(1) directs that "a warranty that the goods shall be merchantable is implied in a contract for their sale."  "The California Supreme Court has explained that '[m]erchantability has several meanings…: the product must '[conform] to the promises or affirmations of fact made on the container or label,' and must be 'fit for the ordinary purposes for which such goods are used.'"  *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011) (citing *Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975)).  Plaintiffs have the option to bring implied warranty claims under either definition.  *Id.*  "Where plaintiffs challenge food labels that are not preempted by Federal law and are otherwise allowed, courts refrain from dismissing implied warranty claims."  *Bronson,* 2013 WL 1629191, at *12.

Here, Defendant asserts that Plaintiff's implied warranty claims "should be dismissed because she has not alleged any facts … suggesting that Honey Green Tea is not merchantable or fit for use as a bottled tea beverage."  Def. Br. at 19 (quotations and bracketing omitted).  However, just as in *In re Ferrero Litig.*, "[a]lthough [Defendant] argues that [Honey Green Tea] is fit for its ordinary purpose of consumption, Plaintiff[] [is] bringing [her] claim under a different definition of merchantability, whether the product conforms with 'the promises or affirmations of fact made on the container or label.'"  *See In re Ferrero Litig.*, 794 F. Supp. 2d at 1118; *see also* Compl. at ¶¶ 51, 52 (listing the "promises or affirmations of fact" made on the labels of Honey Green Tea as the

implied warranties breached by Defendant).  Thus, Plaintiff has stated a claim for breach of

implied warranty.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss should be denied in its entirety.

If, however, the Court dismisses any party of Plaintiff's Complaint, Plaintiff requests leave to

amend.

Dated:  February 28, 2014                              Respectfully submitted,

                                                       **BURSOR & FISHER, P.A.**

                                                       By:___*/s/ Annick M. Persinger*_____
                                                              Annick M. Persinger

                                                       L. Timothy Fisher (State Bar No. 191626)
                                                       Annick M. Persinger (State Bar No. 272996)
                                                       Yeremey Krivoshey (State Bar No. 295032)
                                                       1990 North California Boulevard, Suite 940
                                                       Walnut Creek, CA  94596
                                                       Telephone: (925) 300-4455
                                                       Facsimile:  (925) 407-2700
                                                       E-Mail: ltfisher@bursor.com
                                                                apersinger@bursor.com
                                                                ykrivoshey@bursor.com

                                                       *Attorneys for Plaintiff*