UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH A. SALAZAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HONEST TEA, INC.,<br><br>Defendant. | No.: 2:13-cv-02318-KJM-EFB<br><br><br>ORDER |

This matter is before the court on defendant Honest Tea, Inc.'s ("defendant" or "Honest Tea") Motion to Dismiss plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). (Def.'s Mot. to Dismiss, ECF 12.) Plaintiff Sarah A. Salazar ("plaintiff" or "Ms. Salazar") opposes the motion. (Pl.'s Opp'n, ECF 16.) The court held a hearing on the matter on April 25, 2014, at which Annick Persinger and Yeremey Krivoshey appeared for plaintiff and Travis Tu and Tammy Webb appeared for defendant. As explained below, the court GRANTS in part and DENIES in part defendant's motion. Also before the court is plaintiff's request for judicial notice (ECF 17.)[1]

/////

---

[1] Plaintiff requests that this court take judicial notice of a 2009 Food Labeling Guide. (ECF 17 at 2.) Because that document does not contain adjudicative facts considered by this order, the court need not take judicial notice of that document. Thus, plaintiff's request is denied.

1

I.  RELEVANT BACKGROUND

    A.  ALLEGED FACTS

        This putative class action arises out of Honest Tea's alleged dishonesty. (*See* (Pl.'s Compl. ¶ 1, ECF 1 ("Compl.").) Plaintiff alleges defendant's Honey Green Tea bottles did not contain the amount of antioxidants represented on their labels. (*Id.* ¶ 2.) Specifically, plaintiff alleges that independent testing by a laboratory retained by plaintiff's counsel determined the bottles contained an average of 186.7 mg of flavonoids per bottle, equivalent to 24 percent below the "247 mg Antioxidants Green Tea Flavonoids Per Bottle" highlighted on the labels. (*Id.*)

        Plaintiff, a citizen of California, regularly purchased Honey Green Tea between 2012 and 2013. (*Id.* ¶ 4.) Plaintiff avers she purchased Honey Green Tea in reliance on the representations about the antioxidant content. (*Id.*) Defendant Honest Tea is "the distributor and seller of . . . Honey Green Tea . . . ." (*Id.* ¶ 5.)

        Plaintiff alleges that defendant has used for advertising purposes phrases such as "Refreshingly Honest" and "Brutally Honest," in addition to interactive campaigns centered on the word "honesty." (*Id.* ¶¶ 8–12.) Plaintiff further alleges that between 2008 and 2011, defendant used the label representation "250mg EGCG[2] Super Antioxidant." (*Id.* ¶ 23.) That representation was misleading, plaintiff avers, because independent testing showed the bottles contained on average only 70 mg of EGCG. (*Id.* ¶ 26.) In 2011, defendant changed the representation to "Antioxidants 190mg Tea Catechins/Bottle." (*Id.* ¶ 23.) However, that label was also allegedly misleading because independent testing showed only 119 mg of catechins. (*Id.* ¶ 27.) Finally, in 2013, defendant replaced the representation with "247 mg Antioxidants Green Tea Flavonoids Per Bottle." (*Id.* ¶ 23.) Plaintiff alleges defendant changed its labels but not the

---

[2] "Flavonoids are a comprehensive classification of antioxidants that includes all types of 'catechins.' A 'catechin' is a tannin peculiar to green tea. Catechins are powerful, water soluble polyphenols and antioxidants that are easily oxidized. Green tea contains four main catechin substances" including epigallocatechin gallate (EGCG). "EGCG is the most powerful of the green tea catechins." (Compl. ¶ 17.)

1  formulation of the product because "the independent lab showed that the flavonoids in Honey
2  Green Tea averaged . . . 186.67 mg per 16.9 fl. oz. (500 ml) bottle." (*Id.* ¶ 31.)

3       B.    PROCEDURAL BACKGROUND
4              On November 6, 2013, plaintiff filed a class action complaint against defendant in
5  this court alleging jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C.
6  § 1332(d)(2)(A). (*Id.* ¶ 6.) Plaintiff brings this action "on behalf of herself and a nationwide
7  class of purchasers of Honey Green Tea" (*id.* ¶¶ 1, 3), "excluding those that made such purchase
8  for purpose of resale . . ." (*id.* ¶ 35). "Plaintiff also seeks to represent a subclass of all [c]lass
9  members who purchased the product in California . . . ." (*Id.* ¶ 36.) Plaintiff alleges the
10 following eight claims:

11         (1) Breach of express warranty;
12         (2) Breach of implied warranty of merchantability;
13         (3) Breach of implied warranty of fitness for a particular purpose;
14         (4) Violation of California's Consumers Legal Remedies Act ("CLRA"),
15             California Civil Code § 1750, *et seq.*;
16         (5) Violation of California's Unfair Competition Law ("UCL"), California
17             Business and Professions Code § 17200, *et seq.*;
18         (6) Violation of California's False Advertising Law ("FAL"), California Business
19             and Professions Code § 17200, *et seq.*;
20         (7) Negligent misrepresentation; and
21         (8) Fraud.

22 (Compl. at 12–20.) Defendant now moves to dismiss plaintiff's entire complaint (ECF 12), and
23 plaintiff opposes the motion (ECF 16). Defendant has replied. (Def.'s Reply, ECF 19).

24 II.    LEGAL STANDARD
25             Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a
26 complaint for "failure to state a claim upon which relief can be granted." A court may dismiss
27 "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a
28 cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, to "allegations that contradict matters properly subject to judicial notice," or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

III. <u>DISCUSSION</u>

Defendant makes four principal arguments.  First, plaintiff's claims are expressly preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq*. (ECF 12 at 11–14.)  Second, plaintiff's complaint fails to plead reliance and injury.  (*Id.* at 14–17.)  Third, to the extent plaintiff asserts claims based on general statements made by defendant, "the claims should be dismissed because these statements are non-actionable puffery." (*Id.* at 17–19.)  Fourth, plaintiff's implied warranty claims should be dismissed because plaintiff has not alleged facts showing Honey Green Tea was not merchantable or fit for use as a bottled tea.  (*Id.* at 19–20.)  The court addresses these arguments in turn.

4

A.     Express Preemption

Defendant argues "[p]laintiff's state-law claims are based on tests that do not employ the mandatory protocol that [the Food and Drug Administration ("FDA")] has established to dispute nutrient content claims for agricultural products like Honey Green Tea." (ECF 12 at 2.) Accordingly, because "[p]laintiff necessarily seeks to impose requirements that are 'not identical to' federal law," plaintiff's claims are expressly preempted by the FDCA. (*Id.*) Therefore, defendant concludes plaintiff's "case must be dismissed in its entirety." (ECF 19 at 1.)

Plaintiff responds the mandatory protocol prescribed by the FDA is inapplicable to her claims because (1) the FDA requirements apply only to disclosures appearing in the "Nutrition Facts" section of the label and the alleged misleading statements at issue in this case did not appear in the "Nutrition Facts" section of the label (ECF 16 at 6); and (2) defendant's alleged misrepresentations are not "nutrient content claims" subject to the FDA regulations (*id.* at 1, 8).

Before considering preemption, the court provides a brief summary of the applicable statutory framework.

1.     Statutory Framework

Congress, in passing the FDCA, established the FDA to "protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). To achieve this objective, the FDA has promulgated many regulations. *See, e.g.*, 21 C.F.R. § 101.1, *et. seq*. In 1990, Congress passed an amendment to the FDCA, the Nutrition Labeling and Education Act ("NLEA"), establishing new requirements governing nutritional content labeling. *See* 21 U.S.C. § 343, *et. seq.*[3] The NLEA is codified as part of the FDCA. Many of the subsections of 21 U.S.C. § 343 establish the conditions under which food is "deemed to be misbranded." For example, under 21 U.S.C. § 343(a)(1), food is misbranded if "its labeling is false or misleading in any particular."

/////

---

[3] All subsequent references to § 343 or subsections thereof are to this statutory section.

5

There are two statutory sections that impose more specific labeling requirements: sections 343(q) and (r).  Section 343(q) regulates "nutrition information" that must be disclosed about certain nutrients in food products, such as, *inter alia*, the total number of calories and the number of grams of trans fat.  Section 343(r), on the other hand, governs all other statements about nutrient content; specifically, claims that "expressly or by implication," "characterize[] the level of any nutrient . . . ."  The parties agree that an implied nutrient content claim is not implicated in this case.

The FDA also has promulgated regulations regarding expressed nutrient content claims.  21 C.F.R. § 101.13.[4]  "An expressed nutrient content claim" is defined as "any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'"  *Id.* § 101.13(b)(1).

To determine whether a nutrient content claim is in compliance with the FDCA, section 101.13(o) provides that "compliance with requirements for nutrient content claims in this section   . . . will be determined using the analytical methodology prescribed for determining compliance with nutrition labeling in § 101.9.[5]"  Section 101.9(g), in turn, provides, *inter alia*, that compliance shall be determined by analyzing a sample consisting "of a composite of 12 subsamples (consumer units), taken 1 from each of 12 different randomly chosen shipping cases, to be representative of a lot."

The NLEA contains an express preemption provision relating to section 343(r).  Section 343-1(a)(5) expressly preempts any state requirement regarding nutrient content claims made "in the label or labeling of foods that is not identical to the requirement of section 343(r)."  In the context of express preemption provisions, the U.S. Supreme Court has found that the term "requirements" "reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties."  *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443 (2005).  That is, states are not allowed to adopt food labeling requirements governed by the NLEA that are different

---

[4] All subsequent references to section 101.13 or subsections thereof are to this regulation section.

[5] All subsequent references to section 101.9 or subsections thereof are to this regulation section.

6

from or additional to those required by the FDCA.  The NLEA is clear, however, that if state law seeks to impose liability consistent with the FDCA, the law is not preempted.  *Trazo v. Nestle USA, Inc.*, No. 12-2272, 2013 WL 4083218, at *5 (N.D. Cal. Aug. 9, 2013) ("To avoid express preemption under Section 343–1(a), the plaintiff must be suing for conduct that *violates* the FDCA." (emphasis in original)).  This is crucial because the FDCA "does not create a private right of action." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011).  As one judge has noted: "It is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide.  Manufacturers might have to print 50 different labels, driving consumers who buy food products in more than one state crazy."  *Id.*

The court now turns to its preemption analysis.  In analyzing preemption, the court is guided by the following synthesis of the law distilled from the discussion above: plaintiff's claims will not be preempted if the requirements they seek to impose are identical to the requirements imposed under the FDCA and the NLEA.

    2.  Analysis

"Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona v. United States*, __ U.S. __, 132 S. Ct. 2492, 2500 (2012).  "From the existence of two sovereigns follows the possibility that laws can be in conflict or at cross-purposes." *Id.*  Article VI, clause 2, of the Constitution, the Supremacy Clause, provides that the laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  By virtue of this principle, the Supreme Court has long recognized that state laws that conflict with federal law are "without effect."  *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (citing *M'Culloch v. Maryland*, 17 U.S. 316, 427 (1819)).  That is, Congress has the power to preempt state laws.  *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53 (1982).

"Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a

legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation marks omitted). In the instant case, only express preemption is at issue as that is the only preemption argument defendant makes.

Preemption is express where Congress has "explicitly stated [its intent] in the statute's language . . . ." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (internal quotation marks omitted). Thus, "[t]he critical question in any pre-emption analysis is always whether Congress intended that federal regulation supersede state law." *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 369 (1986).

Additionally, in the context of state laws dealing with matters traditionally governed by state law (within "the historic police powers of the States"), congressional intent to preempt such laws must be "clear and manifest." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotation marks omitted); *see also Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013) ("There is a presumption against federal preemption of state laws that operate in traditional state domains."). Yet, the presumption against preemption does not apply to state laws regulating "an area where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000). Finally, federal regulations adopted according to statutory authority may preempt state law just as completely as federal statutes. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less preemptive effect than federal statutes.").

Here, to the extent plaintiff's claims stem from the alleged misrepresentations about the antioxidant level of Honey Green Tea and as explained below, the court GRANTS defendant's motion to dismiss plaintiff's state law claims without prejudice.

Plaintiff states the following labels that appeared on Honey Green Tea bottles at various times are false: "247 mg Antioxidant Green Tea Flavonoids," "190 mg Tea Catechins," and "EGCG Super-Antioxidant 250 mg" per bottle. (Compl. ¶¶ 19–27.) To show the statements' falsity, plaintiff introduces test results from the following sources:

/////

> Honest Tea's own marketing materials demonstrate that the 250 mg EGCG claim was false. On its website, Honest Tea cites two editions of Men's Health Magazine, which Honest Tea claims "independently tested" Honey Green Tea in January 2009 and June 2008. Both articles state that bottles of Honey Green Tea contained 71 mg of EGCG per bottle. Seventy-one milligrams of EGCG is not even a third of the EGCG per bottle that Honest Tea claimed on the label. Thus, even the testing done by Men's Health that Honest Tea flaunts on their website demonstrates that Honest Tea's 250mg EGCG labeling claim was false.

(*Id.* ¶ 25.)

> Additionally, independent testing showed that Honey Green Tea contained on average only 70 mg of EGCG per bottle. Similarly, a report published by ConsumerLab.com on December 21, 2012, and updated and republished on May 30, 2013, found 57.5 mg of EGCG per bottle. That is only 23% to 28% of the 250 mg represented on the label.

(*Id.* ¶ 26.)

> [T]he new labels represented that Honey Green Tea contained "190 mg of naturally occurring green tea catechins" per 16.9 fl. oz. bottle. But that claim was false and misleading. The report published by ConsumerLab.com found only 119 mg of catechins, and 57.5 mg of the catechin EGCG, per 16.9 fl. oz. bottle of Honest Tea Green Tea with Honey. Consumerlab.com stated that "only 62.7%" of the 190 mg of green tea catechins listed on the label were found in testing. Based on its test results, ConsumerLab.com listed Honest Tea Green Tea with Honey as "'Not Approved'…for failing to meet a label claim." Furthermore, the testing done by the independent lab retained by Plaintiff supports ConsumerLab.com's finding.

(*Id.* ¶ 27.)

> The "Total Bioflavonoids Analysis" performed by the independent lab showed that the flavonoids in Honey Green Tea averaged 0.373 mg per milliliter, or 186.67 mg per 16.9 fl. oz. (500 ml) bottle. The testing demonstrates that there are 60 mg fewer, or 24% less, flavonoids in Honey Green Tea than the 247 mg amount prominently claimed on the label.

(*Id.* ¶ 31.)

The challenged statements are examples of express nutrient content claims because they are direct statements about the level of antioxidant nutrients in the product. The FDA provides that "nutrient" encompasses nutrients of all types, including "vitamins, minerals, herbs, and other similar nutritional substances"—such as "nutritional antioxidants"—that are not

1    required to appear in the Nutrition Facts panel.  *See* Food Labeling; Requirements for Nutrient

2    Content Claims, Health Claims, and Statements of Nutritional Support for Dietary Supplements,

3    62 FR 49859, 49859–60 (1997); Food Labeling; Requirements for Nutrient Content Claims for

4    Dietary Supplements of Vitamins, Minerals, Herbs and Other Similar Nutritional Substances, 59

5    FR 378, 379–80 (1994); *see also Lanovaz v. Twinings N. Am., Inc.*, No. 12-2646, 2013 WL

6    675929, at *5–6 (N.D. Cal. Feb. 25, 2013) (recognizing tea antioxidant statements as nutrient

7    content claims).

8       Accordingly, because defendant's label statements are nutrient content claims,

9    their accuracy must be challenged under the 12-sample test method established by 21 C.F.R.

10   § 101.9(g).  Yet, the Complaint does not allege plaintiff tested Honey Green Tea using this

11   method.  Consequently, the Complaint does not show that defendant's statements on the product

12   labels violate the FDCA's labeling requirements.  Because plaintiff's allegations do not show a

13   violation of the FDCA, plaintiff's state law claims are preempted; if allowed to proceed, the state

14   law claims would impose liability inconsistent with the FDCA.  *See Vital v. One World Co., LLC*,

15   No. 12-314, 2012 U.S. Dist. LEXIS 186203, at *14 (C.D. Cal. Nov. 30, 2012) (noting that "by

16   mandating that a composite be used to determine compliance, the regulation rejects the

17   requirement that every individual product be labeled in compliance with the [FDCA].  Instead,

18   the *average* nutrient content of twelve products randomly selected from twelve different shipping

19   cases is considered.  This allows for some variation in the nutrient content of each individual

20   product and shipping case.  A regulation requiring each individual product or shipping case to be

21   in compliance with the [FDCA] would be much more stringent and impose a greater burden on

22   companies." (emphasis in original)).

23      Accordingly, the court GRANTS defendant's Motion to Dismiss plaintiff's state

24   law claims to the extent they are based on the alleged misrepresentations about the antioxidant

25   level of Honey Green Tea.  However, because the additional facts and arguments alleged in

26   plaintiff's opposition brief may allow plaintiff to properly state a claim that is not preempted, the

27   court GRANTS plaintiff leave to amend if she can do so consonant with Rule 11.  *See Orion Tire*

28   *Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137 (9th Cir. 2001) (even if not

considered in determining the sufficiency of a complaint, "new" facts in plaintiff's opposition papers can be considered by courts in deciding whether to grant leave to amend).

B.  Reliance and Injury Pleading Requirements

Defendant argues plaintiff does not have standing to challenge "California's consumer protection laws" because "her Complaint does not allege that she relied upon and was injured by the various representations she disputes." (ECF 12 at 14.) Additionally, as to plaintiff's claims for fraud, negligent misrepresentation, and breach of express warranty, defendant argues plaintiff does not plead reliance. (*Id.*) Finally, defendant argues "because each of [p]laintiff's claims is 'grounded in fraud' or 'involve allegations of fraudulent conduct . . . ,' they must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." (*Id.* at 15.)

Plaintiff responds defendant's argument is "patently false" because she "has clearly alleged she relied on Honest Tea's representations and was injured as a result[]." (ECF 16 at 16.)

1.  Standing

"Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). An example of "a quintessential injury-in-fact" is when "plaintiffs spent money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011). In essence, Article III's injury-in-fact requirement is the same as that under the UCL and FAL; the only difference being that under the UCL and FAL, the injury needs to be economic. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011).

Here, plaintiff has standing to bring this case. She alleges that she purchased Honey Green Tea because of "the representations on the label about Honey Green Tea's antioxidant content," and that she "would not have purchased Honey Green Tea had she known

11

the truth about the product's antioxidant content." (Compl. ¶ 4.) "Instead, she would have paid much less for tea leaves or a tea bag of green tea." (*Id.*)  Clearly, these allegations show plaintiff has standing for her claims to the extent the claims are based on post-2011 alleged misrepresentation about the antioxidants content level on Honey Green Tea.  (*See id.* ¶ 27 n.6 ("Labels stating that Honey Green Tea contains 'Antioxidants 190mg Tea Catechins/Bottle' are still in circulation.")). *See Lanovaz*, 2013 WL 675929, at *6 ("The alleged purchase of a product that plaintiff would not otherwise have purchased but for the alleged unlawful label is sufficient to establish an economic injury-in-fact for plaintiff's unfair competition claims.").

However, defendant's argument, that plaintiff cannot allege "actual reliance" on pre-2011 labels of Honey Green Tea because she began purchasing Honey Green Tea only in 2012, presents a closer question.  According to the complaint, the label representation "EGCG Super-Antioxidant 250 mg per bottle" appeared on Honey Green Tea from 2008 until 2011. (Compl. ¶ 23.)  Unlike the allegations regarding the "Antioxidants 190mg Tea Catechins/Bottle" label, the complaint does not allege that Honey Green Tea bottles carrying the pre-2011 label were still in circulation when plaintiff purchased the product starting in 2012.  Thus, the question is whether plaintiff has standing to bring her claims to the extent they are based on the pre-2011 label when she may not have bought Honey Green Tea with that label.

Plaintiff responds that the product she purchased starting in 2012 is identical to the Honey Green Tea prior to 2012, and so "she has standing to pursue claims involving a product she *did not use*." (ECF 16 at 18 (emphasis in original).)

To establish standing under the UCL, FAL, and CLRA a person must have "suffered injury in fact and ha[ve] lost money or property as a result." CAL. BUS. & PROF. CODE §§ 17204, 17535; CAL. CIV. CODE § 1780; *see also Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. 10-1044, 2011 WL 159380, at *2  (N.D. Cal. Jan. 10, 2011) (jointly analyzing standing under UCL, FAL, and CLRA), *aff'd*, 475 F. App'x 113 (9th Cir. 2012).  A plaintiff suffers an injury-in-fact for purposes of those state law claims when he or she has "(1) expended money due to the defendant's acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111,

12

1125 (N.D. Cal. 2010). The "as a result" language means that actual reliance must be shown for standing. *Victor v. R.C. Bigelow, Inc.*, No. 13-2976, 2014 WL 1028881, at *5 (N.D. Cal. Mar. 14, 2014) (citing *Kwikset Corp.*, 51 Cal. 4th at 326–27 (2011)).

There is a split of authority among sister district courts on the question of whether a named plaintiff can sue on behalf of a purchaser of a product that he or she did not purchase. *Victor v. R.C. Bigelow, Inc.*, No. 13-2976, 2014 WL 1028881, at *7 (N.D. Cal. Mar. 14, 2014). "Some judges treat this question as one relevant to standing." *Id.* (collecting cases) "Other judges . . . have observed that 'standing is merely a threshold inquiry that requires the class action plaintiff to demonstrate she suffered economic injury by virtue of the purchases she herself made, not for the other transactions that she seeks to represent,' and questions of substantial similarity are more appropriately deferred until the class certification stage." *Id.* at *8 (collecting cases). "Regardless of the approach, judges look to various factors showing 'substantial similarity' between the purchased and unpurchased products." *Id.*

Here, at this stage of the litigation, the court finds plaintiff has alleged sufficient similarity between the Honey Green Tea she purchased and the Honey Green Tea she did not. Specifically, defendant has not changed the formulation of the Honey Green Tea from 2008 throughout 2013; thus, it is fair to say the products were identical. (Compl. ¶ 23.) Additionally, all variants of the label related to the advertised antioxidant load in the Honey Green Tea product. (*Id.* ¶ 19–27.) Questions concerning any material differences between the labels should be addressed at the class certification stage rather than the Rule 12(b)(6) motion stage. *See Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-2910, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012).

2.   Pleading Requirements under Rule 9(b)

Rule 9(b) applies to allegations of fraud and not just claims of fraud. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). When a plaintiff's complaint relies entirely on fraudulent course of conduct as the basis of a claim, "the claim is said to be 'grounded in fraud.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). In such cases, the complaint as a whole must satisfy the heightened pleading requirements of Rule 9(b). *Id.* at

13

1108.  On the other hand, in cases where a plaintiff alleges "some fraudulent and some non-fraudulent conduct, . . . [t]he rule does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct." *Id.* at 1104.

Here, even assuming the entire complaint sounds in fraud, plaintiff has satisfied the requirements of Rule 9(b).  Plaintiff has identified the particular statements she alleges are misleading, the basis for that contention, where those statements appear on the product packaging, and the relevant time period in which the statements were used.  She has satisfied the requisite "who, what, when, where, and how" of the misconduct charged.  *See Kearns*, 567 F.3d at 1124; *see also Chacanaca*, 752 F. Supp. 2d at 1126.

Therefore, the court DENIES defendant's Motion to Dismiss under Rule 9(b).

C. Claims Based on Puffery

Defendant argues that claims based on the "Honest Tea" name; its "Refreshingly Honest" and "Brutally Honest" taglines; or its "just a tad sweet" and "a kiss of honey, but not enough to gross you out" statements should be dismissed because they are non-actionable puffery.  (ECF 12 at 17.)

Plaintiff responds the statements are not mere puffery because plaintiff believed defendant's labeling claims as "any reasonable consumer" would have.  (ECF 16 at 17.)  Plaintiff argues "because the word 'Honest' appeared prominently on the labels [p]laintiff reviewed before purchasing Honey Green Tea, it is no surprise that [p]laintiff believed Honest Tea's labeling claim."  (*Id.*)

In considering a motion to dismiss, district courts "often resolve whether a statement is puffery." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).  "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005).  On the other hand, "specific factual assertion[s] which could be established or disproved through discovery" are not mere puffery because claims of this sort are capable of objective verification.  *Id.* at 1140–41; *Haskell*

/////

*v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) ("The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions.").

Non-specific, non-measurable assertions are classic non-actionable puffery. *See, e.g., Bronson v. Johnson & Johnson, Inc.*, No. 12-04184, 2013 U.S. Dist. LEXIS 54029, at *31–32 (N.D. Cal. Apr. 16, 2013) ("[N]o reasonable consumer would conclude, based on the presence of the word 'essential' in the name 'Splenda Essentials,' that the Splenda products were essential to their diet . . . ."); *Delacruz v. Cytosport, Inc.*, No. 11-3532, 2012 U.S. Dist. LEXIS 51094, at *19 (N.D. Cal. Apr. 11, 2012) ("The word 'ideal' is vague, highly subjective, and non-actionable, like 'superb, uncompromising quality,' . . . and 'high-performance' and 'top of the line' . . . ." (internal citations omitted)); *Henderson v. Gruma Corp.*, No. 10-04173, 2011 U.S. Dist. LEXIS 41077, at *28 (C.D. Cal. Apr. 11, 2011) (statement "The Authentic Tradition" non-actionable puffery); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) ("higher performance," "longer battery life," "richer multimedia experience," and "faster access to data" non-actionable); *Anunziato*, 402 F. Supp. 2d at 1139 (finding "reliability," "high-quality," and "high performance" non-actionable); *Summit Tech. v. High-Line Med. Instruments*, 933 F. Supp. 918, 931 (C.D. Cal. 1996) (finding "reliable" and "perfectly reliable" non-actionable).

Nonetheless, a limited set of courts have emphasized the substance of the term "honesty," finding claims involving the term actionable and not puffery. *See, e.g.*, *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 277 n.8 (S.D.N.Y. 2012) ("If Goldman's claims of 'honesty' and 'integrity' are simply puffery, the world of finance may be in more trouble than we recognize."); *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 239 (S.D.N.Y. 2006) ("integrity and honesty are at the heart of our business" actionable).

1.   Honey Related Statements

The present case is more akin to the commercial product cases than it is to the latter banking and investment cases with respect to advertising. In particular, the honey-related statements are more blatant forms of puffery. It is unclear how one could verify whether the level of honey in defendant's product qualifies as a "kiss" and is "not enough to gross you out." A "tad" and a "kiss" are vague and non-specific terms that lack any clear, objective indication of

15

1  their levels.  "Not enough to gross you out" is inherently subjective; two different consumers may
2  have different tolerance levels to the honey.
3        Accordingly, the court GRANTS with prejudice defendant's Motion to Dismiss
4  plaintiff's claims to the extent they rely on defendant's honey-related statements.
5        2.      Honesty Related Statements
6        The honesty-related statements are more nuanced.  As defendant points out, a
7  search for the word "honest" in the United States Patent and Trademark Office's trademark
8  registry demonstrates hundreds of trademarked names that contain that word (e.g., "Honest
9  Concerts," "Honest Buildings," "Honest Mom," and "Honest to Goodness").  (ECF 12 at 18 n.6.)
10 In the context of commercial products, the term's frequent use is suggestive of its hyperbolic,
11 generalized nature.
12       On the one hand, defendant's use of "honest" is similar to the non-actionable use
13 of the terms "reliability" and "authentic" in the commercial product cases.  Defendant is a
14 corporation that uses strategic and familiar marketing tools to attract consumers to its beverage
15 products.  The public is accustomed to hyperbolic text of this nature in advertisements.  Adding
16 the terms "refreshingly" and "brutally" to "honest" in the tagline may appeal to consumers but
17 may not substantively contribute to notions of honesty.
18       On the other hand, the "honest" advertising may imply that defendant provides
19 only truthful information regarding its products, and truthfulness can be measured.  The terms
20 "refreshingly" and "brutally" in this light may indicate complete, direct, and unfiltered honesty.
21       "Honest Tea" by itself, without any qualifiers, also has a concrete message to it.
22 Plaintiff cites different advertising campaigns conducted by defendant, including a posting on its
23 website, "Honest Tea: If it's not real, it's not Honest"; re-styling of the label to accentuate the
24 word "Honest"; its billboard campaign of truths such as "YES, THAT DRESS DOES MAKE
25 YOU LOOK FAT, BE REAL. GET HONEST" and "IT'S NOT ME IT'S YOU, BE REAL. GET
26 HONEST"; and its National Honesty Index social experiment.  (Compl. at 3 (capitalization in
27 original).)  Based on the complaint, defendant sets out to paint itself as honest and bases virtually
28 its entire product image on that characteristic.  These claims are not mere puffery.

Accordingly, the court DENIES defendant's Motion to Dismiss plaintiff's claims to the extent they rely on the honesty-related statements.

D.     Implied Warranty Claims

Because the court has found plaintiff's state law claims preempted, it need not analyze those claims here.

The state law claims are dismissed with leave to amend if plaintiff can do so consonant with Rule 11.

IV.     CONCLUSION

For the foregoing reasons, the court orders as follows:

1. The court GRANTS without prejudice defendant's Motion to Dismiss plaintiff's state law claims to the extent they are based on the alleged misrepresentations about the antioxidant level of Honey Green Tea because of preemption.
2. The court GRANTS with prejudice defendant's Motion to Dismiss plaintiff's claims to the extent they are based on the honey-related statements.
3. The court DENIES defendant's Motion to Dismiss plaintiff's claims to the extent they are based on honesty-related statements.
4. The state law claims are dismissed as preempted, with leave to amend.
5. Plaintiff shall have 21 days from the date of this order to file a first amended complaint.

IT IS SO ORDERED.

DATED: June 9, 2014.

_____
UNITED STATES DISTRICT JUDGE