**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
        apersinger@bursor.com
        ykrivoshey@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH A. SALAZAR, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>          v.<br><br>HONEST TEA, INC.<br><br>                                    Defendant. | Case No. 2:13-cv-02318-KJM-EFB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1    Plaintiff Sarah A. Salazar ("Plaintiff") brings this action on behalf of herself and all others

2  similarly situated against Defendant Honest Tea, Inc. ("Honest Tea").  Plaintiff makes the

3  following allegations pursuant to the investigation of her counsel and based upon information and

4  belief, except as to the allegations specifically pertaining to her, which are based on personal

5  knowledge.

6                                    **INTRODUCTION**

7    1.    Honest Tea's marketing and promotion of bottled Honest Tea Honey Green Tea is

8  dishonest.  This is a class action lawsuit on behalf of purchasers of Honest Tea Honey Green Tea

9  ("Honey Green Tea"), which Honest Tea promotes through an "honest" advertising campaign that

10  denotes that Honest Tea provides only truthful information regarding its products.  In fact, to

11  induce consumers to purchase Honey Green Tea, Honest Tea makes unauthorized nutrient content

12  claims about the antioxidant green tea flavonoids in Honey Green Tea that fail to meet the

13  minimum regulatory requirements for such claims.  As a result, Honey Green Tea's label is

14  misbranded.



15
16
17
18
19
20
21
22

23    2.    Plaintiff Salazar purchased numerous bottles of Honey Green Tea based on

24  Defendant's "honest" representations and because of the antioxidant claims on the label.  Plaintiff

25  Salazar asserts claims on behalf of herself and a nationwide class of purchasers of Honey Green

26  Tea for breach of express warranty, negligent misrepresentation, and fraud.  Plaintiff also asserts

27  claims on behalf of herself and a California class of purchasers of Honey Green Tea for violation

28

1    of the California Consumer Legal Remedies Act ("CLRA"), for violation of the California Unfair

2    Competition Law ("UCL"), and for violation of the California False Advertising Law ("FAL").

### PARTIES

3.    Plaintiff Sarah A. Salazar is a citizen of California, residing in Benicia.  From 2012 until August 2013, Ms. Salazar regularly purchased Honest Tea's Honey Green Tea.  Prior to purchasing Honey Green Tea, Ms. Salazar reviewed the product's label.  Relying on the representations on the label about Defendant's honesty and Honey Green Tea's antioxidant content, Ms. Salazar purchased Honey Green Tea at Safeway and Raley's in Benicia, California on numerous occasions.  Ms. Salazar would not have purchased Honey Green Tea had she known that the label did not contain only truthful information, or that the antioxidant nutrient content claims on the labels were unauthorized and inaccurate.  Instead, she would have paid much less for tea leaves or a tea bag of green tea.  Ms. Salazar suffered injury in fact and lost money as a result of Honest Tea's deceptive, misleading, unfair and fraudulent practices described herein.

4.    Defendant Honest Tea, Inc. ("Honest Tea") is a Delaware corporation with its principal place of business at 4827 Bethesda Ave, Bethesda, Maryland 20814.  Honest Tea is the distributor and seller of Honey Green Tea and participated in formulating, branding, packaging, designing, distributing, marketing and advertising the product.  Honest Tea's activities caused the sale of Honey Green Tea in supermarkets and restaurants across the nation.  Honest Tea utilized the express warranties and misrepresentations to effectuate its plan to market Honey Green Tea as described herein.

### JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, are citizens of states different from the states of Defendant.  Defendant has sold hundreds of thousands, if not millions, of bottles of Honey Green Tea.

6.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this

District.  Defendant distributed, advertised, and sold Honest Tea Honey Green Tea, which is the subject of the present complaint, in California and in this District.  Moreover, Plaintiff read the product's label and purchased Honey Green Tea in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

**Honest Tea's False and Misleading Name**

7.      Defendant uses the trade name "Honest Tea" to represent to the public that it's honest, truthful, and trustworthy.   Indeed, "Honest Tea" is an intentional pun on the word "honesty."   Honest Tea uses the word "Honest" and the "honesty" pun to reinforce its other claims about the characteristics of its products.

8.      Honest Tea doesn't stop with its trade name.  Honest Tea claims on its website and in its "Keeping It Honest Mission Report" that it uses "honesty and integrity" to craft its products.  Honest Tea also claims on its website and in other marketing materials that its products are "Refreshingly Honest" and "Honest Tea:  If it's not real, it's not Honest."

9.      In 2011, when Honest Tea re-styled Honey Green Tea's label, co-founder Seth Goldman stated that "In recognition of the fact that the word 'Honest' is the most important part of our name, we decided to move away from having the word 'Honest Tea' all on one line.  While some were worried that breaking up the words might make it easier for consumers to miss the pun (Honest Tea = 'Honesty'), we decided that the benefits of creating one uniform brand identity that emphasizes the word 'Honest' was worth the tradeoff."

10.     Additionally, as part of its "brutally honest campaign" Honest Tea took common lies and turned them in to truths to help consumers remember the honesty of Honest Tea.  The result was billboards that stated in giant bold letters:  "YES, THAT DRESS DOES MAKE YOU LOOK FAT, BE REAL. GET HONEST" and "IT'S NOT ME IT'S YOU, BE REAL. GET HONEST."

11.     As part of its honesty marketing campaign, Honest Tea even conducted "the first National Honesty Index social experiment" where Honest Tea set up unmanned Honest Tea kiosks that offered its beverages for $1 on the honor system in over 30 cities across the country.  Honest

Tea recorded whether consumers paid $1.  The results suggested that most of the American population is honest.  Unfortunately, the same cannot be said for Honest Tea.

12.     While Honest Tea encourages consumers to trust them by constantly citing "honesty" in its name, and in its marketing materials, Honest Tea's advertising claims about its honesty are false and misleading.  Honest Tea is aware of false and misleading statements on its label that characterize the antioxidant content and the amount of antioxidants in Honey Green Tea in violation of California and federal law.  Honest Tea's labeling practices contravene Honest Tea's "honest" brand identity.

13.     In promoting the purported benefits of its misbranded Product, Honest Tea's "honest" advertising campaign indicates that Defendant provides, complete, direct, and unfiltered honesty about its products.  But by using antioxidant terms improperly, Honest Tea, in effect, falsely asserts that the products meet the minimum nutritional thresholds for the claims in question.

14.     Honest Tea recognizes that health and nutrition claims drive product sales,[1] and actively promotes the purported benefits of Honey Green Tea's antioxidant content notwithstanding the fact that such promotion violates federal and California law.  Contrary to its "brand identity" and advertising campaign that communicates that Defendant has adopted responsible marketing and advertising policies, Honest Tea has made and continues to make, unlawful claims on Honey Green Tea's label.

**Honest Tea's Unlawful Characterization of Antioxidants**

15.     Honest Tea's marketing campaign for Honey Green Tea capitalizes on consumer interest in consuming antioxidants.[2]  Honest Tea sells hundreds of thousands of bottles of Honey

---

[1] *See* "Honest Tea Announces New Tea Line-Up with Brighter Tastes and Labels" (available at http://www.prweb.com/releases/2008/03/prweb803394.htm)

[2] Consumers make purchasing decisions based on claims about antioxidants.  According to a consumer survey by Bossa Nova, half of adults rank antioxidants as the top nutrient they are most concerned about adding to their diets – ahead of calcium, fiber and iron. *See* New Survey Finds Antioxidants #1 Nutrient Concern Amongst Consumers, PR Newswire. http://www.prnewswire.com/news-releases/new-survey-finds-antioxidants-1-nutrient-concern-amongst-consumers-106440093.html.

1  Green Tea because of its claims about the "many tea antioxidants" and "flavonoid[s]"[3] in Honey

2  Green Tea.

3      16.    Despite Honest Tea's "Refreshingly Honest" tag line, Honest Tea has made

4  unauthorized antioxidant nutrient content claims on Honey Green Tea's label since 2008.

5      17.    Currently, Honest Tea's Honey Green Tea label states that:

6          We won't sweet talk you.  We'll just say two words: Epigallocatechin

7          gallate.  It may not have the ring of "sweetheart" but EGCG is our favorite
        flavonoid, one of many tea antioxidants.  ….

8          Honestly yours,

9          Seth + Barry

10



24

25  [3] "Flavonoids" are a comprehensive classification of antioxidants that includes all types of "catechins."  A "catechin" is a tannin peculiar to green tea.  Catechins are a powerful, water

26  soluable polyphenols and antioxidants that are easily oxidized.  Green tea contains four main catechin substances:  epicatechin (EC), epicatechin gallate (ECG), epigallocatechin (EGC), and

27  epigallocatechin gallate (EGCG), all of which fall under the umbrella term "catechin."  EGCG is the most powerful of the green tea catechins.  *See* <u>Green Tea, White Tea: Catechin Health Benefits</u>,

28  Green Tea Lovers: Healthy Tea that Tastes Great, http://www.greentealovers.com/greenteahealthcatechin.htm.

18.     In 2008, Honest Tea re-designed Honey Green Tea's label to better communicate antioxidant benefits.  The label emphasized that EGCG was a "Super-Antioxidant."  Honest Tea also characterized Honey Green Tea's antioxidant content as follows:  "Epigallocatechin gallate. It may not have the ring of sweetheart but EGCG is the most potent antioxidant around, and our organic green tea is packed with it."

19.     With respect to the 2008 label, shown below, one commentator explained: "…the level of Epigallocatechin Gallate (known as EGCG), the key antioxidant found in tea, takes a prominent position on the front of the label to better communicate Honest Tea's superior antioxidant benefits.  Unlike the new [2008] labels, the previous labels did not draw attention to the high levels of EGCG in Honest Tea's drinks. …. To communicate the health and taste benefits to a wider audience, Honest Tea turned to Moxie TM, Inc., a New York-based brand design and development firm."  Similarly, Tammy Vaserstein of Moxie TM explained the new label as follows: "white has the most impact on shelf within this category while communicating freshness and simplicity whereas too much color says 'artificial' rather than 'organic,' and a sliding bar graphic serves as a visual icon helping consumers understand how much EGCG is in each variety."[4]



---

[4] http://www.prweb.com/releases/2008/03/prweb803394.htm

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:13-cv-02318-KJM-EFB

6

20.     Honest Tea further represented in its 2008 advertising campaign that "Hey, we're Honest Tea; we don't lie. ….  Epigallocatechin gallate-EGCG-is the super antioxidant, and our organic teas are packed with it. Studies have shown that EGCG helps maintain a healthy heart and neutralize free radicals that damage cells."[5]

21.     In 2011, Honest Tea introduced new labels for Honey Green Tea bottles.  The label described the antioxidant content of Honey Green Tea as follows:  "We'll just say two words: Epigallocatechin gallate.  It may not have the ring of 'sweetheart' but to us EGCG is a key green tea antioxidant."




22.     By touting the antioxidant content in its tea, and by employing the word "Honest" in its name, on the label and in its honesty marketing campaign, Honest Tea hooks in consumers who would otherwise purchase green tea leaves or bags of green tea to brew that provide more flavonoid antioxidants for much less.

23.     Like its current label, the predecessor labels for Honest Tea's Honey Green Tea were misbranded, Honest Tea's "honest" claims were false and Plaintiff and the class members were injured as a result.

_____

[5] http://thesugardiet.com/922/honest-tea-honey-green-tea.html

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:13-cv-02318-KJM-EFB

7

**Honey Green Tea Is Misbranded Under Identical California And Federal Laws**

24.     Identical federal and California laws regulate the content of labels on packaged food.  The requirements of the federal Food, Drug & Cosmetic Act ("FDCA") were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law").  Under California law "[a]ny food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) [21 U.S.C. Sec. 343(r)] of the federal act and the regulations adopted pursuant thereto."  California Health & Safety Code § 110670.

25.     Nutrient content claims using the term "antioxidant" must also comply with the requirements listed in 21 C.F.R. 101.54(g).  Under 21 C.F.R. § 101.54(g), a nutrient content claim that characterizes the level of antioxidant nutrients present in a food may only be used if: "(1) An RDI (Reference Daily Intake) has been established for each of the nutrients;  (2) The nutrients that are the subject of the claim have recognized antioxidant activity … ; (3) The level of each nutrient that is the subject of the claim is sufficient to qualify for the [type of claim made]; and (4) The names of the nutrients that are the subject of the claim are included as part of the claim (e.g., 'high in antioxidant vitamins C and E').  Alternatively, when used as part of a nutrient content claim, the term 'antioxidant' or 'antioxidants' (as in 'high in antioxidants') may be linked by a symbol (e.g. an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label followed by the name or names of the nutrients with recognized antioxidant activity."  The use of a nutrient content claim that uses the term "antioxidant" but does not comply with the requirements of 21 C.F.R. 101.54(g) misbrands a product under section 403(r)(2)(A)(i) of the Act.

26.     The regulations regarding antioxidant nutrient content claims have been made clear by prior FDA actions targeting similar or identical claims.  For example, on August 23, 2010, the FDA sent Unilever, Inc. a warning letter that specifically identified unauthorized antioxidant nutrient content claims that Unilever made on Lipton Green Tea's label and on its website.  In the letter, the FDA explained that the statement "LIPTON Tea is made from tea leaves rich in naturally protective antioxidants," did not comply with 21 C.F.R. 101.54(g) because it did not "include the nutrients that are the subject of the claim or use a symbol to link the term 'antioxidant' to those nutrients."  Accordingly, the FDA determined that the claim misbranded Lipton Green Tea under

1    section 403(r)(2)(A)(i) of the Act.   Likewise, the FDA concluded that the statement "packed with

2    protective FLAVONOID ANTIOXIDANTS" did not comply with 21 C.F.R. 101.54(g) because no

3    RDI has been established for flavonoids.  Because the statements were unauthorized nutrient

4    content claims, the FDA concluded that Lipton Green Tea was misbranded.[6]

5            27.    In another example, on February 22, 2010, the FDA sent a letter to Redco Foods,

6    Inc. warning Redco that its green tea products violated the FDCA.  The FDA determined that

7    Redco's green tea label bore the following unauthorized nutrient content claim:

8            One of the antioxidants known as EGCG (Epigallocatechin gallate) is abundantly found in
         tea leaves.

9    The FDA determined that the claim did not comply with 21 C.F.R. 101.54(g)(1) because no RDI

10   has been established for EGCG.[7]

11           28.    Honest Tea's unauthorized antioxidant nutrient content claims include:

12            We'll just say two words: Epigallocatechin gallate.  It may not have the ring of
         "sweetheart" but *EGCG is our favorite flavonoid, one of many tea antioxidants*, (2013);

14            We'll just say two words:  Epigallocatechin gallate.  It may not have the ring of
         "sweetheart" but to us *EGCG is a key green tea antioxidant*, (2011); and

16            Epigallocatechin gallate. It may not have the ring of sweetheart but *EGCG is the most
         potent antioxidant around, and our organic green tea is packed with it*, (2008). (emphasis
         added).

18   Like the claims identified in the FDA's warning letters, each of these claims characterizes the level

19   of antioxidants in Honey Green Tea and violates federal and California law:  (1) because there are

20   no RDIs for flavonoid antioxidants, and (2) the nutrient content claims do not include the nutrients

21   that are subject of the claims or use a symbol to link the term "antioxidant" to those nutrients.

22           29.    Defendant has made, and continues to make, unlawful claims on the food labels of

23   Honey Green Tea that are prohibited by identical federal and California laws and which render

24   these products misbranded.  Under federal and California law, Defendant's misbranded Product

25   cannot legally be manufactured, advertised, distributed, held, or sold.

---

[6] *See* 8/23/2010 FDA Warning Letter to Unilever, Inc.  attached hereto as Exhibit B.
[7] *See* 2/22/2010 FDA Warning Letter to Redco Foods, Inc. attached hereto as Exhibit C.

FIRST AMENDED CLASS ACTION COMPLAINT                                                    9
Case No. 2:13-cv-02318-KJM-EFB

## CLASS REPRESENTATION ALLEGATIONS

30.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased Honest Tea Honey Green Tea, excluding those that made such purchase for purpose of resale (the "Class").

31.     Plaintiff also seeks to represent a subclass of all Class members who purchased the product in California (the "California Subclass").

32.      Defendant sells hundreds of thousands of bottles of Honey Green Tea.  Honey Green Tea is available in major supermarkets nationwide.  Accordingly, members of the Class and Subclass are so numerous that their individual joinder herein is impracticable.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, third party retailers, and vendors.

33.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Defendant's Product is misbranded, and whether the labeling, marketing and promotion of Honey Green Tea is false, and misleading.

34.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false, misleading and misbranded labels, purchased Honey Green Tea, and suffered a loss as a result of that purchase.

35.     Plaintiff is an adequate representative of the Class and Subclass because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

36.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class and Subclass members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases

1   the delay and expense to all parties and multiplies the burden on the judicial system presented by

2   the complex legal and factual issues of this case.  Individualized litigation also presents a potential

3   for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer

4   management difficulties and provides the benefits of single adjudication, economy of scale, and

5   comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment

6   of the liability issues will ensure that all claims and claimants are before this Court for consistent

7   adjudication of the liability issues.

8                                            **COUNT I**

9                                   **Breach Of Express Warranty**

10          37.     Plaintiff hereby incorporates by reference the allegations contained in all preceding

11  paragraphs of this complaint.

12          38.     Plaintiff brings this claim individually and on behalf of the members of the

13  proposed Class and California Subclass against Defendant.

14          39.     Plaintiff, and each Class member, formed a contract with Defendant at the time

15  Plaintiff and each Class member purchased Honey Green Tea.  The terms of the contract include

16  the promises and affirmations of fact relating to its honesty that Honest Tea made on Honey Green

17  Tea's labels and in its marketing campaign.  The representations on the product labels became part

18  of the basis of the bargain and are part of a contract between Plaintiff and the members of the Class

19  on the one hand, and Defendant on the other, and thus constituted express warranties.

20          40.     Defendant, as the designer, manufacturer, marketer, distributor, or seller expressly

21  warranted that Honest Tea is "honest," and provides only truthful information regarding its

22  products.

23          41.     Defendant sold the goods to Plaintiff and the other Class members, who bought the

24  goods from Defendant.  Plaintiff and the Class members are ordinary consumers who are not

25  versed in the art of inspecting and judging the properties of green tea.  Plaintiff believed

26  Defendant's claims because any reasonable consumer would have believed a company that sends a

27  concrete message about its honesty by branding itself "Honest Tea."  Plaintiff and the Class acted

28  reasonably based on Defendant's representations.

42.     Defendant breached the terms of this contract, including the express warranties. Contrary to its "brand identity" and advertising campaign that communicates that Defendant has adopted responsible marketing and advertising policies and has met the minimum nutritional threshold to make antioxidant nutrient content claims, Defendant makes nutrient content claims that are unauthorized and in violation of state and federal regulation.  Honest Tea also knows that it makes statements on Honey Green Tea's label that characterize Honey Green Tea's antioxidant content and that those representations are unauthorized and inaccurate.  As a result of this breach, Plaintiff and the Class did not receive the goods as warranted by Defendant.

43.     Plaintiff and Class members were injured and harmed as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Honey Green Tea on the same terms if the true facts were known concerning Defendant's honesty and the unauthorized antioxidant nutrient content claims that Defendant makes on the label; (b) they paid a price premium for Honey Green Tea due to Defendant's promises that it was honest and that the Product met the minimum nutritional threshold to make antioxidant nutrient content claims; and (c) Honey Green Tea did not have the characteristics or benefits as promised.

## COUNT II

### Violation Of California's Consumers Legal Remedies Act,

### California Civil Code §§ 1750, *et seq.*

44.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

45.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

46.     Plaintiff and the Subclass members are consumers who purchased Honey Green Tea for personal, family or household purposes.  Plaintiff and the Subclass members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).  Plaintiff and the Subclass members are not sophisticated experts with independent knowledge of the character, level or amount of antioxidants found in green tea.

47.     Honey Green Tea beverages that Plaintiff and other Class Members purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

48.     Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

49.     Honest Tea's antioxidant nutrient content claims including, "We'll just say two words: Epigallocatechin gallate.  It may not have the ring of 'sweetheart' but EGCG is our favorite flavonoid, one of many tea antioxidants,"  "We'll just say two words:  Epigallocatechin gallate.  It may not have the ring of 'sweetheart' but to us EGCG is a key green tea antioxidant" and "Epigallocatechin gallate. It may not have the ring of sweetheart but EGCG is the most potent antioxidant around, and our organic green tea is packed with it" characterize the level antioxidants in Honey Green Tea and violate federal and California law:  (1) because there are no RDIs for flavonoid antioxidants, and (2) the nutrient content claims do not include the nutrients that are subject of the claims or use a symbol to link the term "antioxidant" to those nutrients.  Because Defendant's nutrient content claims do not comply with 21 C.F.R. § 101.54(g), Defendant sold misbranded products in California during the Class Period.

50.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents the particular characteristics, benefits and quantities of the goods.

51.     Cal. Civ. Code § 1770(a)(7) prohibits representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.  By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of

competition and unfair or fraudulent acts or practices, in that it misrepresents the particular

standard, quality or grade of the goods.

52.     Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with

intent not to sell them as advertised."  By engaging in the conduct set forth herein, Defendant

violated and continues to violate Section 1770(a)(9), because Defendant's conduct constitutes

unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods

with the intent not to sell the goods as advertised.

53.     Plaintiff and the Class are not sophisticated experts about the character, level or

amount of antioxidants in bottled green tea, and they acted reasonably when they purchased

Defendant's tea based on their belief that Defendant's representations were true.  Because the word

"Honest" appeared prominently on the labels that Plaintiff and class members reviewed before

purchasing Honey Green Tea, it is no surprise that Plaintiff and the class members believed Honest

Tea's labeling claim.  Indeed, any reasonable consumer would believe *Honest* tea.

54.     Plaintiff and the California Subclass suffered injuries caused by Defendant because:

(a) they would not have purchased Honey Green Tea on the same terms absent Defendant's illegal

conduct as set forth herein, or if the true facts were known concerning Defendant's honesty; (b)

they paid a price premium for Honey Green Tea due to Defendant's misrepresentations and

unauthorized nutrient content claims; and (c) Honey Green Tea did not have the characteristics,

benefits, or quantities as promised.

55.     On or about September 10, 2013, prior to filing this action, a CLRA notice letter

was served on Defendant which complies in all respects with California Civil Code § 1782(a).

Plaintiff Salazar sent Honest Tea, Inc. a letter via certified mail, return receipt requested, advising

Honest Tea, Inc. that it is in violation of the CLRA and demanding that it cease and desist from

such violations and make full restitution by refunding the monies received therefrom.  A true and

correct copy of Plaintiff Salazar's letter is attached hereto as Exhibit A.

56.     Wherefore, Plaintiff seeks damages, restitution, and injunctive relief for this

violation of the CLRA.

**COUNT III**

**Violation Of California's Unfair Competition Law,**

**California Business & Professions Code §§ 17200, *et seq.***

57.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

58.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

59.     Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

60.     Honest Tea's antioxidant nutrient content claims including, "We'll just say two words: Epigallocatechin gallate.  It may not have the ring of 'sweetheart' but EGCG is our favorite flavonoid, one of many tea antioxidants,"  "We'll just say two words:  Epigallocatechin gallate.  It may not have the ring of 'sweetheart' but to us EGCG is a key green tea antioxidant" and "Epigallocatechin gallate. It may not have the ring of sweetheart but EGCG is the most potent antioxidant around, and our organic green tea is packed with it" characterize the level antioxidants in Honey Green Tea and violate federal and California law:  (1) because there are no RDIs for flavonoid antioxidants, and (2) the nutrient content claims do not include the nutrients that are subject of the claims or use a symbol to link the term "antioxidant" to those nutrients.  Because Defendant's nutrient content claims do not comply with 21 C.F.R. § 101.54(g), Defendant sold misbranded products in California during the Class Period.

61.     Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating Section 403(r) of the FDCA [21 U.S.C. 343(r)(1)(a)], the CLRA, the FAL and other applicable law as described herein.

62.     Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any

alleged benefits.  Defendant's dishonesty is of no benefit to consumers.  Likewise, Defendant's failure to comply with FDCA labeling requirements offends the public policy advanced by the Act "to protect the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).

63.     Defendant violated the "fraudulent" prong of the UCL by making misrepresentations about honesty, and by misleading Plaintiff and the class to believe that the nutrient content claims made about Honey Green Tea were lawful, authorized claims that met the minimum nutritional requirements for such claims, as described herein.

64.     Plaintiff and the Class are not sophisticated experts about the character or amount of antioxidants in bottled green tea, and they acted reasonably when they purchased Defendant's tea based on their belief that Defendant's representations were true.  Because the word "Honest" appeared prominently on the labels that Plaintiff and class members reviewed before purchasing Honey Green Tea, it is no surprise that Plaintiff and the class members believed Honest Tea's labeling claim.  Indeed, any reasonable consumer would believe *Honest* tea.

65.     Plaintiff and the California Subclass lost money or property as a result of Defendant's UCL violations because: (a) they would not have purchased Honey Green Tea on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's honesty; (b) they paid a price premium for Honey Green Tea due to Defendant's misrepresentations and unauthorized nutrient content claims; and (c) Honey Green Tea did not have the characteristics, benefits, or quantities as promised.

## COUNT IV

### Violation Of California's False Advertising Law,

### California Business & Professions Code §§ 17500, *et seq.*

66.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

67.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

1        68.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*,

2   makes it "unlawful for any person to make or disseminate or cause to be made or disseminated

3   before the public in this state, ... in any advertising device ... or in any other manner or means

4   whatever, including over the Internet, any statement, concerning ... personal property or services,

5   professional or otherwise, or performance or disposition thereof, which is untrue or misleading and

6   which is known, or which by the exercise of reasonable care should be known, to be untrue or

7   misleading."

8        69.     Defendant engaged in a scheme of offering misbranded bottles of tea for sale to

9   Plaintiff and the class members by way of product packaging, labeling, and other promotional

10  materials.  These materials misrepresented and/or omitted the true content and nature of the

11  misbranded Product.  Defendant's advertisements and inducements were made in California and

12  come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq.* in that

13  the product packaging, labeling, and promotional materials were intended as inducements to

14  purchase Defendant's Honey Green Tea, and are statements disseminated by Defendant to Plaintiff

15  and the class members.  Defendant knew that these statements were unauthorized, inaccurate and

16  misleading.

17       70.     Honest Tea's antioxidant nutrient content claims including, "We'll just say two

18  words: Epigallocatechin gallate.  It may not have the ring of 'sweetheart' but EGCG is our favorite

19  flavonoid, one of many tea antioxidants,"  "We'll just say two words:  Epigallocatechin gallate.  It

20  may not have the ring of 'sweetheart' but to us EGCG is a key green tea antioxidant" and

21  "Epigallocatechin gallate. It may not have the ring of sweetheart but EGCG is the most potent

22  antioxidant around, and our organic green tea is packed with it" characterize the level antioxidants

23  in Honey Green Tea and violate federal and California law:  (1) because there are no RDIs for

24  flavonoid antioxidants, and (2) the nutrient content claims do not include the nutrients that are

25  subject of the claims or use a symbol to link the term "antioxidant" to those nutrients.  Because

26  Defendant's nutrient content claims do not comply with 21 C.F.R. § 101.54(g), Defendant sold

27  misbranded products in California during the Class Period.

28

71.     Defendant violated § 17500 by making misrepresentations about honesty, and by misleading Plaintiff and the class to believe that the nutrient content claims made about Honey Green Tea were lawful, authorized claims that met the minimum nutritional requirements for such claims, as described herein.

72.     Defendant knew or should have known, through the exercise of reasonable care that Honey Green Tea was and continues to be misbranded, and that their representations about Honesty and the antioxidant nutrient content of Honey Green Tea were unauthorized, inaccurate, and misleading.

73.     Plaintiff and the California Subclass lost money or property as a result of Defendant's FAL violations because: (a) they would not have purchased Honey Green Tea on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's honesty; (b) they paid a price premium for Honey Green Tea due to Defendant's misrepresentations and unauthorized nutrient content claims; and (c) Honey Green Tea did not have the characteristics, benefits, or quantities as promised.

## COUNT V

### Negligent Misrepresentation

74.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

75.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendant.

76.     While Honest Tea encourages consumers to trust them by constantly citing "honesty" in its name, and in its marketing materials, Honest Tea's advertising claims about its honesty are false and misleading.

77.     Honest Tea knows that it makes statements on Honey Green Tea's label that characterize Honey Green Tea's antioxidant content and that those representations are unauthorized and inaccurate.  Especially given Honest Tea's "honest" brand identity, Honest Tea had a duty to disclose correct information.

78.     At the time Defendant made representations about its honesty and Honey Green Tea's antioxidant content, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

79.     At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about Honey Green Tea.

80.     The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase Honey Green Tea.

81.     Plaintiff and Class members would not have purchased Honey Green Tea if the true facts had been known.

82.     The negligent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VI

### Fraud

83.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

84.      Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendant.

85.     As discussed above, Defendant provided Plaintiff and Class members with false or misleading material information about its honesty.

86.     Further, Defendant failed to disclose material facts about Honey Green Tea, including but not limited to the fact that the labeling for Honey Green Tea did not meet minimum nutritional labeling requirements.  Honest Tea also knows that it made statements on Honey Green Tea's label that characterized Honey Green Tea's antioxidant content and that those representations were unauthorized and inaccurate.  These misrepresentations and omissions were made with knowledge of their falsehood.

87.     The misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase Honey Green Tea.

88.     The fraudulent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.     For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b.     For an order declaring that the Defendant's conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass on all counts asserted herein;

d.     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of equitable monetary relief;

g.     For injunctive relief as pleaded or as the Court may deem proper; and

h.     For an order awarding Plaintiff and the Class and Subclass his reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

1   Dated:  June 30, 2014                        Respectfully submitted,

2                                                **BURSOR & FISHER, P.A.**

3

4                                                By:____*/s/ Annick M. Persinger*_____
                                                      Annick M. Persinger

5
                                                L. Timothy Fisher (State Bar No. 191626)
6                                                Annick M. Persinger (State Bar No. 272996)
                                                Yeremey Krivoshey (State Bar No. 295032)
7                                                1990 North California Boulevard, Suite 940
                                                Walnut Creek, CA  94596
8                                                Telephone: (925) 300-4455
                                                Facsimile:  (925) 407-2700
9                                                E-Mail: ltfisher@bursor.com
                                                        apersinger@bursor.com
10                                                       ykrivoshey@bursor.com

11                                               *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

FIRST AMENDED CLASS ACTION COMPLAINT                                    21
Case No. 2:13-cv-02318-KJM-EFB

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Sarah Salazar, declare as follows:

1.      I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The complaint filed in this action is filed in the proper place because Honest Tea sells hundreds of thousands of bottles of its tea products, including Honey Green Tea, in this District.

3.      While living in Benicia, California, I purchased numerous 16.9 fl. oz. bottles of Honest Tea Honey Green Tea for my household and for my personal use.  I purchased Honest Tea Honey Green Tea after I read the labels on the bottles that said that the bottles of Honey Green Tea contained antioxidants, including EGCG.  The representations on the label were substantial factors influencing my decision to purchase Honest Tea Honey Green Tea.  I would not have purchased Honest Tea Honey Green Tea had I known that the bottles did not have the amount of antioxidants that Honest Tea represented on its labels.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on October 23 , 2013 at Benicia, California.


                                                    _____
                                                    SARAH SALAZAR

**EXHIBIT A**

# BURSOR & FISHER
P.A.

1990 N. California Blvd.
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

L. TIMOTHY FISHER
Tel: 925.300.4455
Fax: 925.407.2700
ltfisher@bursor.com

September 10, 2013

**_Via Certified Mail - Return Receipt Requested_**

HONEST TEA, INC.
4827 Bethesda Ave.
Bethesda, Maryland 20814

Re:     *Demand Letter Pursuant to California Civil Code § 1782,*
        *Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq., and other applicable laws.*

To Whom It May Concern:

        This letter serves as a notice and demand for corrective action on behalf of my client, Sarah A. Salazar, and all other persons similarly situated, arising from breaches of warranty under the Magnuson-Moss Warranty Act and violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9).  This letter also serves as notice pursuant to Cal. Com. Code § 2607(3)(a) concerning the breaches of express and implied warranties described herein.

        You have participated in the manufacture, marketing, and sale of Honest Tea Green Tea with Honey ("Green Tea with Honey").  Testing has shown that Green Tea with Honey contains only approximately 60% of the catechins listed on the bottle.  The label is false and misleading.

        Ms. Salazar, a resident of California, purchased Green Tea with Honey based on representations on the label and in other marketing and advertising material that state that the product contains antioxidants, such as Epigallocatechin gallate ("EGCG").  She would not have purchased Green Tea with Honey had she known that the product only contained around 60% of the antioxidants listed on the label.

        Ms. Salazar is acting on behalf of a class defined as all persons in the United States who purchased Green Tea with Honey (hereafter, the "Class").  She is also acting on behalf of a subclass of Class members who purchased Green Tea with Honey in the state of California (the "California Subclass").

        To cure the defects described above, we demand that you (1) cease and desist from continuing to mislabel Green Tea with Honey; (2) issue an immediate recall on any Green Tea with Honey products bearing false labels; and (3) make full restitution to all purchasers of Green Tea with Honey of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the ingredients, formula, and manufacturing process for Green Tea with Honey;

2. All communications with the U.S. Food and Drug Administration concerning the product development, manufacturing, marketing and sales of Green Tea with Honey;

3. All documents concerning the advertisement, marketing, or sale of Green Tea with Honey; and

4. All communications with customers concerning complaints or comments concerning Green Tea with Honey.

We are willing to negotiate to attempt to resolve the demands asserted in this letter. If you wish to enter into such discussions, please contact me immediately. If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation. If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

L. Timothy Fisher

**EXHIBIT B**

**FDA** U.S. Food and Drug Administration
Protecting and Promoting *Your* Health

Home Inspections, Compliance, Enforcement, and Criminal Investigations Compliance Actions and Activities Warning Letters

## Inspections, Compliance, Enforcement, and Criminal Investigations

## Unilever United States, Inc. 8/23/10



**Department of Health and Human Services**

Public Health Service
Food and Drug Administration
College Park, MD 20740

August 23, 2010

<b>WARNING LETTER</b>

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Michael B. Polk
President of Unilever Americas
Unilever, Inc.
700 Sylvan Avenue
Englewood, NJ 07632-3113

Re: CFSAN-OC-10-24

Dear Mr. Polk:

The Food and Drug Administration (FDA) has reviewed the label for your "Lipton Green Tea 100% Natural Naturally Decaffeinated" product and reviewed your labeling for this product on your websites, www.lipton.com[1] and www.liptont.com[2] in August 2010. Based on our review, we have concluded that this product is in violation of the Federal Food, Drug, and Cosmetic Act (the Act). You can find the Act and regulations on FDA's website at www.fda.gov[3].

A link to .your website, www.lipton.com[4]. appears on your "Lipton Green Tea 100% Natural Naturally Decaffeinated" product label. This website directs U.S. visitors to another website, www.liptont.com[5]. We have determined that your websites, www.lipton.com[6] and www.liptont.com[7]. are labeling within the meaning of section 201(m) of the Act for your "Lipton Green Tea 100% Natural Naturally Decaffeinated" product.

**Unapproved New Drug**

Your website, www.liptont.com[8]. also promotes your Lipton Green Tea 100% Natural Naturally Decaffeinated product for conditions that cause it to be a drug under section 201(g)(1)(B) of the Act [21 U.S.C. § 321(g)(1)(B)].

For example, your webpage entitled "Tea and Health," subtitled "Heart Health Research" and further subtitled "Cholesterol Research" bears the following claim: "[F]our recent studies in people at risk for coronary disease have shown a significant cholesterol lowering effect from tea or tea flavonoids ... One of these studies, on post-menopausal women, found that total cholesterol was lowered by 8% after drinking 8 cups of green tea daily for 12 weeks ...."

The therapeutic claims on your website establish that the product is a drug because it is intended for use in the cure, mitigation, treatment, or prevention of disease. Your Lipton Green Tea 100% Natural Naturally Decaffeinated product is not generally recognized as safe and effective for the above referenced uses and,

therefore, the Case 2:13-cv-02981-KM-EEB Document 82 Filed 06/30/14 Page 29 of 35 New drugs may not be legally marketed in the U.S. without prior approval from FDA as described in section 505(a) of the Act [21 U.S.C. § 355(a)]. FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective.

Your Lipton Green Tea 100% Natural Naturally Decaffeinated product is offered for conditions that are not amenable to self-diagnosis and treatment by individuals who are not medical practitioners; therefore, adequate directions for use cannot be written so that a layperson can use this drug safely for its intended purposes. Thus, your Lipton Green Tea 100% Natural Naturally Decaffeinated product is misbranded under section 502(f)(1) of the Act in that the labeling for this drug fails to bear adequate directions for use [21 U.S.C. § 352(f)(1)] .

**Unauthorized Nutrient Content Claims**

Under section 403(r)(1)(A) of the Act [21 U.S.C. 343(r)(1)(A)], a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (and, by delegation, FDA) authorizing the use of such a claim. The use of a term, not defined by regulation, in food labeling to characterize the level of a nutrient misbrands a product under section 403(r)(1)(A) of the Act.

Nutrient content claims using the term "antioxidant" must also comply with the requirements listed in 21 CFR 101.54(g). These requirements state, in part, that for a product to bear such a claim, an RDI must be established for each of the nutrients that are the subject of the claim (21 CFR 101.54(g)(1)), and these nutrients must have recognized antioxidant activity (21 CFR 101.54(g)(2). The level of each nutrient that is the subject of the claim must also be sufficient to qualify for the claim under 21 CFR 101.54(b), (c), or (e) (21 CFR 101.54(g)(3)). For example, to bear the claim "high in antioxidant vitamin C," the product must contain 20 percent or more of the RDI for vitamin C under 21 CFR 101.54(b). Such a claim must also include the names of the nutrients that are the subject of the claim as part of the claim or, alternatively, the term "antioxidant" or "antioxidants" may be linked by a symbol (e.g., an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label, followed by the name or names of the nutrients with recognized antioxidant activity (21 CFR 101.54(g)(4)). The use of a nutrient content claim that uses the term "antioxidant" but does not comply with the requirements of 21 CFR 101.54(g) misbrands a product under section 403(r)(2)(A)(i) of the Act.

Your webpage entitled "Tea and Health" and subtitled "Tea Antioxidants" includes the statement, "LIPTON Tea is made from tea leaves rich in naturally protective antioxidants." The term "rich in" is defined in 21 CFR 101.54(b) and may be used to characterize the level of antioxidant nutrients (21 CFR 101.54(g)(3)). However, this claim does not comply with 21 CFR 101.54(g)(4) because it does not include the nutrients that are the subject of the claim or use a symbol to link the term "antioxidant" to those nutrients. Thus, this claim misbrands your product under section 403(r)(2)(A)(i) of the Act.

This webpage also states that "tea is a naturally rich source of antioxidants." The term "rich source" characterizes the level of antioxidant nutrients in the product and, therefore, this claim is a nutrient content claim (see section 403(r)(1) of the Act and 21 CFR 101.13(b)). Even if we determined that the term "rich source" could be considered a synonym for a term defined by regulation (e.g., "high" or "good source"), nutrient content claims that use the term "antioxidant" must meet the requirements of 21 CFR 101.54(g). The claim "tea is a naturally rich source of antioxidants" does not include the nutrients that are the subject of the claim or use a symbol to link the term "antioxidant" to those nutrients, as required by 21 CFR 101.54(g)(4). Thus, this claim misbrands your product under section 403(r)(2)(A)(i) of the Act.

The product label back panel includes the statement "packed with protective FLAVONOID ANTIOXIDANTS." The term "packed with" characterizes the level of flavonoid antioxidants in the product; therefore, this claim is a nutrient content claim (see section 403(r)(1) of the Act and 21 CFR 101.13(b)). Even if we determined that the term "packed with" could be considered a synonym for a term defined by regulation, nutrient content claims that use the term "antioxidant" must meet the requirements of 21 CFR 101.54(g). The claim "packed with FLAVONOID ANTIOXIDANTS" does not comply with 21 CFR 101.54(g)1) because no RDI has been established for flavonoids. Thus, this unauthorized nutrient content claim causes your product to be misbranded under section 403(r)(2)(A)(i) of the Act.

The above violations are not meant to be an all-inclusive list of deficiencies in your products or their labeling. It is your responsibility to ensure that all of your products are in compliance with the laws and regulations enforced by FDA. You should take prompt action to correct the violations. Failure to promptly correct these violations may result in regulatory actions without further notice, such as seizure and/or

injunction.    Case 2:13-cv-02318-KJM-EFB    Document 32    Filed 06/30/14    Page 30 of 35

We note that your label contains a chart entitled "Flavonoid Content of selected beverages and foods." The chart appears to compare the amounts of antioxidants in your product with the amount of antioxidants in orange juice, broccoli, cranberry juice and coffee. However, the information provided may be misinterpreted by the consumer because although the chart is labeled, in part, "Flavonoid Content," the y-axis is labeled "AOX"; therefore, the consumer might believe that the chart is stating the total amount of antioxidants rather than specifically measuring the amount of flavonoids in the product.

You should take prompt action to correct these violations. Please respond to this letter within 15 days from receipt with the actions you plan to take in response to this letter, including an explanation of each step being taken to correct the current violations and prevent similar violations. Include any documentation necessary to show that correction has been achieved. If you cannot complete corrective action within fifteen working days, state the reason for the delay and the time within which you will complete the correction.

You should direct your written reply to Latasha A. Robinson, Food and Drug Administration, Center for Food Safety and Applied Nutrition, 5100 Paint Branch Parkway, Office of Compliance (HFS-608), Division of Enforcement, College Park, Maryland 20740-3835.

Sincerely,

/s/


Jennifer A. Thomas
Acting Director
Office of Compliance
Center for Food Safety
and Applied Nutrition


cc: FDA New Jersey District

## Close Out Letter

- Unilever United States, Inc. - Close Out Letter 5/10/11[9]


Page Last Updated: 08/09/2011
Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.

     Accessibility Contact FDA Careers FDA Basics FOIA No Fear Act Site Map Transparency Website Policies


U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

     

For Government For Press

Combination Products Advisory Committees Science & Research Regulatory Information Safety Emergency Preparedness International Programs News & Events Training and Continuing Education Inspections/Compliance State & Local Officials Consumers Industry Health Professionals FDA Archive

 U.S. Department of Health & Human Services


## Links on this page:

1. http://www.lipton.com/

**EXHIBIT C**

Case 2:13-cv-02318-KJM-EFB Document 32 Filed 06/30/14 Page 32 of 35



**U.S. Food and Drug Administration**
Protecting and Promoting *Your* Health

## Inspections, Compliance, Enforcement, and Criminal Investigations

## Redco Foods, Inc. 2/22/10

**Department of Health and Human Services**

Public Health Service
Food and Drug Administration
College Park, MD 20740

**FEB 22 2010**

**WARNING LETTER**

**VIA OVERNIGHT MAIL**

Mr. Douglas N. Farrell, General Manager
Redco Foods, Inc.
One Hansen Island
Little Falls, NY 13365

Re: CFSAN-OC-10-10

Dear Mr. Farrell:

The Food and Drug Administration (FDA) has reviewed the label for your "Salada Naturally Decaffeinated Green Tea" product and your website www.greentea.com. Based on our review, we have concluded that your green tea products are in violation of the Federal Food, Drug, and Cosmetic Act (the Act). You can find the Act and regulations on FDA's website at www.fda.gov.

**Unapproved New Drug**

Your website, www.greentea.com. promotes your green tea products for conditions that cause them to be drugs under section 201(g)(1)(B) of the Act [21 U.S.C. § 321(g)(1)(B)]. Examples of disease claims that cause your products to be drugs include:

**On a web page entitled "About Green Tea":**

**"A Steaming Cup of Medicine" Article:**

- "And today, scientific [sic] are ... finding that green tea can ... inhibit the cancer process at virtually every stage, regulate cholesterol levels ... and ward off viruses, fungi and food-borne bacteria."

- "[I]t also helps inhibit dental plaque formation, lower the risk of type 2 diabetes ...."

**"The Origins of Tea" Article:**

- "By this time, tea was prized as a medicine that could cure digestive disorders ...

- "The tea leaves were also applied externally as a paste to ease the pains of rheumatism."

**"Is Green Tea a Brain Food?" Article:**

• "[R]ecent studies of the effects of green tea's catechins on animal brains are intriguing:

o "* Less buildup of plaque[.] Finally, mice specially bred to develop Alzheimer's disease developed up to 54% less beta-amyloid buildup in their brains when they were given daily injections of the green tea catechin EGCg.... Beta-amyloid plaques are believed to be a major cause of the brain cell death and dissue [tissue] loss seen in Alzheimer's disease."

The therapeutic claims on your website establish that your green tea products are drugs because they are intended for use in the cure, mitigation, treatment, or prevention of disease. Your green tea products are not generally recognized as safe and effective for the above referenced uses and, therefore, the products are "new drugs" under section 201 (p) of the Act [21 U.S.C. § 321(p)]. New drugs may not be legally marketed in the U.S. without prior approval from FDA as described in section 505(a) of the Act [21 U.S.C. § 355(a)]. FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective.

Your green tea products are offered for conditions that are not amenable to self-diagnosis and treatment by individuals who are not medical practitioners; therefore, adequate directions for use cannot be written so that a layperson can use these drugs safely for their intended purposes. Thus, your green tea products are misbranded under section 502(f)(1) of the Act in that the labeling for these drugs fails to bear adequate directions for use [21 U.S.C. § 352(f)(1)].

**Unauthorized Health Claims**

Your green tea products are further misbranded under section 403(r)(1 )(B) of the Act [21 U.S.C. § 343(r)(1)(B)] because its labeling bears unauthorized health claims. Your website, www.greentea.com. was reviewed and was found to contain a number of unauthorized health claims, including:

**"Green Tea and the FDA: Who's Right?" Article:**

• "[O]ver the past 25 years, countless studies showing the positive effect of green tea on several important risk factors for cardiovascular disease have been published in scientific journals."

• "[M]ost studies have shown that green tea reduces certain CVD risk factors with a daily intake of 4-5 cups ...."

The above claims are unauthorized health claims because there is no health claim authorized by regulation or the Act that provides for health claims that characterize the relationship between green tea and cardiovascular disease.

**Unauthorized Nutrient Content Claims**

Under section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)], a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation promulgated by the Secretary (and, by delegation FDA) authorizing the use of such a claim. The use of a term, not defined by regulation, in food labeling to characterize the level of a nutrient misbrands a product under section 403(r)(1)(A) of the Act.

Nutrient content Case 2:13-cv-02316-KJM-EFB [in the box] Document 32 Filed 06/30/14 the Page 34 of 35 isted in 21 CFR 101.54(g). These requirements state, in part, that for a product to bear such a claim, an RDI must have been established for each of the nutrients that are the subject of the claim (21 CFR 101.54(g)(1)), and these nutrients must have recognized antioxidant activity (21 CFR 101.54(g)(2)). The level of each nutrient that is the subject of the claim must also be sufficient to qualify for the claim under 21 CFR 101.54(b), (c), or (e) (21 CFR 101.54(g)(3)). For example, to bear the claim "high in antioxidant vitamin C," the product must contain 20 percent or more of the RDI for vitamin C under 21 CFR 101.54(b)). Such a claim must also include the names of the nutrients that are the subject of the claim as part of the claim or, alternatively, the term "antioxidant" or "antioxidants" may be linked by a symbol (e.g., an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label, followed by the name or names of the nutrients with recognized antioxidant activity (21 CFR 101.54(g)(4)). The use of a nutrient content claim that uses the term "antioxidant" but does not comply with the requirements of 21 CFR 101.54(g) misbrands a product under section 403(r)(2)(A)(i) of the Act [21 U.S.C. § 343(r)(2)(A)(i)].

The principal display panel of the product label includes the statement "Fortified with Purple Antioxidants [/ Fortified with Grapeskins, Rooibos (Red Tea), Anthocyanins ..." In the context of the label, the term "antioxidants" refers, in part, to grapeskins, rooibos (red tea), and anthocyanins. The term "fortified" is defined by regulation and may be used to describe the level of certain substances for which an RDI or Daily Reference Value (DRV) has been established [21 CFR 101.54(e)]. However, there are no RDIs or DRVs for grapeskins, rooibos (red tea) or anthocyanins. Therefore, the claim "Fortified with Grapeskins, Rooibos (Red Tea), Anthocyanins" is unauthorized and misbrands your product under section 403(r)(1)(A) of the Act.

In addition, nutrient content claims using the term "antioxidant" may only be made for nutrients for which a Reference Daily Intake (RDI) has been established [21 CFR 101.54(g)(1)]. As noted above, there are no RDIs for grapeskins, rooibos (red tea) or anthocyanins. Therefore, the claim "Fortified with Purple Antioxidants ... Grapeskins. Rooibos (Red Tea), Anthocyanins" is an unauthorized nutrient content claim that causes your product to be misbranded under section 403(r)(2)(A)(i) of the Act.

The label for this product also bears the unauthorized nutrient content claim "One of the antioxidants known as EGCG (Epigallocatechin gallate) is abundantly found in green tea leaves." This claim is a nutrient content claim because "abundantly found" characterizes the level of EGCG in your product [see section 403(r)(1) of the Act (21 U.S.C. § 343(r)(1)) and 21 CFR 101.13(b)]. Even if we determined that the term "abundantly found" could be considered a synonym for a term defined by regulation (e.g., "high" or "good source"), nutrient content claims that use the term "antioxidant" must meet the requirements of 21 CFR 101.54(g). This claim does not comply with 21 CFR 101.54(g)(1) because no RDI has been established for EGCG. Thus, this unauthorized nutrient content claim causes your product to be misbranded under section 403(r)(2)(A)(i) of the Act.

The above violations are not meant to be an all-inclusive list of deficiencies in your products or their labeling. It is your responsibility to ensure that all of your products are in compliance with the laws and regulations enforced by FDA. You should take prompt action to correct the violations. Failure to promptly correct these violations may result in regulatory actions without further notice, such as seizure and/or injunction.

You should take prompt action to correct these violations. Please respond to this letter within 15 days from receipt with the actions you plan to take in response to this letter, including an explanation of each step being taken to correct the current violations and prevent similar violations. Include any documentation necessary to show that correction has been achieved. If you cannot complete corrective action within fifteen working days, state the reason for the delay and the time within which you will complete the correction.

You should direct your written reply to Kathleen M. Lewis, Food and Drug Administration, Center for Food Safety and Applied Nutrition, 5100 Paint Branch Parkway, Office of Compliance (HFS-608), Division of Enforcement, College Park, Maryland 20740-3835.

Sincerely,

/S/

Roberta F. Wagner
Director
Office of Compliance
Center for Food Safety
and Applied Nutrition

cc: FDA New York District

Page Last Updated: 03/03/2010
Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.

Accessibility Contact FDA Careers FDA Basics FOIA No Fear Act Site Map Transparency Website Policies

U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

      

For Government For Press

Combination Products Advisory Committees Science & Research Regulatory Information Safety Emergency Preparedness International Programs News & Events Training and Continuing Education Inspections/Compliance State & Local Officials Consumers Industry Health Professionals FDA Archive

 U.S. Department of **Health & Human Services**

**Links on this page:**