UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH A. SALAZAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HONEST TEA, INC.,<br><br>Defendant. | No.: 2:13-cv-02318-KJM-EFB<br><br><br>ORDER |

This matter is before the court on the motion by defendant Honest Tea, Inc. to dismiss plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Def.'s Mot. to Dismiss, ECF No. 35.) Plaintiff Sarah A. Salazar opposes the motion. (Pl.'s Opp'n, ECF No. 37.) The court decided the matter without a hearing. As explained below, the court DENIES defendant's motion.

I.     RELEVANT BACKGROUND

On June 9, 2014, the court dismissed with leave to amend plaintiff's state law claims on preemption grounds. (ECF No. 29 at 17.) Plaintiff filed her First Amended Complaint (Complaint) on June 30, 2014. (Pl.'s First Am. Compl., ECF No. 32 ("Compl.").) In the Complaint, plaintiff now alleges defendant "has made unauthorized antioxidant nutrient content claims on Honey Green Tea's label since 2008." (*Id.* ¶ 16.) Specifically, defendant's "unauthorized antioxidant nutrient content claims" include:

1

> We'll just say two words: Epigallocatechin gallate. It may not have the ring of "sweetheart" but ***EGCG is our favorite flavonoid, one of many tea antioxidants***, (2013);
>
> We'll just say two words: Epigallocatechin gallate. It may not have the ring of "sweetheart" but to us ***EGCG is a key green tea antioxidant***, (2011); and
>
> Epigallocatechin gallate. It may not have the ring of sweetheart but ***EGCG is the most potent antioxidant around, and our organic green tea is packed with it***, (2008).

(*Id.* ¶ 28 (emphases in original).)

Plaintiff reasons those statements render Honey Green Tea misbranded because "(1) . . . there are no RDIs [(reference daily intake)] for flavonoid antioxidants, and (2) the nutrient content claims do not include the nutrients that are subject of the claims or use a symbol to link the term 'antioxidant' to those nutrients," as required by Food and Drug Administration (FDA) regulations. (*Id.*)

Taken as a whole, plaintiff's Complaint alleges the following claims: (1) breach of express warranty; (2) violation of California's Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq.*; (3) violation of California's Unfair Competition Law (UCL), California Business and Professions Code § 17200, *et seq.*; (4) violation of California's False Advertising Law (FAL), California Business and Professions Code § 17500, *et seq.*; (5) negligent misrepresentation; and (6) fraud. (Compl. at 11–20.) Defendant now moves to dismiss the Complaint (ECF No. 35), and plaintiff opposes the motion (ECF No. 37). Defendant has replied. (ECF No. 38.)

II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim

2

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, to "allegations that contradict matters properly subject to judicial notice," or to material attached to or incorporated by reference into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

III.    DISCUSSION

Defendant makes four principal arguments.  First, defendant argues plaintiff cannot state a common law claim for misbranding as a matter of law.  (ECF No. 35 at 7–11.)  Second, defendant argues plaintiff's new allegations do not show a violation of a federal regulation.  (*Id.* at 11–13.)  Third, defendant argues it has a First Amendment right "to provide consumers with accurate information about its products."  (*Id.* at 13–15.)  Finally, defendant argues plaintiff has no standing to challenge "labeling and advertising that was no longer in use when she began purchasing Honey Green Tea."  (*Id.* at 15–16.)

The court addresses these arguments in turn.

A.    Misbranding

Defendant seems to argue plaintiff cannot assert a state law claim because plaintiff does not allege "she was deceived into buying [Honey Green Tea] on a factual misrepresentation

3

1   as to the product's inherent qualities or characteristics." (*Id.* at 7–8.) It says, "[a] plaintiff must
2   allege that she was *actually deceived and injured* by a false or misleading representation." (*Id.* at
3   8–9 (emphasis in original).)  Plaintiff cannot show she was deceived because plaintiff "does not
4   dispute that [defendant's] EGCG statements are true." (*Id.* at 9–10.)  Hence, even assuming the
5   alleged statements violate a FDA regulation, defendant argues, "California law does not authorize
6   [plaintiff] to pursue misbranding claims [based on] label statements that neither deceived nor
7   injured her." (*Id.* at 10.)  Finally, "to the extent that [the Complaint] even attempts to allege some
8   deception or injury, [it] is plainly deficient." (*Id.*)

9           Plaintiff counters, "[e]ven if Honest Tea's labeling statements are technically true,
10  they violate California consumer protection law because they are *misleading* and are unauthorized
11  nutrient content claims proscribed by the FDA.  Unlike a claim that a statement is false, to show
12  that Honest Tea's representations are misleading, [p]laintiff need not show that a statement is
13  untrue." (ECF No. 37 at 9 (emphasis in original).)  She continues, whether a practice is deceptive
14  is a question of fact, inappropriate for resolution on a motion to dismiss. (*Id.* at 12–14.)

15          Defendant has not met its burden of showing plaintiff's reliance allegations are
16  deficient.  The court in *Lanovaz v. Twinings North America, Inc.*, No. 12-02646, 2013 WL
17  675929 (N.D. Cal. Feb. 25, 2013), addressed similar arguments.  There, the plaintiff alleged she
18  and the putative class members were injured as a result of purchasing the defendant's allegedly
19  misbranded green tea.  *Id.* at *1.  The defendant argued the plaintiff's claims could not proceed
20  because the plaintiff "paid for tea which was not tainted, spoiled, adulterated or contaminated and
21  she consumed it without incident or physical injury." *Id.* at *6.  The court found the defendant's
22  argument unpersuasive because the plaintiff's injury was based "on the allegation that she would
23  not have *purchased* the product if she had known that the label was unlawful." *Id.* (emphasis in
24  original).  This reasoning is equally applicable to plaintiff's allegations here.  Specifically, the
25  Complaint alleges, "Ms. Salazar would not have purchased Honey Green Tea had she known that
26  the label did not contain only truthful information, or that the antioxidant nutrient content claims
27  on the labels were unauthorized and inaccurate." (Compl. ¶ 3.)  These allegations are "sufficient
28  to establish an economic injury-in-fact . . . ." *Lanovaz*, 2013 WL 675929, at *6 ("The alleged

4

1  purchase of a product that plaintiff would not otherwise have purchased but for the alleged

2  unlawful label is sufficient to establish an economic injury-in-fact for plaintiff's unfair

3  competition claims."); *see also Victor v. R.C. Bigelow, Inc.*, No. 13-02976, 2014 WL 1028881, at

4  *4 (N.D. Cal. Mar. 14, 2014) (same).  *Cf. Brazil v. Dole Food Co., Inc.*, No. 12-01831, 2013 WL

5  5312418, at *8 (N.D. Cal. Sept. 23, 2013) (holding otherwise where plaintiff neither saw nor

6  relied on statements allegedly in violation of FDA regulation).

7        Furthermore, plaintiff's Complaint alleges that "[r]elying on the representations on

8  the label about [d]efendant's honesty and Honey Green Tea's antioxidant content, Ms. Salazar

9  purchased Honey Green Tea at Safeway and Raley's in Benicia, California on numerous

10  occasions." (Compl. ¶ 3.)  As in *Lanovaz,* "[t]o the extent the injury alleged is reliance on a

11  misleading, as opposed to an unlawful, label, whether plaintiff was actually misled is a factual

12  question that is an inappropriate basis for dismissal at this stage." *Lanovaz*, 2013 WL 675929, at

13  *6.

14        B.      FDA Regulations

15        Defendant argues the challenged statements "do not characterize the level of

16  EGCG"; they "simply inform consumers that EGCG is present in Honey Green Tea." (ECF No.

17  35 at 11.)  Further, the challenged labels do not use any "FDA-defined terms to characterize the

18  level of EGCG." (*Id.* at 12.)

19        Plaintiff counters that statements characterizing the level of antioxidants are not

20  limited to the FDA-defined terms; in warning letters sent to various corporations, the FDA has

21  found many terms that are not FDA-defined to characterize the antioxidant level. (ECF No. 37 at

22  6.) Courts frequently rely on FDA warning letters in determining whether a particular statement

23  characterizes the level of antioxidants. (*Id.*)  Plaintiff concludes based on precedent and FDA

24  warning letters, the terms used by defendant on their Honey Green Tea bottles are nutrient

25  content claims, and, thus, must comply with FDA regulations. (*Id.* at 6–9.)

26        As discussed in the court's prior order, a nutrient content claim "may not be made

27  on the label or in labeling of foods unless the claim is made in accordance with the[] regulation."

28  (Order, ECF No. 29 at 5–6). *See* 21 C.F.R. § 101.13(b).  Under California law, "[a]ny food is

misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in . . . the federal act and the regulations adopted pursuant thereto." Cal. Health & Safety Code § 110670. Under the federal regulation, 21 C.F.R. § 101.54(g), "[a] nutrient content claim that characterizes the level of antioxidant nutrients present in a food may be used on the label or in the labeling of that food," under these circumstances:

> (1) An RDI has been established for each of the nutrients;
>
> (2) The nutrients that are the subject of the claim have recognized antioxidant activity . . . ;
>
> (3) The level of each nutrient that is the subject of the claim is sufficient to qualify for the [type of claim made]; and
>
> (4) The names of the nutrients that are the subject of the claim are included as part of the claim . . . .

*Id.*

As noted above, plaintiff challenges the following three statements:

> We'll just say two words: Epigallocatechin gallate . . . . ***EGCG is our favorite flavonoid, one of <u>many tea antioxidants</u>*** . . . [(2013)];
>
> We'll just say two words: Epigallocatechin gallate . . . . ***EGCG is a key green tea antioxidant*** . . . [(2011)]; and
>
> Epigallocatechin gallate . . . . ***EGCG is the most potent antioxidant around, and our organic green tea is <u>packed</u> with it*** [(2008)] . . . .

(ECF No. 37 at 8 (emphases in original).) To show those statements qualify as nutrient content claims, plaintiff refers the court to several FDA warning letters issued to other corporations (Compl ¶¶ 26 n.6 & 27 n.7). In an August 23, 2010 warning letter to Unilever, Inc., the FDA advised that the following statements qualified as nutrient content claims: "tea leaves rich in naturally protective antioxidants"; "tea is a naturally rich source of antioxidants"; "packed with protective FLAVONOID ANTIOXIDANTS." (Compl., Ex. B, ECF No. 32.) In another warning letter, dated February 22, 2010, the FDA advised Redco Foods, Inc. that the following statement qualified as a nutrient content claim: "One of the antioxidants known as EGCG (Epigallocatechin gallate) is abundantly found in green tea leaves." (*Id.* Ex. C, ECF No. 32.)

6

The court finds plaintiff has alleged sufficient facts showing, for purposes of resisting a motion to dismiss, the challenged statements are subject to FDA regulation and may plausibly be in violation of the regulations. Specifically, as to the 2013 label, the phrase "one of many tea antioxidants" (*id.* ¶ 28) characterizes the level of EGCG as compared to other "many tea antioxidants" because although it does not expressly use the word "contains," the statement connotes that the product does contain EGCG. *See Victor*, 2014 WL 1028881, at *15 (courts routinely rely on FDA warning letters to determine whether a statement qualifies as a nutrient content claim); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1109, 1122 (N.D. Cal. 2013) (holding the phrase "flavanols [are] found in cocoa" as characterizing the level of flavanols).

For the same reason, the phrase "EGCG is a key green tea antioxidant" from the 2011 label may qualify as a nutrient content claim as well. (*See* Warning Letter, August 23, 2010, Ex. B, ECF No. 32 ("The term 'rich in' may be used to characterize the level of antioxidant nutrients.").) Finally, the phrase "our organic green tea is packed with it," also is likely to qualify as a nutrient content claim. (*See id.* ("The term 'packed with' characterizes the level of flavonoid antioxidants in the product.").) Assuming these statements are nutrient content claims, plaintiff has alleged the products have not met the requirements for making such claims (*see* Compl. ¶¶ 24–25, 28–29); thus, plaintiff's allegations survive defendant's motion.

C. The First Amendment

Defendant argues it has "a Constitutional right to provide consumers with accurate information about its products," and plaintiff cannot prevent it from doing so. (ECF No. 35 at 13.) In essence, plaintiff responds unlawful or misleading statements are not protected by the First Amendment. (ECF No. 37 at 16–18.)

As an initial matter, it is undisputed that the Constitution accords protection to commercial speech. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562–63 (1980). And while "the guarantees of free speech . . . guard only against encroachment by the government and erect no shield against merely private conduct," *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 566 (1995) (internal quotation

marks omitted), there are "cases that purportedly show the willingness of courts to step into private disputes to protect First Amendment rights," *Blanco v. Am. Acad. of Forensic Sciences*, No. 09-02780, 2010 WL 597985, at *7 (N.D. Cal. Feb. 17, 2010). Those cases, however, "only extend First Amendment protection as a defense to liability in disputes among private parties over defamation, libel or similar claims." *Id.* Here, defendant does not provide any authority to support its novel position that "the First Amendment bars [plaintiff] from seeking to hold [defendant] liable for conveying truthful information." (ECF No. 35 at 15.)

However, even assuming arguendo defendant's argument did have legal support, the argument is nonetheless unpersuasive. For commercial speech to fall within the protected zone of the First Amendment, it must not be misleading. *See Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 565–66. As discussed above, plaintiff has alleged defendant's label was both unlawful and misleading. (*See supra* pages 4–6.) Hence, the allegations are sufficient at this early stage for plaintiff's claims to survive.

D. Standing

Defendant makes two standing arguments: First, it argues plaintiff's claim based on the 2008 label should be dismissed because plaintiff does not allege she purchased a Honey Green Tea with that label; and second, that plaintiff's claim based on 2008 press release statements should be dismissed because she never saw them. (ECF No. 35 at 15–16.)

Plaintiff counters that this court "has already decided, any material differences with respect to Honey Green Tea's label should be addressed at class certification." (ECF No. 37 at 19.) As to the press release argument, plaintiff "does not allege that those statements are independently actionable"; rather, those statements "provide support for plaintiff's allegations that Honest Tea intended that its labels characterize the level of antioxidants in Honey Green Tea." (*Id.*)

As the court discussed in its prior order, there is a split of authority whether a named plaintiff can sue on behalf of another purchaser of a product when the named plaintiff did not purchase the product herself. *Victor*, 2014 WL 1028881, at *7. "Some judges treat this question as one relevant to standing." *Id.* (collecting cases) "Other judges . . . have observed

1    that 'standing is merely a threshold inquiry that requires the class action plaintiff to demonstrate

2    she suffered economic injury by virtue of the purchases she herself made, not for the other

3    transactions that she seeks to represent,' and questions of substantial similarity are more

4    appropriately deferred until the class certification stage." *Id.* at *8 (collecting cases).

5    "Regardless of the approach, judges look to various factors showing 'substantial similarity'

6    between the purchased and unpurchased products." *Id.*  For example, in *Wilson v. Frito-Lay*

7    *North America, Inc.*, 961 F. Supp. 2d 1134, 1141 (N.D. Cal. 2013), the court observed that

8    "[f]actors . . . courts have considered include whether the challenged products are of the same

9    kind, whether they are comprised of largely the same ingredients, and whether each of the

10   challenged products bears the same alleged mislabeling." *Id.*  In *Astiana v. Dreyer's Grand Ice*

11   *Cream, Inc.*, No. 11-2910, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012), in concluding the

12   plaintiffs could bring a claim based on the products they purchased and those they did not, the

13   court reasoned: "[t]hat the different ice creams may ultimately have different ingredients is not

14   dispositive as [the] [p]laintiffs are challenging the same basic mislabeling practice across

15   different product flavors." *Id.*  In *Brazil*, the court observed that the "substantial similarity"

16   approach not only accorded "with the views of most other courts . . . , but it also ma[de] sense,

17   both as a logical and as a practical matter." 2013 WL 5312418, at *7.  The court in *Brazil*

18   explained the rationale behind the approach as follows:

19   > [B]y limiting a plaintiff's ability to sue over products he did not
20   > purchase to situations involving claims and products that are
     > substantially similar to those products he did purchase, courts
21   > ensure that the plaintiff is seeking to represent only those
     > individuals who have suffered essentially the same injury as the
22   > plaintiff.  The substantially similar approach therefore recognizes
     > the need to limit a plaintiff's standing to injury he has personally
23   > suffered. At the same time, however, the approach recognizes that
     > the definition of the plaintiff's "injury" is not so narrow as to
24   > encompass only the exact set of circumstances that led to the
     > plaintiff's suit.

25   *Id.*

26           The court finds plaintiff has alleged sufficient similarity between the product she

27   purchased and the product she did not.  Specifically, plaintiff challenges the same Honey Green

28   Tea that was in circulation from 2008 throughout 2013.  (*See generally* Compl. & ECF No. 38 at

9

9 n.4.) All the variations of the label relate to the content of antioxidants in the Honey Green Tea product. (Compl. ¶ 28.) Finally, plaintiff alleges she and the proposed class members suffered essentially the same injury as a result of defendant's allegedly unlawful and untruthful acts. (*Id.* ¶ 23.) Questions concerning any material differences between the labels should be addressed at the class certification stage rather than the Rule 12(b)(6) motion stage. *See Astiana*, 2012 WL 2990766, *13. Therefore, as to the 2008 label, the court finds the standing requirement satisfied for purposes of a motion to dismiss.

With respect to defendant's argument that plaintiff's claims based on 2008 press release statements should be dismissed because she never saw them, the court need not address the argument in light of plaintiff's clarifications she "does not allege that those statements are independently actionable" (ECF No. 37 at 19).

IV.     CONCLUSION

For the foregoing reasons, the court DENIES defendant's motion. Defendant shall file an answer to the Complaint within twenty-one (21) days.

IT IS SO ORDERED.

DATED: January 5, 2015.

_____
UNITED STATES DISTRICT JUDGE