SHOOK, HARDY & BACON L.L.P.
TAMMY B. WEBB (SBN 227593)
Email: tbwebb@shb.com
One Montgomery, Suite 2700
San Francisco, California 94104
Telephone: (415) 544-1900
Facsimile: (415) 391-0281

PATTERSON BELKNAP WEBB & TYLER LLP
STEVEN A. ZALESIN (admitted *pro hac vice*)
Email: sazalesin@pbwt.com
TRAVIS J. TU (admitted *pro hac vice*)
Email: tjtu@pbwt.com
MICHELLE W. COHEN (admitted *pro hac vice*)
Email: mcohen@pbwt.com
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

Attorneys for Defendant
HONEST TEA, INC.

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH A. SALAZAR, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> HONEST TEA, INC., <br><br> Defendant. | Case No. 2:13-CV-02318-KJM-EFB <br><br> **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND TO STAY DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Judge: Hon. Kimberly J. Mueller <br><br> Complaint Filed: November 6, 2013 <br> Hearing Date: September 4, 2015 <br> Hearing Time: 10:00 a.m. <br> Courtroom: 3 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on September 4, 2015 at 10:00 a.m. or as soon thereafter as counsel may be heard, in Courtroom 3 of the United States District Court, Eastern District of California, located at 501 I Street, Sacramento, CA 95814, before The Honorable Kimberly J. Mueller, Defendant Honest Tea, Inc. ("Honest Tea") will and hereby does move this Court for summary judgment on Plaintiff Sarah Salazar's claims asserted in the First Amended Complaint and for a stay of merits discovery.

Honest Tea brings these motions pursuant to Federal Rules of Civil Procedure 56 and 26(b)(2)(C) on the following grounds, which are discussed more fully in the attached Memorandum of Points and Authorities:  Salazar's deposition testimony revealed that Salazar does not actually possess the claims asserted in the First Amended Complaint ("FAC").  Rather than support the FAC's allegations, Salazar testified that the Honey Green Tea label implied to her that Honey Green Tea is the "best source" of antioxidants as compared to other foods and teas.  This theory of deception was not pled.  Moreover, as matter of law, reasonable consumers are not likely to interpret the Honey Green Tea label in the idiosyncratic manner Salazar did.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities attached hereto, statement of undisputed facts, the declarations and exhibits attached herewith, any reply papers submitted in support of this motion, oral argument of counsel, the complete files and records in this matter, and such additional matters as the Court may consider.

Counsel for both parties met and conferred regarding this motion on June 19, 2015. Pursuant to the Court's Standing Order, counsel thoroughly discussed the substance of the motion.

DATED: July 14, 2015                           /s/ Tammy B. Webb
                                               Steven A. Zalesin (admitted *pro hac vice*)
                                               Travis J. Tu (admitted *pro hac vice*)
                                               Michelle W. Cohen (admitted *pro hac vice*)
                                               PATTERSON BELKNAP WEBB & TYLER LLP
                                               1133 Avenue of the Americas

New York, New York 10036
Phone: (212) 336-2000
Fax: (212) 336-2222

Tammy B. Webb (SBN 227593)
SHOOK, HARDY & BACON L.L.P.
One Montgomery, Suite 2700
San Francisco, California  94104
Telephone:  (415) 544-1900
Facsimile:  (415) 391-0281

*Attorneys for Honest Tea, Inc.*

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES TO BE DECIDED.................................................................v

PRELIMINARY STATEMENT .........................................................................................1

BACKGROUND ...............................................................................................................2

      A.     Salazar's Shifting Allegations..........................................................2

      B.     The Court's Case Management Order ................................................4

      C.     Salazar's Deposition Testimony ......................................................4

            1.     Salazar's Admissions Regarding the 2008 Label and Advertising for Honey Green Tea...............................................5

            2.     Salazar's Interpretation of the 2011 and 2013 Honey Green Tea Labels ................................................................6

      D.     Salazar's Response to Her Deposition ............................................10

I.     HONEST TEA IS ENTITLED TO SUMMARY JUDGMENT.........................................11

      A.     Salazar Was Not Misled In the Manner Alleged in the FAC ...............11

      B.     Salazar's Idiosyncratic Interpretation of the Honey Green Tea Labels Is Neither Pled Nor Reasonable .............................................13

      C.     Salazar Cannot Proceed Under the UCL's "Unlawful" Prong ............15

      D.     Salazar Has No Viable Attack on the "Honest Tea" Name .................17

II.    DISCOVERY SHOULD BE STAYED.........................................................................18

CONCLUSION....................................................................................................................19

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Actimmune Mktg. Litig.*,
No. 08-cv-02376, 2010 U.S. Dist. LEXIS 90480 (N.D. Cal. Aug. 31, 2010) .........................15

*Avago Techs. United States, Inc. v. Venture Corp.*,
No. 08-cv-03248, 2008 U.S. Dist. LEXIS 105528 (N.D. Cal. Dec. 22, 2008).......................13

*Baghdasarian v. Amazon.com, Inc.*,
No. 05-cv-8060, 2009 U.S. Dist. LEXIS 115265 (C.D. Cal. Dec. 9, 2009) ...........................11

*Brazil v. Dole Food Co.*,
No. 12-cv-01831, 2013 U.S. Dist. LEXIS 136921 (N.D. Cal. Sept. 23, 2013) .......................17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...............................................................................................................11

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (Ct. App. 4th Dist. 2010) ...................................................................15

*Fox v. Good Samaritan L.P.*,
801 F. Supp. 2d 883 (N.D. Cal. 2010) ....................................................................................13

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
192 F.R.D. 284 (S.D. Cal. 2000) ......................................................................................18, 19

*Hale v. Sharp Healthcare*,
183 Cal. App. 4th 1373 (Ct. App. 4th Dist. 2010) ...................................................................15

*Hall v. Tilton*,
No. 07-cv-3233, 2010 U.S. Dist. LEXIS 11162 (N.D. Cal. Feb. 8, 2010) .............................19

*Haskell v. Time, Inc.*,
965 F. Supp. 1398 (E.D. Cal. 1997)........................................................................................14

*Hill v. Roll Int'l. Corp.*,
195 Cal. App. 4th 1295 (Ct. App. 1st Dist. 2011) ..................................................................14

*In re iPhone 4S Consumer Litig.*,
No. 12-cv-1127, 2014 U.S. Dist. LEXIS 19363 (N.D. Cal. Feb. 14, 2014) ...........................13

*Kane v. Chobani, Inc.*,
No. 12-cv-02425, 2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19, 2013).....................17

*Khasin v. Hershey Co.*,
No. 5:12-cv-01862, 2015 U.S. Dist. LEXIS 64075 (N.D. Cal. Mar. 31, 2015) ....................16

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

ii

*Khasin v. Hershey Co.*,
   No. 5:12-cv-01862, 2014 U.S. Dist. LEXIS 62070 (N.D. Cal. May 5, 2014)..................11, 16

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (Cal. 2011).............................................................................15, 16

*Laabs v. City of Victorville*,
   163 Cal. App. 4th 1242 (Ct. App. 4th Dist. 2008) ..................................................13

*Lanovaz v. Twinings N. Am., Inc.*,
   No. 12-cv-02646, 2013 U.S. Dist. LEXIS 25612 (N.D. Cal. Feb. 25, 2013) ...................16, 17

*Lavie v. Proctor & Gamble Co.*,
   105 Cal. App. 4th 496 (Ct. App. 1st Dist. 2003) ...................................................14

*Little v. Seattle*,
   863 F.2d 681 (9th Cir. 1988) ........................................................................18

*Major v. Ocean Spray Cranberries, Inc.*,
   No. 5:12-cv-03067, 2015 U.S. Dist. LEXIS 23542 (N.D. Cal. Feb. 26, 2015) ...............15, 16

*Mason v. Coca-Cola Co.*,
   774 F. Supp. 2d 699 (D.N.J. 2011) ..................................................................17

*Mattsson v. Home Depot, Inc.*,
   No. 11-cv-533, 2012 U.S. Dist. LEXIS 85474 (S.D. Cal. June 20, 2012) ............................13

*McKinniss v. Kellogg USA*,
   No. 07-cv-2611, 2007 U.S. Dist. LEXIS 96106 (C.D. Cal. Sept. 19, 2007) ........................13

*Mlenjnecky v. Olympus Imaging Am., Inc.*,
   No. 2:10-cv-2630, 2011 U.S. Dist. LEXIS 16128 (E.D. Cal. Feb. 7, 2011) ........................19

*Ogden v. Bumble Bee Foods LLC*,
   No.: 5:12-cv-01828, 2014 U.S. Dist. LEXIS 565 (N.D. Cal. Jan. 2, 2014)..........................14

*Patmont Motor Werks Inc. v. Gateway Marine Inc.*,
   No. C 96-2703, 1997 U.S. Dist. LEXIS 20877 (N.D. Cal. Dec. 17, 1997) ........................13

*Princess Cruise Lines, Ltd. v. Superior Ct.*,
   179 Cal. App. 4th 36 (Ct. App. 2d Dist. 2009) ....................................................11

*Red v. Kraft Foods, Inc.*,
   No. 10-cv-1028, 2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct. 25, 2012)..........................14

*Rooney v. Cumberland Packing Corp.*,
   No. 12-cv-0033, 2012 U.S. Dist. LEXIS 58710 (S.D. Cal. Apr. 16, 2012)..........................14

*Salazar v. Honest Tea, Inc.*,
   No. 2:13-cv-02318, 2014 U.S. Dist. LEXIS 83164 (E.D. Cal. June 9, 2014) ........................17

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

iii

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   687 F.3d 1132 (9th Cir. 2012) ..............................................................12

*Sprint PCS Assets, L.L.C. v. City of Palos Verdes Estates*,
   583 F.3d 716 (9th Cir. 2009) ...............................................................11

*Swearingen v. Amazon Preservation Partners, Inc.*,
   No. 5:12-cv-03067, 2014 U.S. Dist. LEXIS 36830 (N.D. Cal. Mar. 18, 2014) ....................15

*Victor v. R.C. Bigelow, Inc.*,
   No. 13-cv-02976, 2014 U.S. Dist. LEXIS 34550 (N.D. Cal. Mar. 14, 2014) ........................17

*Viggiano v. Hansen Natural Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ...................................................13

**Statutes**

California's Unfair Competition Law (UCL) ...........................................12, 15, 16, 17

Consumers Legal Remedies Act (CLRA) ....................................................12

False Advertising Law (FAL) ................................................................12

Food, Drug and Cosmetic Act (FDCA) .......................................................3

**Other Authorities**

Fed. R. Civ. P. 26(c)(1) ......................................................................18

Fed. R. Civ. P. 56(a) .........................................................................11

E. D. Cal. Local Rule 133(j) ...................................................................5

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

iv

## **STATEMENT OF THE ISSUES TO BE DECIDED**

1. Is Honest Tea entitled to summary judgment when Plaintiff Sarah Salazar testified under oath that she was not misled in the manner alleged in the First Amended Complaint?

2. Is Honest Tea entitled to summary judgment when Salazar testified that she interpreted the Honey Green Tea labels in a manner that is neither consistent with her pleading nor reasonable as a matter of law?

3. In light of Salazar's admissions, should the Court enter an immediate stay of discovery pending resolution of Honest Tea's motion for summary judgment?

Defendant Honest Tea Inc. ("Honest Tea") respectfully submits this memorandum of points and authorities in support of its motion for summary judgment and a stay of discovery.

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

v

## PRELIMINARY STATEMENT

Plaintiff Sarah Salazar ("Salazar") originally alleged that she was misled by statements on Honest Tea's labeling for Honey Green Tea that declared the amount of tea antioxidants per bottle.  The Court dismissed those claims, recognizing that the U.S. Food and Drug Administration ("FDA") has established a rigorous test method that must be used to dispute the accuracy of such statements, which Salazar did not follow.

Salazar filed a First Amended Complaint ("FAC") in response to the Court's dismissal order.  The FAC alleges that Salazar was misled by *different* statements on the Honey Green Tea labels, namely romance copy that at various times has described epigallocatechin gallate ("EGCG") as "one of many," "our favorite," and a "key" tea antioxidant.  According to the FAC, these statements are (1) "inaccurate" and (2) unlawful because Honey Green Tea purportedly does not meet additional requirements that FDA has established for nutrient content claims that "characterize the level" of antioxidants in foods.  The Court found that these allegations, if true, were sufficient to state a claim under California law.  However, given the significant discrepancies between the original complaint and the FAC, the Court ordered Salazar to appear promptly for deposition and authorized Honest Tea to file an early motion for summary judgment if Salazar's testimony failed to support the FAC's allegations.

Under oath, Salazar not only failed to support the FAC's allegations, she expressly contradicted them.  Salazar appeared for deposition on April 29, 2015, and was questioned at length about her reasons for purchasing Honey Green Tea.  Time and again, Salazar admitted that she was *not* misled in the manner alleged in the FAC.  Salazar testified that, in her understanding, the statements on Honey Green Tea labels regarding antioxidants and EGCG are true.  Moreover, Salazar did not purchase Honey Green Tea based upon any implied message regarding compliance with FDA regulations.  In fact, Salazar had no familiarity with FDA regulations or the requirements for nutrient content claims at the time she purchased Honey Green Tea.  She only learned about these topics from her lawyers, *after* she stopped buying the product.

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

1

Salazar proceeded to proffer yet another, entirely new theory as to how the Honey Green Tea labels supposedly misled her.  As Salazar now tells it, the labels implied to her that Honey Green Tea is the very "best source" of antioxidants there is—better than other teas or, indeed, any other foods.  This bizarre interpretation of the Honey Green Tea label is not pleaded in the FAC.  Even if it had been alleged, reasonable consumers—as a matter of law—are not likely to interpret the labels to mean Honey Green Tea is the "best source" of antioxidants.  The labels say nothing of the sort.

This game of whack-a-mole should not be allowed to continue.  Salazar has had multiple opportunities to come up with a viable theory of liability.  Her latest attempt rests on an interpretation of Honest Tea's labels that does not appear in the FAC and cannot be squared with what the product labels actually said.  Honest Tea also should not have to shoulder the substantial burden of discovery on claims in the FAC that never had any basis in fact.  To protect Honest Tea from further harassment and expense, the Court should enter an immediate stay of discovery.  Summary judgment should then be granted to Honest Tea.

## BACKGROUND

### A.    Salazar's Shifting Allegations

Salazar commenced this action on November 6, 2013.  (Statement of Undisputed Facts (hereinafter "SUF") ¶ 1.)  In her original complaint, Salazar alleged that Honey Green Tea did not contain the amount of antioxidants represented on the product's labels.  (SUF ¶ 3.)  Specifically, Salazar alleged that she relied on Honest Tea's statement that Honey Green Tea contains "247 mg Antioxidants Green Tea Flavanoids Per Bottle," and that independent testing supposedly found that Honey Green Tea contains antioxidants in lower amounts.[1]  (SUF ¶ 4.)  Salazar supported that allegation with a declaration, which she attached to her complaint, attesting (under penalty of perjury) that "I would not have purchased Honest Tea Honey Green Tea had I known that the bottles did not have the amount of antioxidants that Honest Tea

---

[1] On the same grounds, Salazar's original complaint also disputed Honest Tea's representations on earlier versions of the Honey Green Tea label that the product contains "250mg EGCG Super Antioxidant" and "Antioxidants 190mg Tea Catechins/Bottle."  (SUF ¶ 6.)

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

2

represented on its labels." (SUF ¶ 8.) Salazar alleged that the "Honest Tea" name was false for this same reason. (SUF ¶ 9.)

The Court dismissed Salazar's claims in large part on June 10, 2014. (SUF ¶ 10.) The Court determined that the label statements addressed by the original complaint were express nutrient content claims, which are authorized by federal law. (ECF No. 29 at 9.) FDA has a rigorous test method that must be followed when disputing the accuracy of such statements, and the federal Food, Drug and Cosmetic Act ("FDCA") expressly preempts private plaintiffs from seeking to impose a different standard under state law. (*Id.* at 10.) Salazar did not allege that her testing followed FDA's method, so the Court held that Salazar's state-law claims sought to impose liability "inconsistent" with the FDCA. (*Id.*)

The Court's dismissal Order was without prejudice, giving Salazar the opportunity to amend her complaint to allege that she had conducted additional testing using FDA's mandatory test method. Rather than bolster her testing allegations, however, Salazar asserted in her June 30, 2014 FAC that she relied on *different* statements on the Honey Green Tea labels, and that she was misled by these statements in a *different* manner than she originally alleged. (SUF ¶¶ 12-13, ECF No. 32.) Specifically, according to the FAC, Salazar purchased Honey Green Tea not in reliance on the label declarations regarding the amount of antioxidants, but on the following romance copy:

- 2013: "We'll just say two words: Epigallocatechin gallate. It may not have the ring of 'sweetheart' but EGCG is our favorite flavonoid, one of many tea antioxidants."
- 2011: "We'll just say two words: Epigallocatechin gallate. It may not have the ring of 'sweetheart' but to us EGCG is a key green tea antioxidant."
- 2008: "Epigallocatechin gallate. It may not have the ring of sweetheart but EGCG is the most potent antioxidant around, and our organic tea is packed with it."

The FAC alleges that these statements are "inaccurate" and "unlawful" because they purportedly characterize the level of EGCG in the product, but do not meet FDA requirements for such characterizing claims. (SUF ¶ 17.) Indeed, according to Salazar, FDA's requirements *cannot* be met in the case of EGCG because FDA has yet to establish a Recommended Daily Intake

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

3

("RDI") for this antioxidant.  (FAC ¶¶ 49, 60, 70.)  The FAC alleged that the Honest Tea name is false for the same (new) reason.  (SUF ¶ 18.)

The Court determined that, when read in the light most favorable to Salazar, the FAC stated a viable claim.  (ECF No. 40.)  While recognizing that a plaintiff under California law must plead reliance and injury, the Court credited the FAC's bare allegation that "Salazar would not have purchased Honey Green Tea had she known that the label did not contain only truthful information, or that the antioxidant nutrient content claims on the labels were unauthorized and inaccurate."  (FAC ¶ 3.)  Because the veracity of this allegation could not be tested at the pleading stage, the Court denied Honest Tea's motion to dismiss the FAC.

**B.      The Court's Case Management Order**

The Court held an initial case management conference on March 5, 2015.  (ECF No. 47.) Given Salazar's shifting theories of liability, Honest Tea urged the Court to enter an order requiring Salazar to promptly appear for deposition so that Honest Tea could determine what claim, if any, she might actually possess.  The Court not only granted Honest Tea's request, but ordered the parties to engage in mediation shortly after Salazar was deposed.  (ECF No. 48.)  In the event the mediation failed, however, the Court expressly authorized Honest Tea to file an early motion for summary judgment.  (3/5/15 Hearing Tr. 6:14-7:4.)

At the initial case management conference, Honest Tea also urged the Court to bifurcate discovery into class and merits phases so as to minimize the burden and expense of discovery. The Court declined to enter a strict bifurcation order, but urged the parties to prioritize class-related discovery over merits issues.  (3/5/15 Hearing Tr. 4:23-5:5.)  The Scheduling Order entered by the Court set an August 27, 2015 deadline for Salazar to move for class certification and parameters for class-related discovery to be completed prior to that date.  (ECF No. 48.) Since then, Honest Tea has produced hundreds of documents to Salazar in response to her demands.

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

4

### C.      Salazar's Deposition Testimony

Salazar was deposed on April 29, 2015.[2]  As summarized below, Salazar testified that she was not misled in any of the ways alleged in the FAC (or in the original complaint, for that matter).  Instead Salazar now claims to have interpreted the romance copy on the Honey Green Tea labels in a manner that is neither pled nor reasonable.

### 1.      Salazar's Admissions Regarding the 2008 Label and Advertising for Honey Green Tea

As a threshold matter, the FAC contains numerous allegations concerning a discontinued label that described Honey Green Tea as "packed with" EGCG.  However, Salazar testified that this label played no role in her purchase decision.  Indeed, Salazar had never even seen this label, which dates from 2008, prior to her deposition:

> Q:      Okay.  So this particular statement [i.e., "packed with"] did not influence your decision to purchase Honey Green Tea?
>
> A:      I don't – I don't know if I've seen this label.  I don't think I've purchased this label.

(Cohen Decl., Ex. A, Transcript of the April 29, 2015 deposition of Sarah A. Salazar (hereinafter "Salazar Tr.") 96:4-96:9.)

> Q:      [T]o the best of your recollection sitting here today, you never purchased Honey Green tea with this [2008] label.  Is that correct?
>
> A:      Correct.

(Salazar Tr. 120:3-12:8.)

The FAC also contains numerous allegations regarding Honest Tea's non-label advertising for Honey Green Tea.  As with the 2008 label, Salazar confirmed that these advertisements played no role in her purchase decision:

> Q:      [T]hat first day in the supermarket [when you purchased Honey Green Tea] was the first time that you had ever heard of Honest Tea or Honey Green Tea?
>
> A:      Yes.
>
> Q:      You had never seen an advertisement for it?

---

[2] Excerpts of Salazar's deposition transcript and copies of all cited deposition exhibits are attached to the accompanying declaration of Michelle W. Cohen, Esq. (hereinafter "Cohen Decl.").  A complete copy of Salazar's deposition transcript is also being submitted to the Court pursuant to Local Rule 133(j).

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

5

A:      No.

(Salazar Tr. 56:10-56:18.)

Q:      Sitting here today do you recall *ever* seeing an advertisement for Honey Green Tea?

A:      No.

(Salazar Tr. 109:4-109:6 (emphasis added).)

Q:      So fair to say that since you've never seen any advertising or marketing materials for Honey Green Tea that neither played any role in your decision to buy Honey Green Tea?

A:      Correct.

(Salazar Tr. 110:11-110:15.)

### 2.      Salazar's Interpretation of the 2011 and 2013 Honey Green Tea Labels

Salazar testified that she purchased Honey Green Tea based upon the Honey Green Tea labels in use in 2011 and 2013.  When asked to identify the aspects of those labels she considered, Salazar identified the romance copy stating that EGCG is "one of many tea antioxidants" and "a key green tea antioxidant."  (Salazar Tr. 85:15-25, 70:24-71:3.)  However, contrary to the allegations in the FAC, Salazar testified that she does not consider these statements to be inaccurate.  Rather, Salazar admitted that Honest Tea's statements about antioxidants and EGCG are true and provide valuable information:

Q:      [Y]ou don't dispute that there is EGCG in Honey Green Tea?

A:      Correct.

(Salazar Tr. 119:19-119:21.)

Q:      And you don't dispute that EGCG is an antioxidant?

A:      Correct.

(Salazar Tr. 119:22-120:1.)

Q:      Well, let's take this statement as true.  Let's assume that EGCG is a key green tea antioxidant is a true statement.  Is that something that you as a consumer purchasing Honey Green Tea would want to know, that EGCG is a key green tea antioxidant?

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

6

A:      Yes, I would want to know.

(Salazar Tr. 77:23-78:4.)

Notwithstanding these admissions, Salazar testified that she considers the romance copy on the Honey Green Tea labels misleading—just not in ways alleged in the FAC (or in her original complaint).  Salazar now contends that she was misled because she interpreted the romance copy to mean that Honey Green Tea is the "best source" of antioxidants:

Q:      Do you have an understanding of the claims that are being asserted here?

A:      Yes.

Q:      And what is your understanding of those claims?

A:      I am claiming that I spent more money buying Honest Tea and I was deceptively led to believe that the **Honey Green Tea was the best source of antioxidants** when, indeed, it is not.

(Salazar Tr. 37:7-37:19.)

Q:      So the complaint that you brought to [your lawyers] was that you had spent more money on tea that you thought was the best source of antioxidants?

A:      **The best way to get antioxidants, yes**.

Q:      And when you say 'the best way to get antioxidants,' you mean better than any other source of antioxidants?

A:      Yes.

(Salazar Tr. 49:22-50:7.)

Q:      [Again, w]hat is it about the label that's untruthful that you are disputing?

A:      I – I was led to believe that Honest Tea and their **Honey Green Tea was the best way to get antioxidants** as opposed to other teas.

(Salazar Tr. 134:15-134:20.)

Q:      Just so I have this straight.  Your testimony is that you believed because of the language on the label that Honey Green Tea was the best way to get antioxidants from all available teas.  Is that right?

A:      Correct.

(Salazar Tr. 127:20-128:1.)

Salazar further testified that this is her sole objection to the Honest Tea name:

Q:      You mentioned earlier that you purchased the product because of the Honest [Tea] name.  Is that correct?

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

7

A:      Correct.

. . .

Q:      And why do you believe that [the name] is inaccurate?

A:      I was led to believe that Honest Tea's Honey Green Tea was ***the best way to get antioxidants*** and I thought because of the Honest name that would be true.

(Salazar Tr. 118:3-118:13.)

Q:      Is there anything else about the Honest Tea name that you think is false or misleading?

A:      No.

(Salazar Tr. 135:23-136:2.)

Notably, Salazar was given multiple opportunities to provide testimony that might support the allegations that actually appear in her pleadings.  She never did.  For example, the original complaint alleged that Salazar purchased Honey Green Tea based upon an alleged misrepresentation regarding the amount of antioxidants per bottle, and it was accompanied by a sworn declaration from Salazar attesting that she would not have purchased Honey Green Tea if she had known the "amount of antioxidants" represented on the labels was inaccurate.  (ECF No. 1 at 22.) But in fact, Salazar has no objection to Honest Tea's label statements regarding the amount of antioxidants in Honey Green Tea, and conceded that those statements played no role in her purchase decision:

Q:      If you look in the upper right-hand corner [of the label], there's the green box that says:  Antioxidants, 190 milligrams, tea catechins per bottle.  Do you see that language?

A:      Yes.

. . .

Q:      Is there anything about that language that bothers you?

A:      No.  I – I don't think so.

(Salazar Tr. 75:15-76:1.)

Q:      When you purchased this product, did you have any personal expectation about the amount of EGCG in the product.

A:      I don't know what my expectation was for the amount . . .

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

8

(Salazar Tr. 88:12-88:17.)

Q:   Okay.  In your first complaint, you also challenged the language that says:  247-milligram antioxidants, green tea flavonoids per bottle. . . .  But a moment ago you testified that that [statement] did not, in fact, play any role in your decision to purchase Honey Green Tea.  Is that correct?

A:   It was more so the wording [of the romance copy] and the Honest Tea name.

(Salazar Tr. 90:18-91:5.)

Salazar's testimony also expressly contradicted the allegations of the FAC.  According to that pleading, Salazar purchased Honey Green Tea with an expectation that the label statements regarding EGCG satisfied FDA's requirements for nutrient content claims that characterize the level of antioxidants in foods and beverages.  (FAC ¶¶ 54, 65, 73.)  Indeed, in opposing Honest Tea's motion to dismiss the FAC, Salazar argued that this romance copy "deceives consumers by suggesting" that the antioxidants in Honey Green Tea are "equivalent or superior to essential vitamins" for which FDA has "established baseline intake amounts (RDIs)."  (ECF No. 37 at 10-11.)  Under oath, however, Salazar admitted that she has no familiarity whatsoever with FDA regulations, nutrient content claims, or RDIs:

Q:   Do you know what the [FDA's] recommended amount of antioxidants for human consumption is?

A:   I do not.

Q:   Have you ever read the FDA regulations?

A:   No.

(Salazar Tr. 39:7-39:13.)

Q:   Have you ever visited the FDA's website?

A:   No.

(Salazar Tr. 40:7-40:8.)

Q:   Do you know what a nutrient content claim is?

A:   I don't think so.

(Salazar Tr. 73:15-73:17.)

Q:   Do you have an understanding of what [an] RDI is?

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

9

A:     No. [ . . . ]

Q:     Do you know whether there's an RDI for antioxidants?

A:     I don't know.

(Salazar Tr. 74:1-74:7.)  Far from being "misled" by any implicit representation regarding FDA

compliance, Salazar testified that she only learned about FDA's requirements for nutrient content

claims *after* purchasing Honey Green Tea—*from her lawyers*:

Q:     [H]ow did you learn that Honey Green Tea does not have the recommended
       amount of antioxidants for human consumption that's recommended by the FDA?

A:     Through the FDA and ***through my attorneys*** and through this process.

Q:     How did you learn that through the FDA?

A:     It's – it's what ***I was told***.

Q:     Told by whom?

A:     It's what I found out during this process and ***from my attorneys***.

(Salazar Tr. 39:14-39:24 (emphasis added).)

Q:     And how did you come to this understanding of the FDA's guidance on
       antioxidants?

A:     I came to this understanding through this – this whole situation and also ***through
       my attorneys***.

Q:     What's this whole situation?

A:     This whole process, ***just talking with my attorneys***.

(Salazar Tr. 72:9-72:15 (emphasis added).)

**D.     Salazar's Response to Her Deposition**

The parties held a court-ordered mediation before Magistrate Judge Carolyn K. Delaney on

May 22, 2015.  Honest Tea was hopeful that, given her admissions at deposition, Salazar would

be open to resolving the case on reasonable terms.  Salazar instead rebuffed Honest Tea's offers

and elected to press forward with her case.

Since the failed mediation, Salazar has initiated a scorched-earth discovery plan to

maximize the burdens on Honest Tea and drive up costs.  On June 24, 2015, Salazar filed a

motion to compel, seeking discovery of wide swaths of information relevant only to the merits,

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

10

not class certification.  (ECF No. 57.)  Some of Salazar's demands—including her request for production of *all* documents and communications concerning Honest Tea's formulation and testing of Honey Green Tea—have no relevance to any matter still at issue in this case.  Salazar's motion was argued to Magistrate Judge Edmund F. Brennan on July 1, 2015.  To Honest Tea's dismay, Judge Brennan granted Salazar's motion to compel based in part on an erroneous assumption that this Court's prior rulings contemplated no limits on the scope and timing of discovery.  Judge Brennan also did not consider whether Salazar is entitled to *any* merits discovery now that Salazar has admitted that she does not actually possess the claims in the FAC.

## ARGUMENT

## I.   HONEST TEA IS ENTITLED TO SUMMARY JUDGMENT

Summary judgment is appropriate when the evidence adduced in discovery reveals the absence of a "genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); *see Sprint PCS Assets, L.L.C. v. City of Palos Verdes Estates*, 583 F.3d 716, 720 (9th Cir. 2009).  A defendant may carry its burden by pointing to a lack of evidence supporting any necessary element of the plaintiff's claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Thus, in a putative class action for false advertising action under California law, summary judgment is appropriate if, based on the testimony of the named plaintiff, the necessary element of deception cannot be met.  *See, e.g., Khasin v. Hershey Co.*, No. 5:12-cv-01862, 2014 U.S. Dist. LEXIS 62070, at *12 (N.D. Cal. May 5, 2014); *Baghdasarian v. Amazon.com, Inc.*, No. 05-cv-8060, 2009 U.S. Dist. LEXIS 115265, at *12-16 (C.D. Cal. Dec. 9, 2009) (summary judgment appropriate where "Plaintiff's own deposition testimony establishes" that he does not possess the claims asserted); *Princess Cruise Lines, Ltd. v. Superior Ct.*, 179 Cal. App. 4th 36, 43-44 (Ct. App. 2d Dist. 2009) (same).

### A.   Salazar Was Not Misled In the Manner Alleged in the FAC

The Court denied Honest Tea's motion to dismiss the FAC because that pleading alleged that "Ms. Salazar would not have purchased Honey Green Tea had she known that the labels did not contain only **truthful information**, or that their antioxidant nutrient contain claims were **unauthorized and inaccurate**."  (ECF No. 40 at 3 (emphasis added).)  The Court reasoned that,

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

11

at the pleading stage, it "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  (*Id.* (quoting *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)).)  As such, the Court held that whether Salazar "was **actually misled** is a **factual question** that is an inappropriate basis for dismiss **at this stage**."  (*Id.* at 5 (emphasis added).)

The FAC's allegations are no longer entitled to a presumption of truth, and Salazar's testimony confirms that they never had any basis in fact.  Salazar admits that she never saw the 2008 version of the Honey Green Tea label.  Instead, she purchased Honey Green Tea based solely upon the statement that EGCG "may not have the ring of 'sweetheart' but to us EGCG is a key green tea antioxidant" (2011 label), and the statement that "EGCG is our favorite flavonoid, one of many tea antioxidants" (2013 label).  By her own admissions, however, Salazar believes that these statements are true.  (Salazar Tr. 77:13-16 (admitting EGCG is a "key" antioxidant); *id.* at 87:2-7 (admitting EGCG is found in tea generally); *id.* at 119:19-21 (admitting EGCG is found in Honey Green Tea specifically); *id.* at 86:18-23 (admitting she has no reason to doubt that EGCG is Honest Tea's "favorite" tea antioxidant).)

Salazar's testimony also contradicts the FAC's allegation that she would not have purchased Honey Green Tea if she had known that the EGCG romance copy was "unauthorized" by FDA's nutrient content rules.  In fact, at the time of her purchases, Salazar had no expectations about the product that were created or informed by FDA regulations, the requirements for nutrient content claims, or RDIs for antioxidants.  (Salazar Tr. 39:7-39:13 (conceding she had no familiarity with FDA regulations); *id.* at 73:15-73:17 (conceding no familiarity with nutrient content claims); *id.* at 74:1-74:7 (conceding no familiarity with RDIs).)  Salazar could not have been "misled" to purchase Honey Green Tea by any implied message regarding FDA compliance when she only learned about these FDA requirements *after* she purchased the product.

All of the claims asserted in the FAC require Salazar to prove that she was misled.  *See Sateriale v. R.J. Reynolds Tobacco Co.*, 687 F.3d 1132 (9th Cir. 2012) (deception is an essential element under California's Unfair Competition Law (UCL), False Advertising Law (FAL), and

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

12

Consumers Legal Remedies Act (CLRA)); *In re iPhone 4S Consumer Litig.*, No. 12-cv-1127, 2014 U.S. Dist. LEXIS 19363, at *15 (N.D. Cal. Feb. 14, 2014) (same for negligent misrepresentation and fraud); *Avago Techs. United States, Inc. v. Venture Corp.*, No. 08-cv-03248, 2008 U.S. Dist. LEXIS 105528, at *11-12 (N.D. Cal. Dec. 22, 2008) (same for express warranty).[3]  But Salazar admits that she was not deceived as she alleged in her pleadings.  Honest Tea is entitled to summary judgment for this reason alone.

> **B.      Salazar's Idiosyncratic Interpretation of the Honey Green Tea Labels Is Neither Pled Nor Reasonable**

Although she disavowed the FAC's allegations, Salazar nevertheless testified that she was "misled" by the Honey Green Tea labels because she interpreted the romance copy to mean that Honey Green Tea is the "best source" of antioxidants available.  (Salazar Tr. 37:12-23; 49:22-50:1.)  This testimony is insufficient to avoid summary judgment, for at least two reasons.

*First*, the FAC does not allege that Salazar was misled in this manner.  It is well-established that a plaintiff's allegations "serve to frame—*and limit*—the issues" to be resolved on summary judgment.  *Fox v. Good Samaritan L.P.*, 801 F. Supp. 2d 883, 896 (N.D. Cal. 2010) (emphasis added).  Accordingly, a plaintiff cannot defeat summary judgment by asserting that she was misled in a manner that was never alleged.  *See Mattsson v. Home Depot, Inc.*, No. 11-cv-533, 2012 U.S. Dist. LEXIS 85474 (S.D. Cal. June 20, 2012) (granting summary judgment where plaintiff asserted he was terminated due to a heart condition, but the complaint alleged it was due to asthma and knee problems); *Patmont Motor Werks Inc. v. Gateway Marine  Inc.*, No. C 96-2703, 1997 U.S. Dist. LEXIS 20877, at *15-16 (N.D. Cal. Dec. 17, 1997) (refusing to consider a liability theory for the first time in opposition to summary judgment); *Laabs v. City of Victorville*, 163 Cal. App. 4th 1242, 1252 (Ct. App. 4th Dist. 2008) (same).

*Second*, even if it had been pleaded, Salazar's interpretation of the Honey Green Tea labels is unreasonable as a matter of law.  California does not permit recovery by consumers who

---

[3] Salazar's claim for breach of express warranty also fails because Salazar concedes that the express representations on the Honey Green Tea labels are true.  *See e.g., Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 893-894 (C.D. Cal. 2013) (dismissing breach of warranty claim when the label "accurately describes the product"); *McKinniss v. Kellogg USA*, No. 07-cv-2611, 2007 U.S. Dist. LEXIS 96106, at *16 (C.D. Cal. Sept. 19, 2007) (same).

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

13

unreasonably "assume things about the products other than what the [package] actually says." *Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 U.S. Dist. LEXIS 164461, at *8-12 (C.D. Cal. Oct. 25, 2012). Rather, such claims must satisfy a "reasonable consumer" test. *See Ogden v. Bumble Bee Foods LLC*, No.: 5:12-cv-01828, 2014 U.S. Dist. LEXIS 565, at *38-39 (N.D. Cal. Jan. 2, 2014) ("reasonable consumer" test is distinct from the individual plaintiff's reliance).

"Under the reasonable consumer standard, [a] plaintiff is required to show not simply that the defendants' [statements] *could* mislead the public, but that they were *likely* to mislead the public." *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1406-07 (E.D. Cal. 1997) (emphasis added). This "implies more than a mere possibility that the [statement] might conceivably be misunderstood by some few consumers." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Ct. App. 1st Dist. 2003). The Court must instead find it "probable that a ***significant portion*** of the general consuming public" would be misled in the manner that the plaintiff claims to have been. *Id.*

Salazar's interpretation of the Honey Green Tea labels fails this test. Salazar initially testified that Honey Green Tea labels implied to her that Honest Tea makes the "best source" of antioxidants, bar none. Later she testified that Honey Green Tea was the "best source" of antioxidants compared to other teas. Reasonable consumers are not likely to leap to either conclusion. As the Court can determine for itself, Honest Tea's labels did not claim that Honey Green Tea is the "best source" of antioxidants. In fact, the word "best" did not appear anywhere on the labels, and they contained no comparisons whatsoever between the antioxidants in Honey Green Tea and those in other foods or beverages. (SUF ¶¶ 30-35.)

The Honey Green Tea labels stated the amount of tea antioxidants per bottle (which Salazar no longer disputes), and they described EGCG as a "key" antioxidant, "one of many" in green tea, and Honest Tea's personal "favorite." While Salazar may have interpreted these statements to mean that Honey Green Tea is the "best source" of antioxidants, reasonable consumers—as a matter plain English—would not. *See Red*, 2012 U.S. Dist. LEXIS 164461, at *8-12; *Hill v. Roll Int'l. Corp.*, 195 Cal. App. 4th 1295, 1304 (Ct. App. 1st Dist. 2011) (reasonable consumers not likely to infer that the product is eco-friendly when the label did not

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

14

say so); *Rooney v. Cumberland Packing Corp.*, No. 12-cv-0033, 2012 U.S. Dist. LEXIS 58710, at *11 (S.D. Cal. Apr. 16, 2012) (reasonable consumers not likely to infer that sweetener is unprocessed when the label only used the word "raw").

### C.      Salazar Cannot Proceed Under the UCL's "Unlawful" Prong

Salazar has previously argued—and will likely argue again in opposition to this motion— that, because California's UCL prohibits "unlawful" labeling practices, Salazar is entitled to pursue her claim that Honest Tea's labeling for Honey Green Tea violates FDA regulations, even if she was not misled.  This is not correct.

Under California law, the requirements of a UCL claim are determined by the "nature of the alleged wrongdoing," not "the specific prong of the UCL the consumer invokes." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (Ct. App. 4th Dist. 2010).  The nature of the alleged wrongdoing in food misbranding cases is that the food's label contained misrepresentations. *See Major v. Ocean Spray Cranberries, Inc.,* No. 5:12-cv-03067, 2015 U.S. Dist. LEXIS 23542, at *8 (N.D. Cal. Feb. 26, 2015) (because the plaintiff's theory of unlawfulness was "that consumers were misled because foods not low in calories were falsely represented," she must prove actual reliance); *Swearingen v. Amazon Preservation Partners, Inc.*, No. 5:12-cv-03067, 2014 U.S. Dist. LEXIS 36830, at *5-6 (N.D. Cal. Mar. 18, 2014) (plaintiffs' misbranding claims "are grounded in misrepresentation because the statutes and guidance they rely on prohibit a particular type of consumer deception, the mislabeling of food products.").  In such cases, the California Supreme Court has held that a UCL plaintiff must plead and prove that she actually relied on the alleged misrepresentations, even under the UCL's "unlawful" prong. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 n.9 (Cal. 2011); *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (Ct. App. 4th Dist. 2010) (actual reliance "applies equally to the 'unlawful' prong of the UCL when, as here, the predicate unlawfulness is misrepresentation and deception"); *In re Actimmune Mktg. Litig.*, No. 08-cv-02376, 2010 U.S. Dist. LEXIS 90480 (N.D. Cal. Aug. 31, 2010) (same); *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1385 (Ct. App. 4th Dist. 2010) (same).

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

15

Salazar may argue that the actual reliance requirement is met here because, at her deposition, Salazar testified that the romance copy on the Honey Green Tea labels was a factor in her decision to purchase the product.  But the California Supreme Court has held that actual reliance requires more.  Actual reliance under the UCL is interpreted in the "ordinary fraud" sense of the word, meaning the plaintiff must have relied on the "falsity of a defendant's statement, not merely on the fact that it was made." *Kwikset*, 51 Cal. 4th at 327 n.10.  In other words, it is not enough that Salazar considered the romance copy on the Honey Green Tea labels. She must prove that the labels actually misled her.  *Id.*; *see also Major,* 2015 U.S. Dist. LEXIS 23542, at *13 (N.D. Cal. Feb. 26, 2015) (holding that plaintiff could not have relied on the "No Sugar Added" language to her detriment because she testified that she never believed that the products were low-calorie); *Khasin v. Hershey*, No. 5:12-cv-01862, 2014 U.S. Dist. LEXIS 62070, at *10 (N.D. Cal. May 5, 2014) ("courts in California require that plaintiffs demonstrate the purchase of products as a result of deceptive advertising").

Judge Davila's recent decision in *Khasin v. Hershey* is directly on point.  That case concerned antioxidant statements on labels for Hershey's dark chocolate and cocoa, which the plaintiff alleged were "unlawful" under FDA regulations.  *Khasin v. Hershey Co.*, No. 5:12-cv-01862, 2015 U.S. Dist. LEXIS 64075, at *9-10 (N.D. Cal. Mar. 31, 2015).  The plaintiff testified at deposition that he relied on Hershey's antioxidant statements when making his purchases.  *Id.* at *11-12.  But the plaintiff construed the statements to mean that Hershey's chocolate and cocoa are a "better choice" compared to other candy, which was an idiosyncratic interpretation unlikely to be shared by other members of the consuming public.  *Id.* at *11, 15.  The Court granted summary judgment to Hershey, reasoning that, even under the UCL's "unlawful" prong, a plaintiff must prove that a reasonable consumer would be deceived in the manner alleged.  *Id.* at *17.  The outcome should be no different here.

In defense of her UCL claim, Salazar also may seek to rely on Judge Whyte's statement in *Lanovaz v. Twining North America* (which was quoted in this Court's ruling on Honest Tea's second motion to dismiss) that it is sufficient under the UCL's unlawful prong for a plaintiff to allege that "she would not have *purchased* the product if she had known that the label was

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

16

unlawful." *Lanovaz v. Twinings N. Am., Inc.,* No. 12-cv-02646, 2013 U.S. Dist. LEXIS 25612, *16 (N.D. Cal. Feb. 25, 2013) (emphasis in original).  This language is of no help to Salazar, however, because she did not testify that the lawfulness of Honest Tea's labels played any role in her purchase decision.  (Salazar Tr. 37:7-37:16, 49:22-50:7, 75:15-76:6, 90:18-91:5, 118:2-118:13, 127:20-128:12, 135:7-136:2.)  Nor could it have when, at the time of her purchases, Salazar was oblivious to the legal requirements that she now alleges Honest Tea violated. (Salazar Tr. 39:14-39:24, 72:9-72:15.)

Moreover, to the extent that *Lanovaz* can be read to suggest that a plaintiff can be misled based solely on the fact that she was unaware the label included an unlawful statement, that holding is legally incorrect.  As other courts have explained, California voters rejected this construction of California law when they enacted Proposition 64 and imposed heightened standing requirements on UCL plaintiffs.  The logic of *Lanovaz* would "eviscerate" that requirement.  *See Kane v. Chobani, Inc.*, No. 12-cv-02425, 2013 U.S. Dist. LEXIS 134385, at *33 (N.D. Cal. Sept. 19, 2013); *Brazil v. Dole Food Co.*, No. 12-cv-01831, 2013 U.S. Dist. LEXIS 136921, at *30-31 (N.D. Cal. Sept. 23, 2013); *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976, 2014 U.S. Dist. LEXIS 34550, at *57 (N.D. Cal. Mar. 14, 2014); ("A statement may technically violate some law and yet a reasonable consumer may have no dashed expectation about it."); *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 705 n.4 (D.N.J. 2011) ("not every regulatory violation amounts to an act of consumer fraud" because it "is simply not plausible that consumers would be aware of FDA regulations regarding 'nutrient content'").

In sum, all of Salazar's claims, including her claim under the UCL's unlawful prong, require her to prove that she was reasonably misled by the Honey Green Tea labels.  Salazar cannot satisfy this essential requirement.

### D.      Salazar Has No Viable Attack on the "Honest Tea" Name

At the motion to dismiss stage, the Court rejected Honest Tea's argument that the "Honest Tea" name constitutes non-actionable puffery.  *Salazar v. Honest Tea, Inc.*, No. 2:13-cv-02318, 2014 U.S. Dist. LEXIS 83164, at *30-31 (E.D. Cal. June 9, 2014).  At her deposition,

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

17

however, Salazar could not identify any statements on the Honey Green Tea labels that she believes are actually dishonest or untrue.

To the extent she addressed the Honest Tea name at all, Salazar testified that it corroborated her perception that Honey Green Tea is the "best way" to obtain antioxidants. (Salazar Tr. 85:15-86:9; 98:9-98:16; 118:3-118:13.)  That is not a plausible interpretation of the Honest Tea name, let alone one that is likely to be shared by reasonable consumers.  Thus, for the same reasons that doom her other claims, summary judgment should be entered on Salazar's claims concerning the Honest Tea name as well.

## II.  DISCOVERY SHOULD BE STAYED

As noted above, rather than throw in the towel, Salazar responded to her crippling deposition testimony by increasing her discovery demands and moving to compel Honest Tea to produce broad categories of information unrelated to Salazar's anticipated motion for class certification.  Magistrate Judge Brennan granted Salazar's motion to compel, and Honest Tea is in the process of complying with that order, save for two topics on which it plans to move for reconsideration.[4]  But given that Salazar has conceded that she does not actually possess the claims asserted in the FAC, further discovery—including depositions of Honest Tea's employees—should be stayed pending a ruling on Honest Tea's motion for summary judgment.

Courts have "wide discretion" to stay discovery.  *See Little v. Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (staying discovery until a dispositive motion could be decided); *see also* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause shown, issue an order [staying discovery] to protect a party or person from . . . undue burden or expense.").  Exercise of that discretion requires "balanc[ing] the harm of staying discovery with the benefit of allowing discovery to continue."  *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 289 (S.D. Cal. 2000).

---

[4] Specifically, Judge Brennan ordered that Honest Tea produce all documents concerning (1) any testing of Honey Green Tea that bears upon the amount of antioxidants stated on the product labels and (2) the formulation and ingredients in Honey Green Tea.  These aspects of Judge Brennan's order are clearly erroneous and contrary to the law in light of this Court's prior ruling that Salazar's attack on the stated amounts of antioxidants in Honey Green Tea are preempted and the claims that Salazar is currently pursuing.  Moreover, at deposition, Salazar testified that she did not rely on the statements of amount or dispute their accuracy, and she does not dispute that Honey Green Tea contains antioxidants.

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

18

In keeping with the Ninth Circuit's observation that, oftentimes, a "stay furthers the goal of efficiency for the court and litigants," *Little*, 683 F.2d at 685, courts in this Circuit typically apply a two-part test when evaluating a request for a stay pending the outcome of a dispositive motion: (1) whether the pending motion is potentially dispositive of the entire case; and (2) whether the pending motion can be decided without additional discovery.  *See, e.g.*, *Mlenjnecky v. Olympus Imaging Am., Inc.*, No. 2:10-cv-2630, 2011 U.S. Dist. LEXIS 16128, at *20 (E.D. Cal. Feb. 7, 2011) (collecting cases); *Hall v. Tilton*, No. 07-cv-3233, 2010 U.S. Dist. LEXIS 11162, at *4 (N.D. Cal. Feb. 8, 2010).  Resolution of the first prong requires that the court "'take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear *possibility* that it will be granted.'"  *GTE Wireless*, 192 F.R.D. at 286 (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)).  If both prongs are satisfied, discovery may be stayed.  *Mlenjnecky*, 2011 U.S. Dist. LEXIS 16128, at *20.

Both factors are met here.  First, as detailed above, Salazar has expressly disavowed the liability theories espoused in the FAC in favor of a new theory that was never alleged and cannot be reconciled with the actual language on Honest Tea's labels.  At minimum, there is a *possibility* that Salazar's claims will not survive summary judgment.  Second, resolution of Honest Tea's motion turns on whether Salazar possesses the claims alleged in the FAC; no discovery of Honest Tea is necessary for that inquiry.

Finally, Honest Tea will be forced to expend substantial resources, and endure ongoing interruption of its business operations, if it must respond to further discovery demands and make its employees available for depositions, while its motion for summary judgment is *sub judice*.  Conversely, Salazar will suffer no harm whatsoever if discovery is stayed.  If anything, Salazar will benefit from a stay because she, too, will conserve resources that might be wasted if the motion is ultimately granted.  Should the motion for summary judgment be denied, the parties will simply resume discovery where they left off.

## CONCLUSION

For the foregoing reasons, the Court should grant Honest Tea's motion for summary judgment and issue the requested stay of discovery.

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

19

DATED:  July 14, 2015                    Respectfully submitted,


                                          /s/ Tammy B. Webb
                                         Steven A. Zalesin (admitted *pro hac vice*)
                                         Travis J. Tu (admitted *pro hac vice*)
                                         Michelle W. Cohen (admitted *pro hac vice*)
                                         PATTERSON BELKNAP WEBB & TYLER LLP
                                         1133 Avenue of the Americas
                                         New York, New York 10036
                                         Phone: (212) 336-2000
                                         Fax: (212) 336-2222

                                         Tammy B. Webb (SBN 227593)
                                         SHOOK, HARDY & BACON L.L.P.
                                         One Montgomery, Suite 2700
                                         San Francisco, California  94104
                                         Telephone:  (415) 544-1900
                                         Facsimile:  (415) 391-0281

                                         *Attorneys for Honest Tea, Inc.*

Memorandum Of Points and Authorities ISO Defendant's Motion for Summary Judgment and to Stay Discovery
(Case No. 2:13-cv-02318-KJM-EFB)

20