1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   SARAH A. SALAZAR, on behalf of              No.  2:13-cv-02318-KJM-EFB
     herself and all others similarly situated,
12
                 Plaintiff,
13                                                ORDER
           v.
14
     HONEST TEA, INC.,
15
                 Defendant.
16

17

18              Plaintiff Sarah A. Salazar ("plaintiff" or "Ms. Salazar") filed this putative class

19   action against defendant Honest Tea, Inc. ("defendant" or "Honest Tea"), alleging that its Honey

20   Green Tea label is misbranded in violation of several federal and California laws.  Based on

21   evidence obtained during the deposition of Ms. Salazar, Honest Tea filed the pending early

22   summary judgment motion under Federal Rule of Civil Procedure 56.  Def.'s Mot. Summ. J.,

23   ECF No. 67 ("Mot.").  Ms. Salazar opposes the motion.  Pl.'s Opp'n Mot. Summ. J., ECF No. 79

24   ("Opp'n").  The court held a hearing on the matter on September 25, 2015, at which L. Timothy

25   Fisher, Yeremey Krivoshey, and Annick Persinger appeared for plaintiff; Travis Tu, Pro Hac

26   Vice, and Tammy Webb appeared for defendant.  As explained below, the court DENIES

27   defendant's Motion for Summary Judgment.

28

                                                  1

1    I.       BACKGROUND

2             A.       Allegations of the Purported Class

3                      The First Amended Complaint alleges that Honest Tea's Honey Green Tea labels

4    violate U.S. Food and Drug Administration ("FDA") labeling requirements as adopted by

5    California law.  First Am. Compl. ¶¶ 24-29, ECF No. 32 ("FAC").  Through the Sherman Food

6    Drug and Cosmetic Law, California expressly adopted "[a]ll food labeling regulations [of the

7    federal act] and any amendments to those regulations" as its own.  Cal. Health & Safety Code

8    § 110100(a); FAC ¶ 24.  California also enacted a law specifically providing that "[a]ny food is

9    misbranded if its labeling does not conform with the requirements for nutrient content or health

10   claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations

11   adopted pursuant thereto."  Cal. Health & Safety Code § 110670; FAC ¶ 24.

12                     The First Amended Complaint claims that statements on several of Honest Tea's

13   labels are misleading and unauthorized because they characterize the level of antioxidants in the

14   tea without satisfying the FDA's requirements for nutrient content claims.  FAC ¶¶ 24-29.

15   Honest Tea's alleged unauthorized nutrient content claims include:

16              We'll just say two words: Epigallocatechin gallate.  It may not have
17              the ring of "sweetheart" but *EGCG is our favorite flavonoid, one
                *of many tea antioxidants*, (2013);

18
19              We'll just say two words: Epigallocatechin gallate.  It may not have
                the ring of "sweetheart" but to us *EGCG is a key green tea
20              *antioxidant*, (2011); and

21              Epigallocatechin gallate.  It may not have the ring of sweetheart but
                *EGCG is the most potent antioxidant around, and our organic
22              *green tea is packed with it*, (2008).

23   *Id.* ¶ 28 (emphases in original).

24                     The FDA has established Reference Daily Intakes ("RDIs") for certain vitamins

25   and minerals that are essential to human nutrition, such as Vitamin A, Vitamin C, and Calcium.

26   /////

27   /////

28   /////

1    *See* 21 C.F.R. § 101.9(c)(8)(iv).  FDA regulations prohibit the use of nutrient content claims on

2    food labels unless:

3           (1) An RDI has been established for each of the nutrients; [and]

4           . . .

5           (4) The names of the nutrients that are the subject of the claim are
            included as part of the claim (e.g., "high in antioxidant vitamins C
6           and E").   Alternatively, when used as part of a nutrient content
            claim, the term "antioxidant" or "antioxidants" (as in "high in
7           antioxidants") may be linked by a symbol (e.g., an asterisk) that
            refers to the same symbol that appears elsewhere on the same panel
8           of a product label followed by the name or names of the nutrients
            with recognized antioxidant activity. . . .

9

10   21 C.F.R. § 101.54(g); *see* FAC ¶ 25.  Honest Tea's antioxidant statements allegedly violate these

11   regulations "(1) because there are no RDIs for flavonoid antioxidants, and (2) the nutrient content

12   claims do not include the nutrients that are subject of the claims or use a symbol to link the term

13   'antioxidant' to those nutrients."  FAC ¶ 28.  The First Amended Complaint also alleges that the

14   "Honest Tea" name itself is false and misleading.  *Id.* ¶¶ 7-14.

15          Ms. Salazar and the class were allegedly injured by defendant's violations

16   because:

17          (a) they would not have purchased Honey Green Tea on the same
            terms absent Defendant's illegal conduct . . . or if the true facts
18          were known concerning Defendant's honesty; (b) they paid a price
            premium   for   Honey   Green   Tea   due   to   Defendant's
19          misrepresentations and unauthorized nutrient content claims; and
            (c) Honey Green Tea did not have the characteristics, benefits, or
20          quantities as promised.

21   *Id.* ¶¶ 54, 65, 73.

22          Taken as a whole, the First Amended Complaint asserts the following claims:

23   (1) breach of express warranty; (2) violation of California's Consumers Legal Remedies Act

24   ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (3) violation of California's Unfair Competition Law

25   ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (4) violation of California's False

26   Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (5) negligent

27   misrepresentation; and (6) fraud.  FAC ¶¶ 37-88.

28

3

1        B.       Ms. Salazar's Individual Allegations

2                The First Amended Complaint alleges that Ms. Salazar regularly purchased bottles

3    of Honest Tea's Honey Green Tea from 2012 until August 2013.  *Id.* ¶ 3.  She allegedly relied on

4    the antioxidant statements on the label and "would not have purchased Honey Green Tea had she

5    known that the label did not contain only truthful information, or that the antioxidant nutrient

6    content claims on the labels were unauthorized and inaccurate."  *Id.*

7                The First Amended Complaint does not allege that Ms. Salazar read or relied on

8    the statements on the 2008 label.  However, plaintiff proceeds on the theory that she has standing

9    to assert claims based on the 2008 label on behalf of the class because the product she purchased

10   in 2012 and 2013 is substantially similar to the product with the 2008 label.  *See* Opp'n Mot.

11   Dismiss First Am. Compl. at 18-20, ECF No. 37; Opp'n Mot. Dismiss Compl. at 17-19, ECF No.

12   16; Order Den. Mot. Dismiss at 8-10, ECF No. 40.

13       C.       Procedural Background

14               This court has issued two orders in response to Honest Tea's motions to dismiss.

15   On June 9, 2014, the court dismissed with leave to amend plaintiff's state law claims on

16   preemption grounds.  ECF No. 29 at 17.  On January 6, 2015, the court denied Honest Tea's

17   Motion to Dismiss plaintiff's First Amended Complaint.  ECF No. 40.

18               On July 14, 2015, Honest Tea filed this early summary judgment motion based on

19   Ms. Salazar's deposition testimony.  Mot., ECF No. 67.[1]  Because other discovery is still

20   proceeding and the class has not yet been certified, defendant's Motion for Summary Judgment is

21   directed solely at Ms. Salazar's individual claims.  *See* 3/5/15 Transcript, Ex. 1 at 13, ECF No.

22   79-1.  Specifically, the motion is targeted to the issue of whether Ms. Salazar relied on the alleged

23   nutrient content claims and the Honest Tea name.

24   /////

25   /////

26

27           [1] ECF No. 67 also includes Honest Tea's Motion to Stay Discovery, which the court
     denied in a separate order.  *See* ECF No. 86.

28

1   Ms. Salazar filed an Opposition to defendant's Motion for Summary Judgment on

2   August 13, 2015.  Opp'n, ECF No. 79.  Honest Tea filed a Reply on September 18, 2015.  Def.'s

3   Reply, ECF No. 82 ("Reply").

4   II.     LEGAL STANDARD

5   A.     Summary Judgment

6   The court recognizes that early summary judgment motions in cases such as this

7   do not fit neatly within the traditional summary judgment framework.  The sole issue at this early

8   stage of the case is whether Ms. Salazar's deposition testimony establishes that the pleadings lack

9   a factual basis or cannot prevail as a matter of law.  Nevertheless, the Supreme Court's landmark

10  decisions guide this court's application of Rule 56(a) of the Federal Rules of Civil Procedure to

11  the summary judgment motion at hand.

12  A court will grant summary judgment if "there is no genuine dispute as to any

13  material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

14  On a summary judgment motion, the moving party may meet its burden by showing that there is

15  an absence of evidence to support an element of the non-moving party's case.  *Celotex Corp. v.*

16  *Catrett*, 477 U.S. 317, 325 (1986).  "One of the principal purposes of the summary judgment rule

17  is to isolate and dispose of factually unsupported claims or defenses . . . ."  *Id.* at 323-24.

18  To avoid summary judgment, the nonmoving party must designate specific

19  materials in the record showing a genuine issue of material fact.  *Matsushita Elec. Indus. Co. v.*

20  *Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  There is no genuine issue for trial "[w]here the

21  record taken as a whole could not lead a rational trier of fact to find for the non-moving party."

22  *Id.* at 587 (citing *First Nat'l Bank of Ariz. v. Cities Service, Co.*, 391 U.S. 253, 289 (1968)).  Here,

23  Honest Tea is entitled to summary judgment if a reasonable juror could not find that Ms. Salazar

24  relied on the alleged misrepresentations, given her deposition testimony.  *See, e.g.*, *Baghdasarian*

25  *v. Amazon.com, Inc.*, No. CV 05-8060 AG (CTX), 2009 WL 4823368, at *6 (C.D. Cal. Dec. 9,

26  2009) (granting summary judgment where "Plaintiff's own deposition testimony undermine[d]

27  his own claims, showing that he did not actually rely on Defendant's statements"), *aff'd*, 458 F.

28  App'x 622 (9th Cir. 2011); *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2014 WL

1    46822, at *3 (N.D. Cal. Jan. 6, 2014) ("[T]he question here is whether Lanovaz unequivocally

2    admitted in her deposition that she did not rely on the labels or the website in her purchasing

3    decisions.").  In deciding a motion for summary judgment, the court draws all inferences and

4    views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at

5    587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).

6         B.    Statutory Standing Requirements

7              1.    UCL and FAL

8              Ms. Salazar brings claims under the three principle statutes governing advertising

9    practices in California—the Unfair Competition Law ("UCL"), False Advertising Law ("FAL"),

10   and Consumers Legal Remedies Act ("CLRA").  The standing requirements under the UCL and

11   FAL are identical: a private citizen must have "suffered injury in fact and . . . lost money or

12   property as a result of" the unfair competition or false advertising.  Cal. Bus. & Prof. Code

13   §§ 17204, 17535; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321 (2011) ("Proposition 64

14   made identical changes to the standing provision[s] of [the UCL and] the false advertising

15   law . . . .").  "Unfair competition" under the UCL means and includes "any unlawful, unfair or

16   fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal.

17   Bus. & Prof. Code § 17200.  "Because [the UCL] is written in the disjunctive, it establishes three

18   varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.  An

19   act can be alleged to violate any or all of the three prongs of the UCL . . . ." *Berryman v. Merit

20   Prop. Mgm't, Inc.*, 152 Cal. App. 4th 1544, 1554 (Ct. App. 2007) (citations omitted); *see also

21   Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1374 (Ct. App. 2012).  Ms. Salazar asserts

22   claims under all three prongs of the UCL.  FAC ¶¶ 61-63.

23             The parties dispute whether a plaintiff must establish actual reliance under the

24   unlawful prong of the UCL.  *See* Mot. at 15; Opp'n at 17-18.  In *In re Tobacco II Cases*, 46 Cal.

25   4th 298 (2009), the California Supreme Court held that a plaintiff must establish "actual reliance"

26   on the misrepresentation to have standing under the fraud prong of the UCL.  *Id.* at 326

27   (interpreting the phrase "as a result of" as requiring a showing of actual reliance).  California

28   courts have subsequently extended the holding of *Tobacco II* to standing under the FAL and the

1   other prongs of the UCL when the claim involves false advertising and misrepresentations to

2   consumers.  *Kwikset*, 51 Cal. 4th at 326, 326 n.9; *see also Durrell v. Sharp Healthcare*,

3   183 Cal. App. 4th 1350, 1363 (Ct. App. 2010).  Because the alleged misconduct in this action

4   involves false advertising and misrepresentation, the court concludes that Ms. Salazar must

5   establish actual reliance to satisfy standing to proceed on each of her UCL claims and her FAL

6   claim.  *See Kwikset*, 51 Cal. 4th at 226.

7                2.      CLRA

8                The CLRA creates a cause of action for "[a]ny consumer who suffers any damage

9   as a result of" an unlawful practice specified by the act.  Cal. Civ. Code § 1780(a).  As with the

10  UCL and FAL, the phrase "as a result of" imposes a reliance requirement when the claim

11  involves false advertising.  *See Princess Cruise Lines, Ltd. v. Superior Court*, 179 Cal. App. 4th

12  36, 46 (Ct. App. 2009); *Durrell*, 183 Cal. App. 4th at 1366-67.  Accordingly, Ms. Salazar must

13  also establish reliance to have standing under the CLRA.

14         C.      Reliance (Causation)

15                Courts have interpreted the reliance requirement under all three statutes similarly.

16  *See Kwikset*, 51 Cal. 4th at 326 (the "as a result of" language in the CLRA "mirrors" the

17  causation language added by Proposition 64 to the unfair competition and false advertising laws);

18  *see also Durrell*, 183 Cal. App. 4th at 1359-67; *Carrea v. Dreyer's Grand Ice Cream, Inc.*,

19  No. C 10-01044 JSW, 2011 WL 159380, at *2 (N.D. Cal. Jan. 10, 2011) (jointly analyzing

20  standing under the UCL, FAL, and CLRA), *aff'd*, 475 F. App'x 113 (9th Cir. 2012).  Actual

21  reliance under the California consumer protection statutes is construed "in accordance with well-

22  settled principles regarding the element of reliance in ordinary fraud actions."  *In re Tobacco II

23  Cases*, 46 Cal. 4th at 306.  Accordingly, a plaintiff must show that the defendant's

24  misrepresentation was "an immediate cause" of the injury-producing conduct.  *Id.* at 326.

25  Although the plaintiff need not show the misrepresentation was the sole or predominant factor

26  influencing her conduct, it must have been at least a "substantial factor" in influencing her

27  decision.  *Id.*  Stated differently, causation is established when a plaintiff "in all reasonable

28  probability" would not have engaged in the conduct but for the misrepresentation.  *See id.*

1   (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1110-11 (1993) (Kennard, J., concurring and

2   dissenting)); *cf. Kwikset*, 51 Cal. 4th at 330.

3         Plaintiff's common law claims for fraud, negligent misrepresentation, and breach

4   of warranty similarly require her to show justifiable reliance.  *Robinson Helicopter Co., Inc. v.*

5   *Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (common law fraud); *Century Sur. Co. v. Crosby Ins.,*

6   *Inc.*, 124 Cal. App. 4th 116, 129 (Ct. App. 2004) (negligent misrepresentation); *Williams v.*

7   *Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (Ct. App. 1986) (breach of warranty).

8   III.   <u>DISCUSSION</u>

9         Honest Tea argues that Ms. Salazar's deposition testimony establishes that she

10   cannot prove reliance for four reasons: (1) she admitted she did not purchase Honey Green Tea

11   with its 2008 label; (2) she admitted the statements on the label are true; (3) she admitted she was

12   not familiar with the FDA regulations when she purchased the tea; and (4) her testimony

13   generally contradicts the theory of reliance pled in the First Amended Complaint.  Honest Tea

14   also argues that reasonable consumers are not "likely to be deceived" by the nutrient content

15   claims as a matter of law.  The court addresses each argument in turn.

16         A.   <u>2008 Label</u>

17         Honest Tea first contends there is no factual basis for the allegations relating to

18   Honey Green Tea's 2008 label, because Ms. Salazar admitted in her deposition she had never

19   purchased Honey Green Tea with its 2008 label.  Mot. at 5-6, 12.  The First Amended Complaint,

20   however, does not allege that Ms. Salazar saw the 2008 label or purchased Honey Green Tea with

21   its 2008 label.  *See* FAC ¶ 3 ("From 2012 until August 2013, Ms. Salazar regularly purchased

22   Honest Tea's Honey Green Tea.").  Plaintiff proceeds on the theory that she has standing to assert

23   claims on behalf of the class because the product she purchased in 2012 and 2013 is substantially

24   similar to the product bearing the 2008 label.  *See* Opp'n Mot. Dismiss First Am. Compl. at

25   18-20, ECF No. 37; Opp'n Mot. Dismiss Compl. at 17-19, ECF No. 16.

26         As this court explained in its prior orders, Ms. Salazar has alleged sufficient

27   similarity between the products to plead standing as to the 2008 label.  *See* ECF No. 40 at 8-10;

28   ECF No. 29 at 12-13.  Ms. Salazar's deposition testimony does not change this analysis.  As the

1   court previously has observed, questions concerning any material differences between the labels

2   will be addressed at the class certification stage.

3         B.    <u>Truthfulness of Statements</u>

4         Honest Tea asserts that Ms. Salazar's deposition testimony contradicts the First

5   Amended Complaint's allegation that she "would not have purchased Honey Green Tea had she

6   known that the label did not contain only ***truthful information***," because she admitted that the

7   antioxidant statements on the labels are in fact "true."  Mot. at 11 (quoting FAC ¶ 3) (emphasis in

8   original); *see id.* at 6-7, 12, 17-18.  This court also rejected a similar argument in its prior order

9   denying defendant's Motion to Dismiss the First Amended Complaint.  ECF No. 40 at 3-5; Mot.

10   Dismiss First Am. Compl., ECF No. 35 at 2, 5, 6, 10 (arguing plaintiff failed to state a claim

11   because she did not dispute that defendant's EGCG statements are true).

12         To support its Motion for Summary Judgment, Honest Tea submits deposition

13   testimony of Ms. Salazar admitting that Honey Green Tea contains EGCG, EGCG is an

14   antioxidant, and antioxidants have the potential to defend against free radicals.  *See* Mot. at 12

15   (citing Salazar Tr. at 77:13-16, 87:2-7, 119:19-21, 86:18-23, ECF No. 67-3); Reply at 2-3.

16   Honest Tea claims that Ms. Salazar "could not identify any statements on the Honey Green Tea

17   labels that she believes are actually dishonest or untrue."  Mot. at 18.

18         Although the parties do not dispute that Honest Tea's Honey Green Tea contains

19   EGCG, a type of antioxidant, the First Amended Complaint asserts that the antioxidant statements

20   are misleading and violate FDA labeling requirements for nutrient content claims.  *See, e.g.*, FAC

21   ¶¶ 1, 3, 12, 28, 54, 60, 65, 73.  A statement can mislead consumers even if it is not factually

22   untrue.  *See Lanovaz v. Twinings N. Am., Inc.*, C-12-02646-RMW, 2014 WL 46822, at *7 (Jan. 6,

23   2014) ("[T]he UCL and FAL protect against true statements that are misleading.").  Ms. Salazar's

24   testimony is consistent with this theory.  For example, when asked why she believed the Honest

25   name is inaccurate, Ms. Salazar responded, "I was led to believe that Honest Tea's Honey Green

26   Tea was the best way to get antioxidants and I thought because of the Honest name that would be

27   true."  Salazar Dep., Ex. 2 at 118:3-13; *see also id.* at 37:12-19 ("A: I am claiming that I spent

28   more money buying Honest Tea and I was deceptively led to believe that the Honey Green Tea

1   was the best source of antioxidants when, indeed, it is not.").  Accordingly, the court does not

2   find that this testimony establishes as a matter of law that Ms. Salazar was not misled by Honest

3   Tea's representations.

4        C.        Familiarity with FDA Regulations

5            Honest Tea next contends it is entitled to summary judgment because Ms. Salazar

6   admitted she was unfamiliar with the relevant FDA regulations at the time she purchased the tea.

7   *See* Mot. at 9-12 (citing Salazar Tr. at 39:7-39:13, 73:15-73:17, 74:1-74:7, ECF No. 67-3); Reply

8   at 8-9.  Honest Tea insists that where a "claim is predicated on a purported violation of some

9   technical FDA requirement, a consumer can only have been 'misled' if she was aware of the FDA

10  requirement at the time of her purchases."  *See* Reply at 8.  The court disagrees.

11           The California Supreme Court and Ninth Circuit have not addressed this issue, but

12  other district courts have articulated helpful guiding principles.  Courts generally agree that a

13  plaintiff cannot circumvent the reliance requirement by arguing that statements are "per se"

14  misleading if the statements violate a technical FDA regulation.  *See, e.g.*, *Thomas v. Costco*

15  *Wholesale Corp.*, No. 5:12-CV-02908-EJD, 2014 WL 1323192, at *7 (N.D. Cal. Mar. 31, 2014)

16  ("Plaintiffs cannot circumvent the reliance requirement by simply pointing to a regulation or code

17  provision that was violated by the alleged label misrepresentation, summarily claiming that the

18  product is illegal to sell and therefore negating the need to plead reliance."); *Trazo v. Nestle USA,*

19  *Inc.*, No. 5:12-CV-2272 PSG, 2013 WL 4083218, at *10 (N.D. Cal. Aug. 9, 2013) ("While

20  regulatory violations might suggest that these statements might be misleading to a reasonable

21  consumer, that alone is not enough to plead a claim under the FAL, CLRA, or the

22  misleading/false advertising prongs of the UCL."); *see also Mason v. Coca-Cola Co.*, 774 F.

23  Supp. 2d 699, 705 n.4 (D.N.J. 2011).  In *Victor v. R.C. Bigelow*, *Inc.*, No. 13-cv-02976-WHO,

24  2014 WL 1028881 (N.D. Cal. Mar. 14, 2014), for example, the court dismissed a claim involving

25  nutrient content claims directed to the antioxidant content of tea products, because the plaintiff

26  failed to explain "how precisely a reasonable consumer would be misled by the term 'delivers

27  healthful antioxidants' or what exactly is misleading about it aside from the fact that it may

28  technically violate FDA regulations."  *Id.* at *17.  In short, the plaintiff "[did] not plead what

10

1  expectations a reasonable consumer might have from seeing or hearing that statement such that

2  they were fraudulently misled by what Bigelow actually offered." *Id.*

3          Contrary to defendant's assertion in its Reply brief, these cases do not hold that a

4  consumer must have been familiar with the FDA regulations to prove reliance. *See* Reply at 8.

5  Rather, courts simply have required plaintiffs to "connect the dots showing how the alleged

6  misbranding misled [the plaintiff] in a way that a reasonable consumer would be deceived."

7  *Trazo*, 2013 WL 4083218, at *10.  Honest Tea essentially adds an additional requirement of

8  familiarity with the regulations to the reliance standard.  *Cf. In re Tobacco II Cases*, 46 Cal. 4th at

9  326 ("[R]eliance is proved by showing that the defendant's misrepresentation or nondisclosure

10  was 'an immediate cause' of the plaintiff's injury-producing conduct.") (quoting *Mirkin*, 5 Cal.

11  4th at 1110-11) (alteration in original).  Alleging that a plaintiff had certain expectations about a

12  product based on familiarity with the FDA regulations is one way to explain how statements

13  mislead consumers, but it is not the only way.

14          Here, plaintiff alleges that the language of the antioxidant statements misleads

15  consumers into believing the tea contains nutrients recommended for the daily diet.  *See* Opp'n

16  Mot. Dismiss First Am. Compl. at 10-11.  Ms. Salazar's deposition testimony is consistent with

17  this theory, because she testified that the wording of the antioxidant statements created

18  expectations in her mind that were not met.  *See* Salazar Dep., Ex. 2 at 28:14-16 ("When reading

19  the label, the wording that was used made me believe that it was the best way to get

20  antioxidants."); *id.* at 28:20-24 ("Q: So what in the word 'many' made you think that it equated to

21  the best way to get antioxidants?  A: I felt if there was [sic] many antioxidants in something that it

22  would be one of the best ways to get antioxidants in my diet."); *id.* at 70:24-71:6 ("Q: Can you

23  tell me where on the label it talks about the product having many antioxidants?  A: This one

24  doesn't say 'many,' but what caught my eye is 'EGCG is a key green tea antioxidant.'  Mainly

25  the word 'key.'  Q: And what did that mean to you?  A: That this antioxidant was a very

26  important antioxidant.").  The allegations in the First Amended Complaint and Ms. Salazar's

27  testimony "connect the dots" and show how a reasonable consumer would be deceived by the

28  antioxidant statements, aside from the fact that the statements may technically violate FDA

1    requirements.  The court finds Ms. Salazar's admission that she was not familiar with the FDA

2    regulations does not entitle defendant to summary judgment at this stage.

3        D.    <u>Ms. Salazar's Interpretation of the Antioxidant Statements</u>

4            1.    <u>Whether Testimony Contradicts the First Amended Complaint</u>

5        Honest Tea claims Ms. Salazar's testimony contradicts the allegations in the First

6    Amended Complaint, because she testified she believed that Honey Green Tea was the "best

7    source" of antioxidants.  *See* Mot. at 13 (citing Salazar Tr., Ex. A, at 37:12-23; 49:22-50:1, ECF

8    No. 67-3); Reply at 1-4.  According to Honest Tea, "Salazar's actual interpretation of the Honey

9    Green Tea labels had nothing to do with FDA regulations or RDIs as the FAC alleged . . . ."

10   Reply at 4.

11       Defendant construes plaintiff's theory too narrowly.  The First Amended

12   Complaint alleges that Ms. Salazar relied on the alleged nutrient content claims in deciding to

13   purchase Honey Green Tea, and was injured because the statements led her to believe that Honey

14   Green Tea had benefits it in fact did not have.  *See* FAC ¶¶ 54, 65, 73.  Specifically, plaintiff

15   alleges:

16           Honest Tea's statements . . . deceive[ ] consumers by suggesting

17           that the health benefits of "EGCG" or "flavonoids" are equivalent
             or superior to essential vitamins with antioxidant activity that the
             FDA recommends in specific amounts for the daily diet . . . .

18           Honest Tea's statement that Honey Green Tea contains "EGCG

19           [their] favorite flavonoid, one of many tea antioxidants"
             misleadingly implies that drinking Honey Green Tea is one of the

20           best methods for incorporating antioxidants in the daily diet.

21   Opp'n Mot. Dismiss First Am. Compl. at 10-11 (footnote omitted), ECF No. 37.  Again, Ms.

22   Salazar's testimony that the unauthorized nutrient content claims made her believe Honey Green

23   Tea was the "best source" of antioxidants or "one of best ways to get antioxidants in [her] diet" is

24   not inconsistent with plaintiff's allegations.  *Compare id.*, *with* Salazar Dep., Ex. 2 at 28:20-24

25   ("Q: So what in the word 'many' made you think it equated to the best way to get antioxidants?

26   A: I felt if there was [sic] many antioxidants in something that it would be one of the best ways to

27   get antioxidants in my diet."); *see* Salazar Dep., Ex. 2 at 37:12-19 ("A: I am claiming that I spent

28   more money buying Honest Tea and I was deceptively led to believe that the Honey Green Tea

1   was the best source of antioxidants when, indeed, it is not."); *id.* at 49:9-11 ("A: The complaint

2   was that I had spent more money on tea that I thought was a good source of antioxidants and it

3   wasn't."); *id.* at 70:24-71:6 ("Q: Can you tell me where on the label it talks about the product

4   having many antioxidants?  A: This one doesn't say 'many,' but what caught my eye is 'EGCG is

5   a key green tea antioxidant.'  Mainly the word 'key.'  Q: And what did that mean to you?  A: That

6   this was a very important antioxidant.").

7           Other testimony given by Ms. Salazar during her deposition further connects her

8   interpretation of the labels to what the FDA regulations require.  Ms. Salazar testified the tea did

9   not have the benefits she expected because it does not contain the amount of antioxidants

10  recommended by the FDA for human consumption.  Salazar Dep., Ex. 2, at 60:10-22 ("Q: Sitting

11  here today you don't think that what's on the label is true?  A: . . . it's based on what the FDA

12  says it's not the best way to get antioxidants.  While there may be antioxidants in tea, it's not the

13  recommended human intake amount."); *id.* at 39:4-6 (A: "It does contain antioxidants, but not the

14  amount that's for human -- that's not the recommended amount for human consumption,

15  according to the FDA").  She explained that a better way to get antioxidants would be through

16  vitamins, blueberries, and orange juice.  Salazar Dep., Ex. 2, at 27:4-9 ("Q: . . . What would be a

17  better way to get antioxidants?  A: Through vitamins, blueberries, orange juice."); *see id.* at 72:3-

18  8.  Ms. Salazar's testimony is consistent with the theory that the label's statements "'deceive[]

19  consumers by suggesting' that the antioxidants in Honey Green Tea are 'equivalent or superior to

20  essential vitamins' for which FDA has 'established baseline intake amounts (RDIs).'"  Opp'n

21  Mot. Dismiss First Am. Compl. at 10-11; *see id.* ("[E]ven though consuming a beverage like

22  orange juice provides vitamin C with recognized antioxidant activity, plus a whole range of

23  nutrients that tea lacks, Honest Tea's statement . . . misleadingly implies that drinking Honey

24  Green Tea is one of the best methods for incorporating antioxidants in the daily diet.").

25          Defendant cites several decisions granting early summary judgment to support its

26  position.  *See* Mot. at 11, 16.  But those cases are distinguishable, because the lead plaintiff's

27  deposition testimony in each clearly established that the plaintiff did not in fact rely on the

28  alleged misrepresentations.  In *Baghdasarian v. Amazon.com, Inc.*, No. CV 05-8060 AG (CTX),

1    2009 WL 4823368 (C.D. Cal. Dec. 9, 2009), *aff'd*, 458 F. App'x 622 (9th Cir. 2011), for

2    example, the court granted summary judgment because the plaintiff's deposition testimony

3    established that Amazon's shipping policy was not a substantial factor in his purchasing decision.

4    *Id.* at *6.  The plaintiff had testified, "It's not that if they had told me of the fees . . . I would have

5    never bought something from Amazon.  But the fact that they hid it . . . kind of turned me

6    off . . . ."  *Id.*; *see also Princess Cruise Lines, Ltd. v. Superior Court*, 179 Cal. App. 4th 36, 43-44

7    (Ct. App. 2009) (holding plaintiff did not rely on representations about cost of shore excursions,

8    because she testified she would go on shore excursions "whatever it cost").  In *Khasin v. Hershey

9    Co.*, No. 5:12-cv-01862-EJD (N.D. Cal. Mar. 31, 2015),[2] the plaintiff alleged that statements on

10   Hershey's kisses labels are misleading because they make nutrient content claims without

11   disclosing that the product contains disqualifying amounts of saturated fat.  *Id.* at 9.  The court

12   granted summary judgment because the plaintiff testified that Hershey's products are candy, not

13   health foods, and that he is not concerned about the fats or sodium in Hershey's products.  *Id.* at

14   8; *see also Major v. Ocean Spray Cranberries, Inc.*, No. 5:12-CV-03067-EJD, 2015 WL 859491,

15   at *4 (N.D. Cal. Feb. 26, 2015) (finding plaintiff not deceived by fact that labels state "No Sugar

16   Added" without disclosing that beverages are not low calorie, because plaintiff testified she never

17   believed products were low carlorie).

18          Unlike in *Baghdasarian* and *Khasin*, Ms. Salazar did not undermine her claim by

19   testifying that the antioxidant statements were not a substantial factor in her decision to purchase

20   the tea, or that she was never actually misled by the misrepresentations.  To the contrary,

21   Ms. Salazar testified that she read the Honey Green Tea label and relied on the alleged nutrient

22   content claims in deciding to purchase the product:

23          Q: And what made you buy Honest Tea that [first time]?

24

25          [2] Having considered plaintiff's unopposed Request for Judicial Notice pursuant to Federal
26   Rule of Evidence 201 and good cause here appearing, the court GRANTS plaintiff's Request for
     Judicial Notice of the following document: *Khasin v. Hershey Company*, Case No. 5:12-cv-
27   01862-EJD (In Chambers) Order Re: Defendant's Motion for Summary Judgment (N.D. Cal.
     Mar. 31, 2015), ECF No. 80.
28

A: I enjoy tea and I was very intrigued and wanted to buy it because of the antioxidant claims.

Q: Which antioxidant claims?

A: That it was full, packed of antioxidants.  Had many antioxidants.

. . .

Q: (BY MS. COHEN) I mean you weren't seeking out products that contained antioxidants?

A: I had assumed I was getting -- I assumed, but when I realized that possibly I wasn't and this tea could give that to me, that's why I jumped on board.

Q: Okay.  So you said you assumed you were getting antioxidants, but then you realized that you possibly weren't.  What made you realize that you might not be getting antioxidants?

A: I mean I can't know everything.  Even if I say I'm health conscious, that doesn't make me an expert so when I read on the label that I could get -- that I would get more antioxidants from this product, I was interested.

Q: . . . More antioxidants than what? . . .

A: Well, it said that there was [sic] many antioxidants, it mentioned what types of antioxidants were in there.  That's why.

Salazar Dep., Ex. 2, at 52:6-59:16; *see id.* at 57:23-58:10, 85:15-19; *see also id.* at 83:23-25

("Q: Why did you stop purchasing [Honey Green Tea]?  A: I stopped purchasing it because I

didn't believe that antioxidant part anymore.").  Ms. Salazar also testified she was misled by the

antioxidant nutrient content claims.  *See, e.g.*, Salazar Dep., Ex. 2 at 37:12-19 ("A: I am claiming

that I spent more money buying Honest Tea and I was deceptively led to believe that the Honey

Green Tea was the best source of antioxidants when, indeed, it is not."); *id.* at 28:20-24 ("Q: So

what in the word 'many' made you think it equated to the best way to get antioxidants?  A: I felt

if there was [sic] many antioxidants in something that it would be one of the best ways to get

antioxidants in my diet.").

Ms. Salazar's testimony does not contradict the allegations in the First Amended

Complaint.

2.        Whether Testimony Presents New, Unpled Allegations

Relatedly, Honest Tea contends that even if Ms. Salazar's testimony is not inconsistent with the First Amended Complaint, it supports only a new theory not pled in the First Amended Complaint.  Mot. at 13; Reply at 1-3.  "While a summary judgment motion does go beyond the pleadings in the sense that it tests the sufficiency of the evidence to support the allegations of the complaint, those allegations still serve to frame—and limit—the issues."  *Fox v. Good Samaritan L.P.*, 801 F. Supp. 2d 883, 896 (N.D. Cal. 2010) (emphasis omitted), *aff'd*, 467 F. App'x 731 (9th Cir. 2012).  Accordingly, Honest Tea argues that "a plaintiff cannot defeat summary judgment by asserting that she was misled in a manner that was never alleged."  Mot. at 13.

Here, again, the cases cited by Honest Tea are not applicable.  In each of those cases, the plaintiff attempted to show a genuine dispute of material fact by raising a new, unpled theory or allegation at the summary judgment stage.  In *Patmont Motor Werks, Inc. v. Gateway Marine, Inc.*, No. C 96–2703 TEH, 1997 WL 811770 (N.D. Cal. Dec. 18, 1997), the plaintiff initially pled that the defendant breached one clause of the contract, but later argued on summary judgment that the defendant had breached a different clause of the contract.  *Id.* at *5.  In *Mattsson v. Home Depot, Inc.*, No. 11CV0533 AJB BLM, 2012 WL 2342948, at *4 (S.D. Cal. June 20, 2012), an action for disability discrimination, the plaintiff initially alleged that his only disabilities were asthma and knee problems, but later claimed that his heart attack played a role in the termination decision.  *Id.* at *4; *see also Laabs v. City of Victorville*, 163 Cal. App. 4th 1242, 1257-58 (Ct. App. 2008), *as modified on denial of reh'g* (July 7, 2008) (plaintiff initially pled that city had failed to correct "dangerous road conditions due to inadequate sight distance and lack of warning signs," but later argued "[t]he City created another dangerous condition by the installation of light fixtures too close to the roadway").

In contrast to the cited cases, Ms. Salazar's Opposition to the Motion for Summary Judgment does not raise new allegations or theories not pled in the First Amended Complaint.  Although the First Amended Complaint did not use the specific phrasing "best way to get antioxidants," the underlying allegations and bases for the claims remain the same: Ms. Salazar

16

1    read and relied on the alleged nutrient content claims in deciding to purchase Honey Green Tea,

2    and she was injured because the statements led her to believe Honey Green Tea had benefits it did

3    not have.  *See* FAC ¶¶ 3, 24-29, 54, 65, 73.  The court rejects the argument Ms. Salazar's

4    testimony constitutes a new theory not pled in the First Amended Complaint.

5            E.      "Reasonable Consumer" Test

6            Once a plaintiff establishes individual reliance for purposes of standing, the

7    plaintiff must then satisfy the "reasonable consumer" test as a substantive element of the

8    consumer protection claims.  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008);

9    *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or misleading advertising

10   and unfair business practices claim must be evaluated from the vantage of a reasonable

11   consumer." (citation omitted)); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-07

12   (Ct. App. 2003).  Under the "reasonable consumer" standard, a plaintiff must show that

13   "members of the public are likely to be deceived" by the misrepresentations.  *Freeman*, 68 F.3d at

14   289 (quoting *Bank of West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992)).

15           Honest Tea argues that reasonable consumers are not "likely to be deceived" by

16   the nutrient content claims in the manner asserted by Ms. Salazar as a matter of law.  Mot. at 13-

17   15; Reply at 4-6.  To support its argument, Honest Tea relies solely on the plain language of the

18   labels.  Mot. at 14.  As Ms. Salazar notes, the parties have not yet completed discovery on

19   materiality or how reasonable consumers interpret the label.[3]  Opp'n at 15.  Rather than

20   challenging the sufficiency of plaintiff's evidence to support her allegations, Honest Tea instead

21   appears to challenge – again – whether the allegations themselves plausibly state a claim.

22           "California courts . . . have recognized that whether a business practice is

23   deceptive will usually be a question of fact not appropriate for decision [as a matter of law]."

24   *Williams*, 552 F.3d at 938-39 (citing *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal.

25

26           [3] Moreover, at the March 5, 2015 Pretrial Conference, Honest Tea noted it planned to
     bring an early summary judgment motion "directed solely to [the] issue" of whether plaintiff

27   "admit[ted] at deposition that she did not rely on the so-called 'nutrient content claim.'"  3/5/15
     Transcript, Ex. 1 at 13, ECF No. 79-1.

28

1    App. 4th 115, 134-35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is

2    generally . . . a question of fact which requires 'consideration and weighing of evidence from both

3    sides' and which usually cannot be made on demurrer." (citation omitted)); *Committee on*

4    *Children's Television*, 35 Cal. 3d 197, 197 (1983) (finding demurrer inappropriate in case where

5    parents alleged deceptive advertising of sugar cereals)).  On rare occasions, courts have dismissed

6    claims when allegations of deception were implausible on their face and went against "well-

7    known facts of life," *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW (AGRx), 2012 WL 5504011,

8    at *3 (C.D. Cal. Oct. 25, 2012).  For example, in *Red v. Kraft Foods, Inc.*, the court dismissed

9    claims based on the phrase "made with real vegetables," because the court concluded that "it

10   strains the credulity" to imagine that a reasonable consumer would believe that a box of crackers

11   is "healthy" and "contains a significant amount of vegetables."  *Id.* at *3-*4.  The court reached a

12   similar conclusion in *Videtto v. Kellogg USA*, No. 2:08–cv–01324–MCE–DAD, 2009 WL

13   1439086 (E.D. Cal. May 21, 2009), dismissing claims because it was unlikely members of the

14   public would believe that Froot Loops cereal contains real, nutritious fruit.  *Id.* at *3; *see also Hill*

15   *v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304-05 (Ct. App. 2011) (dismissing UCL and CLRA

16   claims because a sole "green drop" symbol on the labels of water bottles could not plausibly

17   suggest that "the product is endorsed for environmental superiority by a third party

18   organization").

19           The facts of this case do not amount to the rare situation in which it is appropriate

20   to decide as a matter of law whether a reasonable consumer would likely be deceived.  The

21   evidence obtained in discovery could show that the statements "many" antioxidants, "key"

22   antioxidant, and "packed" with antioxidants lead reasonable consumers to believe, as the

23   complaint alleges, that Honey Green Tea is one of the best ways to incorporate antioxidants into

24   the daily diet.  *See* FAC ¶ 28 ("It may not have the ring of 'sweetheart' but EGCG is our favorite

25   flavonoid, one of many tea antioxidants."); *id.* (". . . to us EGCG is a key green tea antioxidant");

26   *id.* (". . . EGCG is the most potent antioxidant around, and our organic green tea is packed with

27   it").  The court finds a triable issue of fact exists as to whether a reasonable consumer would be

28   misled by the statements on defendant's labels.

1    IV.    CONCLUSION

2            Because Ms. Salazar's testimony is not inconsistent with the allegations of reliance

3    in the First Amended Complaint and is not unreasonable as a matter of law, the court finds that a

4    triable issue of fact exists as to whether Ms. Salazar relied on the alleged nutrient content claims.

5    Honest Tea's Motion for Summary Judgment (ECF No. 67) is DENIED.

6            IT IS SO ORDERED.

7     DATED:  November 11, 2015.

8

9    _____

10   UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28